CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

*Proposed Counsel to Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                     :

In re:                                       :  Chapter 11
                                                  :

NAVILLUS TILE, INC., DBA NAVILLUS    :  Case No. 17-13162 (SHL)
CONTRACTING                           :
                                                  :

              Debtor.              :
                                                    :
-----------------------------------------------------------------x

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS, (III) RECEIVE A WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS,  (IV) RECEIVE A WAIVER OF THE REQUIREMENTS OF 11 U.S.C. § 345 AND (B) <u>IMMEDIATELY VACATING CERTAIN RESTRAINING NOTICES AND LEVY</u>

Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-possession ("Navillus" or the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105, 345, 363, 364, and 503 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, <u>et</u> <u>seq.</u> (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (a) authorizing, but not directing, Navillus to (i) continue using its cash management system, including making payment of sums due under certain credit cards, (ii) maintain and continue to use existing bank accounts, credit cards and brokerage accounts, (iii) receive a waiver certain operating guidelines relating to bank

accounts, and (iv) receive (x) a waiver of the investment and deposit guidelines of Section 345 of

the Bankruptcy Code or (y) a thirty (30) day extension of time to continue discussion with the

United States Trustee regarding Navillus compliance with the requirements of Section 345 of the

Bankruptcy Code regarding the brokerage accounts, and (b) directing the immediate vacatur of

certain restraining notices and a related levy.   In support of the Motion, Navillus respectfully

represents as follows:

## **<u>INTRODUCTION</u>**

1.      On November 8, 2017 (the "Petition Date"), the Debtor filed a voluntary petition

for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      Navillus has remained in possession of its property and continues in the operation

and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of

the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of

the United States Trustee for the Southern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Affidavit of

Donal O'Sullivan pursuant to Local Bankruptcy Rule 1007-2 (the "O'Sullivan Affidavit").  A

detailed factual background of the Navillus' business and operations, as well as the events

leading to the filing of this chapter 11 case, is more fully set forth in the O'Sullivan Affidavit,

filed contemporaneous herewith and incorporated herein by reference.

5.      On November 1, 2017, certain of the Union Plaintiffs[1] served restraining notices

(the "Restraining Notices") on Signature Bank ("Signature") in connection with a judgment in

excess of $76 million which resulted in restraints being placed on four of Navillus' accounts

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms as is set forth in the O'Sullivan Affidavit.

which collectively held over $12 million in funds.  Additionally, on November 2, 2017, one of

the Union Plaintiffs had a writ of execution served against Navillus' bank accounts seeking to

levy against the funds in Navillus' accounts.  Given that the Restraining Notices and related

levy were entered within days of the Petition Date, based upon a judgment obtained within the

ninety (90) day preference period, the Navillus submits that the Restraining Notices and levy

are avoidable as preferences, cannot be enforced against the property of the estate and should

be vacated by the Court.

6.    As discussed below, such relief is appropriate and in the best interest of the

estate and its creditors.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.    The statutory predicates for the relief sought herein are sections 105, 345, 363,

364, 503, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

*Brief Description of Navillus' Cash Management System, Bank Accounts and Brokerage Accounts*

9.    Prior to the Petition Date, in the ordinary course of the Debtor's business, the

Debtor maintained a cash management system comprised of four (4) primary bank accounts (the

"Bank Accounts")[2] at Signature, two (2) credit card accounts – a corporate American Express

card (the "AmEx Card") and a Citibank Mastercard (the "Credit Cards"), and seven (7)

brokerage accounts (the "Brokerage Accounts") at Wells Fargo and Wall Street Access which

---

[2] A list of the Bank Accounts and Brokerage Accounts is attached hereto as <u>Exhibit A</u>.

provide established mechanisms for the collection, management, and disbursement of funds used in the Debtor's operations (the "Cash Management System"). The Cash Management System enables the Debtor to manage and control corporate funds and ensure cash availability.

10. Specifically, the Debtor's Cash Management System consists of: (a) a project cost account (the "Project Cost Account") that is Navillus' primary business account from which project-related costs, including, without limitation, suppliers and subcontractors, bonding costs, equipment rentals, job-site utilities, and permits, are paid; (b) an operating account (the "Operating Account") from which day-to-day operating expenses including union benefits, medical and dental program costs are paid; (c) a payroll account (the "Payroll Account") from which wages, taxes and other payroll-related obligations are paid; (d) a money market account (the "Money Market Account") in which excess cash is held and used to fund the Project Cost Account; (e) the Credit Cards which are used to pay vendors and miscellaneous expenses; and (f) the Brokerage Accounts in which excess cash is invested in marketable securities or fixed income products held by Navillus for investment purposes.

11. Navillus' Project Cost Account serves as its primary business account but it has historically also used the Credit Cards to pay various business and project related expenses as necessary. Maintenance of the AmEx Card on an ongoing and uninterrupted basis is essential to the Debtor's operations because, among other things, the Credit Cards provide a source of immediate liquidity as and when needed during Navillus' field operations on its projects. As of October 28, 2017, the current amount outstanding on the AmEx Card was $3,378,499.40.[3] By this Motion, Navillus seeks authority, but not the obligation, to pay certain of the charges on the

---

[3] Prior to the Petition Date, Citibank froze the Debtor's credit card based on a pre-petition judgment. Accordingly, because the liquidity under the Citibank card is no longer available to the Debtor, the Debtor's request for authority to pay the Credit Cards is limited to the AmEx Card.

AmEx Card including payments for direct project-related costs and other business expenses incurred in the ordinary course of business that will not include any payments made for the benefit of insiders in an amount to be determined by the Court.

*Navillus' Current Cash Management System Complies With Its s Obligations to Account for Use of Construction Project Funds  Pursuant to Applicable State Law*

12.     Navillus currently has over sixty eight (68) ongoing construction projects.   As a contractor performing work on construction projects that are subject to the provisions of the New York Lien Law, including the trust fund accounting provisions set forth in Article 3-A of the New York Lien Law ("Article 3-A"), Navillus is required to maintain a full accounting in its books and records of the cash receipts and disbursements on each of its open construction projects to demonstrate the allocation of trust funds received.   Article 3-A does not require separate bank accounts for each construction project, provided that the use of trust funds is properly recorded in the Navillus' books and records.  N.Y. LIEN LAW § 75.   Navillus uses the Timberline accounting system which is specialized software used throughout the construction industry to create one central, single source of accounting and project information that provides a full and accurate accounting of all cash receipts and disbursements on each of its open projects and demonstrates the allocation of all trust funds received by Navillus.   Accordingly, Navillus' current books and records and related accounting systems complies with the provisions of Article 3-A of the Lien Law.

## **RELIEF REQUESTED**

13.     By this Motion, the Debtor seeks entry of an order, pursuant to sections 105(a), 345, 363, 364 and 503 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, authorizing the Debtor to (i) continue its Cash Management System in the ordinary course of business, consistent with its prepetition practices, including making payments of certain sums

due under the AmEx Card, (ii) maintain its existing Bank Accounts, Credit Cards and Brokerage

Accounts, including directing the immediate lifting and vacatur of the Restraining Notices and

related levy, (iii) receive a waiver of certain operating guidelines relating to the Bank Accounts

set forth in the U.S. Trustee Guidelines, and (iv) receive a waiver of the investment and deposit

guidelines of section 345 of the Bankruptcy Code.

14.     Navillus submits that the relief requested herein is a reasonable exercise of its

business judgment and will help ensure the Debtor's orderly entry into chapter 11 and avoid

many of the possible disruptions to its operations, hundreds of employees and over sixty eight

(68) ongoing private and public projects during the critical early days of this chapter 11 case.

**<u>BASIS FOR RELIEF REQUESTED</u>**

A.     **The Debtor Should Be Authorized (1) to Continue to Use the Cash Management
       System Under Section 363 of the Bankruptcy Code and Based on the Statutory
       Requirements of the New York Lien Law and (2) to Pay Certain Pre-Petition
       <u>Charges on the Credit Cards Incurred in the Ordinary Course of Business</u>**

15.     The Debtor requests authority to continue to use its Cash Management System in

order to avoid disruption to its business operations and preserve its going concern value.  The

Cash Management System constitutes a customary and essential business practice for the Debtor.

It allows the Debtor to track all cash payments, control and monitor corporate funds and ensure

cash availability.  Requiring the Debtor to establish a new system of accounts would be unduly

burdensome with little corresponding benefit since, among other things, such an exercise would

be (a) costly, (b) disrupt Navillus' ability to satisfy post-petition payables in a timely manner,

potentially causing a loss of trade credit and customer and employee confidence and (c) interfere

with the efficient management of Navillus' resources and its ongoing operations on its private

and public construction projects  Accordingly, the Debtor respectfully requests that the Court

authorize the Debtor's continued use of the Cash Management System described herein.

6

> (i)    *Continued Use of the Cash Management System is Permissible Under Section 363 of the Bankruptcy Code*

16.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. §363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor with the flexibility to engage in its day-to-day transactions without incurring excessive monitoring costs that would result from the need to provide notice of, and obtain approval for, ordinary course activities. See, e.g., Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997).  The Debtor's ability to continue using the Cash Management System and engage in related routine transactions falls within the parameters of section 363(c)(1) of the Bankruptcy Code.  See Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp., Inc.), 75 F.3d 1447, 1453 (10th Cir. 1996); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

17.    To the extent that continuing to use the Cash Management System is beyond the ordinary course of the Debtor's business, the Debtor submits that such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b).  Courts generally hold that a debtor's decision to enter into a transaction outside the ordinary course of business is governed by the business judgment standard.  See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612,

Pg 8 of 25

616 (Bankr. S.D.N.Y. 1986).  Further, section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18.    Accordingly, Navillus' request to maintain its existing Cash Management System and for a waiver of (i) certain United States Trustee Guidelines regarding Navillus Bank Accounts and (ii) the deposit and investment guidelines of Section 345 of the Bankruptcy Code is a reasonable exercise of its business judgment.

> (ii)    *Continued Use of the Cash Management System is Consistent With the Requirements of Article 3-A of the Lien Law*

19.    The Debtor further submits that continued use of its Cash Management System is consistent with its obligations under Article 3-A of the Lien Law and requests that this Court authorize the Debtor to continue its Cash Management System in the manner that it has been operated pre-petition, in compliance with Article 3-A of the Lien Law and without the need for separate bank accounts for each of the Debtor's sixty eight (68) projects.  As a part of its Cash Management System, the Debtor maintains four (4) Bank Accounts and two (2) Credit Cards to serve various functions in connection with the Debtor's construction operations, and the Debtor's books and records account for the cash receipts and clearly record all expenditures on each of its construction projects in accordance with the requirements of Article 3-A of the Lien Law.

20.    The Debtor does not maintain separate bank accounts for each construction project because it is not required to do so under Article 3-A and, moreover, given the volume of open and active construction projects at any given time, maintaining separate bank accounts would impose an extreme administrative burden on the Debtor's accounting staff without any corresponding benefit to the estate.

21.     Under Article 3-A, when a contractor/trustee such as the Debtor deposits the funds received on a construction project into a bank, "the trustee *shall not* be required to keep in separate bank accounts or deposits the funds" over which he or she is trustee.  N. Y. LIEN LAW § 75(1).  The New York Court of Appeals has stated, "the contractor-trustee is privileged to commingle funds," Aquilino v. U.S., 10 N.Y.2d 271, 280 1961), and "the privilege of the trustee to commingle funds 'is considerably mitigated by the elaborate provisions found in the statute for accounting for trust proceeds and expenditures . . . .'"  Raisler Corp. v. Uris 55 Water St. Co., 397 N.Y.S.2d 668, 672 (N.Y. Sup. Ct. 1977) (quoting Aquilino, 10 N.Y.2d at 281).  The Lien Law requires that contractor/trustees maintain detailed bookkeeping regarding allocation of trust assets for each trust.  N. Y. LIEN LAW § 75.

22.     New York bankruptcy courts have repeatedly upheld the state court's rulings that funds received by contractor/trustees need not be held in separate bank accounts so long as the funds are properly applied first to the payment of Lien Law beneficiaries including suppliers, laborers and materialmen.  In re Jandous Elec. Constr. Corp., 115 B.R. 46, 52 (Bankr. S.D.N.Y. 1990) (citing Aquilino); see also Mendelsohn v. Roalef (In re E.D.B. Constr. Corp.), Adv. Proc. No. 13-8021-reg, 2013 WL 6183849, at *3 (Bankr. E.D.N.Y. Nov. 26, 2013) ("The trustee is not required to keep the funds of the trusts in separate bank accounts; however the trustee must keep books or records for each trust and if the funds are commingled, keep a record of the account showing the allocation to each trust of the deposits and withdrawals therefrom.").

(iii)    *Payment of Certain Amounts Due Under the Credit Cards is Essential to the Debtor's Continued Operations*

23.     The Debtor utilizes the Credit Cards to make payments of costs that would typically otherwise be paid from the Project Cost Account or the Operating Account towards vendors and other miscellaneous operating costs.  The Credit Cards afford the Debtor enhanced

liquidity and flexibility in managing its cash flow and meeting the immediate needs of its projects and represent an important component of the Debtor's Cash Management System. While Citibank has frozen the Debtor's access to its business credit card and, therefore, the Debtor does not at this time seek to repay any prepetition amounts due to Citibank because it no longer represents a source of available funding for the Debtor's operations, the Debtor's AmEx Card remains an integral component of the Cash Management System which the Debtor seeks to maintain.

24.     Accordingly, by this Motion, the Debtor seeks authority but not direction to, in its sole discretion, maintain the Credit Cards in the ordinary course of business and to pay certain of the prepetition obligations due and owing to American Express under the AmEx Card including payments for direct project-related costs and other business expenses incurred in the ordinary course of business that will not include any payments made for the benefit of insiders.  The Debtor submits that maintaining access to the AmEx Card is essential to a smooth transition into chapter 11, as cardholders utilize the AmEx Card in the ordinary course of business as part of daily operations.

25.     For all of the foregoing reasons, the Debtor submits that the Cash Management System is beneficial to the Debtor, its estate and its creditors because it enables the Debtor to (i) reduce the administrative expense associated with moving funds, (ii) maintain accurate information regarding receipts, account balances and disbursements, (iii) maintain an efficient process for investment of cash and (iv) ensure compliance with the Debtor's accounting and disbursement procedures.  Under the circumstances and in light of the Debtor's belief, in the exercise of its business judgment, that continued use of the prepetition Cash Management System is in the best interest of its estate, the Debtor requests that the Court authorize the Debtor

to continue using the Cash Management System, including paying certain amounts due and owing under the AmEx Card.

**B.**     **Certain U.S. Trustee Guidelines Regarding Navillus Bank Accounts and Brokerage Accounts Should be Waived And The Court Should Vacate the Restraining Notices and Levy**

> *(i)     The Court Should Grant Navillus a Waiver of the U.S. Trustee Guidelines Regarding Navillus' Bank Accounts and Business Forms*

26.     The operating guidelines relating to bank accounts set forth by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") pursuant to the *U.S. Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), which were adopted in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases, require chapter 11 debtors to, among other things, (a) close all existing bank accounts; (b) open new debtor-in-possession operating, payroll and tax accounts at certain financial institutions designated as authorized depositories by the U.S. Trustee; and (c) obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information relating to the chapter 11 case.  Strict enforcement of the U.S. Trustee Guidelines in this chapter 11 case would disrupt the Debtor's ordinary business operations and cause unnecessary concern among its hundreds of employees, vendors and project owners, thereby reducing efficiency and causing avoidable expense.

27.     Here, the Debtor's continued use of the Bank Accounts held at Signature, as well as the Credit Cards, is critical to its smooth and orderly transition into chapter 11.  Signature is designated as an authorized depository by the U.S. Trustee.  All parties in interest in the case will be best served by the continued use of the Bank Accounts because it will minimize disruption to the Debtor's business operations.  To ensure that the maintenance of the Cash Management

11

System does not prejudice any parties in interest, the Debtor will separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records.  These transactions will also be incorporated into the monthly operating reports that will be filed with the Court during the pendency of this chapter 11 case.  In addition, the Debtor will designate the Bank Accounts as debtor-in-possession accounts in its books and records and with the affected financial institutions.  Accordingly, the Debtor requests that this Court waive the U.S. Trustee Guidelines requiring that the Debtor close all existing bank accounts and open new debtor-in-possession accounts.

28.    The Debtor also seeks a waiver of the requirement to establish specific accounts for operating, payroll and tax obligations, as it believes that these obligations can be paid most efficiently out of the Debtor's current Bank Accounts through the Cash Management System that was in place prepetition, as the Debtor's Cash Management System is comprised of separate bank accounts for payroll and operating costs.  The Debtor submits that the U.S. Trustee can adequately monitor the flow of funds into and out from such accounts and that the creation of new debtor-in-possession accounts designated solely for such obligations would be inefficient and unnecessary.

*(ii)    Brokerage Accounts*

29.    The Debtor further requests that Signature, Wells Fargo and Wall Street Access, the banks where the Debtor holds its Bank Accounts and Brokerage Accounts, be authorized to (a) continue to administer the Bank Accounts and Brokerage Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts and

Brokerage Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, if Signature has been specifically authorized to honor such check by Order of this Court.

*(iii)    Restraining Notices and Related Levy*

30.    Subject to section 553 of the Bankruptcy Code and any orders of this Court approving post-petition secured financing, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank or any other entity against the Debtor that arose before the Petition Date, absent further order of the Court.  For the avoidance of doubt, the Debtor requests that Signature be directed to immediately release any freeze on any of the Debtor's Bank Accounts that was implemented as a result of the entry of the Restraining Notices and related levy because the Restraining Notices and related levy were entered within days of the Petition Date, are based upon a judgment obtained within the 90-day preference period and are, therefore, avoidable as preferences and cannot be enforced.

*(iv)    Business Forms*

31.    Finally, in the ordinary course of business, the Debtor uses a variety of checks and other business forms, including purchase orders and invoices (collectively, the "Business Forms").  By virtue of the nature and scope of the Debtor's business, and the numerous suppliers of goods and services and other parties with whom the Debtor conducts business, it is imperative that the Debtor be permitted to continue to use the Business Forms without alteration or change.

32.    After the Petition Date, the Debtor seeks to continue using its current Business Forms, including its existing check stock, not having a debtor-in-possession designation.  When

reordering checks, however, the Debtor will ensure that the new check stock printed for the Debtor reflects its status as a debtor-in-possession.   The Debtor submits that changing correspondence and other Business Forms would be unnecessary and burdensome to the estate, as well as expensive and disruptive to ongoing business operations.

33.    Accordingly, the Debtor requests that this Court approve modifications to the U.S. Trustee Operating Guidelines relating to closing all accounts, opening new payroll, tax and operating accounts, and obtaining new business forms bearing a debtor-in-possession designation.  The Debtor submits that the proposed course of action described above will satisfy the purposes of the U.S. Trustee Operating Guidelines without unnecessary disruption to the estate.

**C.    Cause Exists to Waive the Deposit and Investment Guidelines of Section 345 of the Bankruptcy Code**

34.    The Debtor submits that cause exists to waive the investment and deposit restrictions imposed by section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines. Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain from the entity with which the money is deposited a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise.  11 U.S.C. § 345(a)-(b).  Alternatively, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303 which provides that a person may provide a governmental obligation in lieu of a surety bond.

35.     Congress has cautioned that the investment and deposit guidelines of section 345 of the Bankruptcy Code may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but such requirement] can work to needlessly handcuff larger, more sophisticated debtors." H.R. Rep. 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994).   As such, section 345(b) of the Bankruptcy Code "allow[s] the courts to approve investments other than those permitted by section 345(b) for just cause." Id.

36.     To that end, section 345(b) of the Bankruptcy Code provides that a bankruptcy court may waive compliance with section 345(b) "for cause".  11 U.S.C. § 345(b); see also In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).  A totality of the circumstances analysis is utilized to determine if cause exists and the following factors are considered: (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the investments involved; (d) the bank ratings of the financial institutions where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business of insuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the estate; and (j) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.  Id. (quoting H.R. Rep. 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994)).

37.     As set forth further below, a totality of the circumstances analysis will support Navillus' assertion that cause exists to waive its compliance with Section 345 of the Bankruptcy Code because, among other reasons, (i) Navillus is a sophisticated business with over $240

15

million in annual revenue and approximately $750 million in open projects, (ii) the amount of investments involved is approximately $10 million, (iii) the benefit to Navillus of not having to immediately liquidate its investments in the Brokerage Accounts when there are sufficient funds available for Navillus' working capital needs in cash and pursuant to a $135 million DIP loan facility, (iv) there is little or no harm to the estate (v) the tax consequences of liquidating securities the proceeds of which are not needed to fund Navillus' working capital needs and (vi) Navillus' request to continue its ordinary business practices is reasonable.

38.    The Debtor has determined that the Bank Accounts at Signature and the Brokerage Accounts at Wells Fargo are held with authorized depositories in accordance with the U.S. Trustee Operating Guidelines, however the Brokerage Account with Wall Street Access is not an authorized depository. Although the balances in certain of the Bank Accounts and Brokerage Accounts are likely to exceed the amount that is insured by the Federal Deposit Insurance Company, the Debtor maintains that the financial institutions that form a part of the Debtor's Cash Management System are highly rated and secure federally chartered banks subject to supervision by federal banking regulators, and the Debtor retains the right to remove the funds held at such banks.

39.    Accordingly, the Debtor submits that, although its investment practices may not strictly comply in all respects with the requirements of section 345 of the Bankruptcy Code, the Debtor's investments are nevertheless safe, prudent and designed to yield the maximum reasonable return on the funds invested, taking into account the safety of such deposits. Moreover, the Debtor is a sophisticated corporation with business operations that generate over $200 million in revenues on an annual basis, and the disruption associated with dismantling the Cash Management System to come in strict compliance with section 345 of the Bankruptcy Code

16

does not outweigh the benefits of doing so.  Cause therefore exists to waive the requirements of section 345(b) of the Bankruptcy Code to permit the Debtor to continue utilizing its Cash Management System in the same manner as it did prior to the Petition Date.

40.     Nonetheless, the Debtor intends to engage in discussions with the U.S. Trustee to determine what modifications, if any, to the Bank Accounts, Brokerage Accounts or any other component of the Debtor's Cash Management System would be appropriate under the circumstances.  Therefore, Navillus also requests a thirty (30) day extension (or such additional time as the U.S. Trustee may agree) of the time period in which to come into compliance with section 345(b) of the Bankruptcy Code to enable the Debtor and the U.S. Trustee to discuss the proper measures under the circumstances.

**REQUEST FOR WAIVER OF STAY**

41.     The Debtor further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

42.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise."  As set forth above, maintenance of the Debtor's Cash Management System and continued access to its Bank Accounts essential to prevent irreparable damage to the Debtor's operations and value.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

**NOTICE**

43.     Notice of this Motion has been given to (a) the United States Trustee for the Southern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) counsel to Liberty Mutual Insurance Company; (d) counsel to Signature Bank; (e) Citibank; (f) American Express; (g) Wells Fargo; (h) Wall Street Access; and (i) any other party who requests to receive notices. Navillus submits that, under the circumstances, no other or further notice is required.

44.     No previous application for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Order annexed hereto as Exhibit "B" granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       November 8, 2017

CULLEN AND DYKMAN LLP

By:    */s/  C. Nathan Dee*
       C. Nathan Dee, Esq.
       Elizabeth M. Aboulafia, Esq.
       100 Quentin Roosevelt Boulevard
       Garden City, New York 11530
       (516) 357-3700

       *Proposed Counsel to Navillus Tile, Inc.*

**Exhibit A**

**BANK ACCOUNTS AND BROKERAGE ACCOUNTS**

|   | Bank Name | Account Name | Account # |
|---|-----------|--------------|-----------|
|   | **BANK ACCOUNTS** | | |
| 1 | Signature Bank | Operating Account | X2395 |
| 2 | Signature Bank | Project Cost Account | X5155 |
| 3 | Signature Bank | Money Market Account | X5539 |
| 4 | Signature Bank | Signature Payroll | X7348 |
|   | **BROKERAGE ACCOUNTS** | | |
| 1 | Wall Street Access | Brokerage | X2886 |
| 2 | Wells Fargo | Brokerage | X8855 |
| 3 | Wells Fargo | Brokerage | X2615 |
| 4 | Wells Fargo | Brokerage | X6110 |
| 5 | Wells Fargo | Brokerage | X6454 |
| 6 | Wells Fargo | Brokerage | X0593 |
| 7 | Wells Fargo | Brokerage | X0544 |

## Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
NAVILLUS TILE, INC., DBA NAVILLUS                                :    Case No. 17-13162 (SHL)
CONTRACTING                                                      :
                                                                 :
                    Debtor.                                      :
                                                                 :
-----------------------------------------------------------------x

### INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO (I) CONTINUE ITS CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS, (III) RECEIVE A WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS, (IV) RECEIVE A WAIVER OF THE REQUIREMENTS OF 11 U.S.C. § 345 AND (B) IMMEDIATELY VACATING CERTAIN RESTRAINING NOTICES AND LEVY

Upon the motion (the "Motion")[1] filed by Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-possession ("Navillus" or the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, pursuant to sections 105, 345, 363, 364, and 503 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (a) authorizing, but not directing, Navillus to (i) continue using its cash management system, including making payment of sums due under certain credit cards, (ii) maintain and continue to use existing bank accounts, credit cards and brokerage accounts, including directing the immediate lifting and vacatur of certain restraining notices and a related levy on its bank accounts, (iii) receive a waiver certain operating guidelines relating to bank accounts, and (iv) receive (a) a waiver of the investment and deposit guidelines

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of Section 345 of the Bankruptcy Code or (b) a thirty (30) day extension of time to continue

discussion with the United States Trustee regarding Navillus compliance with the requirements

of Section 345 of the Bankruptcy Code regarding the brokerage accounts, and (b) immediately

vacating certain restraining notices and levy; the Court, having reviewed the Motion and having

heard the statements of counsel in support of the interim  relief requested in the Motion at the

hearing before the Court on November __, 2017 (the "Hearing"), finds that the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant

to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the

circumstances and that no further notice need be given, and the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein and that such

relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      Navillus shall be and hereby is authorized to continue to manage the collection

and disbursement of its cash utilizing its Cash Management System in the ordinary course of

business consistent with its prepetition practices.

3.      Navillus shall be and hereby is authorized, but not directed, to maintain the Credit

Cards in the ordinary course of business and to make payment of the prepetition amounts due

and owing under the AmEx Card as of the Petition Date as further set forth in the Motion.

4.      Unless otherwise set forth herein, the requirements of the U.S. Trustee Guidelines

that Navillus (i) close all existing Bank Accounts and open new debtor-in-possession accounts,

(ii) establish specific bank accounts for operating, payroll and tax payments, and (iii) obtain and

utilize new checks which bear the designation "Debtor-in-Possession" and contain certain other

information regarding the chapter 11 case are hereby waived, and the Debtor is authorized to maintain its existing Bank Accounts, Credit Cards and Brokerage Accounts.

5.     The Debtor may disburse funds from the Bank Accounts and Brokerage Accounts by checks, drafts, wires, debits, ACH transfers or by any other means.

6.     The banks where the Debtor holds its Bank Accounts and Brokerage Accounts shall be and hereby are authorized to (a) continue to administer the Bank Accounts and Brokerage Accounts in the manner maintained prior to the Petition Date in the usual and ordinary course; and (b) receive, process and honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts and Brokerage Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtor (i) after the Petition Date, or (ii) prior to the Petition Date, for the payment of any and all amounts approved by this Court.

7.     Subject to section 553 of the Bankruptcy Code and any orders of this Court approving post-petition secured financing, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in section 101(5) of the Bankruptcy Code) of any such bank or other entity against Navillus that arose before the Petition Date, absent further order of the Court.

8.     Signature shall immediately release any freeze on any of Navillus' Bank Accounts that was implemented as a result of the entry of the Restraining Notices and related levy, which were entered within days of the Petition Date, are based upon a judgment obtained within the 90-day preference period and are, therefore, avoidable as preferences and cannot be enforced.

9.      The Debtor's use of the Bank Accounts held at Signature following the Petition Date shall not constitute a violation of the Restraining Notices or levy by the Debtor or Signature, and the Debtor's use of the Bank Accounts and Signature's consent to use of the Bank Accounts in accordance with this Interim Order or any Final Order entered with respect to the Motion shall not constitute a violation of the Restraining Notices or levy.

10.     The Debtor is authorized to maintain and continue using its current Business Forms, including its existing check stock, not having a debtor-in-possession designation; provided that any new check stock printed for the Debtor shall reflect its status as a debtor-in-possession.

11.     The Debtor shall separately record the balances of each of the Bank Accounts as of the Petition Date and track postpetition activity by documenting any postpetition transactions in the Debtor's books and records to the same extent maintained by the Debtor prior to the Petition Date.

12.     To the extent that the Debtor's deposit and investment practices do not conform with the approved investment practices identified in section 345(b) of the Bankruptcy Code, the Court hereby approves such practices and waives the requirements of section 345(b) of the Bankruptcy Code until entry of a final order on the Motion.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this order shall be immediately effective upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

15.     A hearing shall be held to consider the relief granted herein on a final basis on November __, 2017 at __:00 _.m. before the Honorable _____, United States

Bankruptcy Judge, in Courtroom ____ of the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York, 10004 (the "Final Hearing")

and, pending entry of an order following the conclusion of the Final Hearing, the relief granted

herein shall remain in effect on an interim basis.

Dated: November _____, 2017
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE