CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

*Proposed Counsel to Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| NAVILLUS TILE, INC., DBA NAVILLUS CONTRACTING | : Case No. 17-13162 (SHL) |
|  | : |
| Debtor. | : |
|  | : |

-----------------------------------------------------------------x

**AFFIDAVIT OF DONAL O'SULLIVAN**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

STATE OF NEW YORK      )
                                        ) ss.:
COUNTY OF NEW YORK  )

**DONAL O'SULLIVAN**, being duly sworn, deposes and says:

1.     I am the President and Chief Executive Officer of Navillus Tile, Inc. d/b/a Navillus Contracting ("Navillus" or the "Debtor"), debtor and debtor-in-possession herein. In this capacity, I am familiar with the day-to-day operations and financial affairs of Navillus.

2.     I submit this affidavit (the "Affidavit") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") in support of Navillus' petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date").  Except as otherwise indicated, all facts set forth in this Affidavit are based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning Navillus' operations.

If called upon to testify, I would testify competently to the facts set forth in this Affidavit.  I am authorized to submit this Affidavit on behalf of Navillus.

3.      Local Rule 1007-2 requires certain information related to Navillus, which is set forth below and in the schedules annexed hereto.  Unless otherwise indicated, the financial information contained herein is unaudited.

4.      <u>Local Rule 1007-2(a)(1)</u>: The nature of Navillus' business and the circumstances leading to Navillus' filing this Chapter 11 case are as follows:

Navillus is a New York corporation founded in 1987 as a small family-owned tile business by myself and my brothers Kevin and Leonard O'Sullivan.  In 1998, Leonard left the company and in January 2015, Kevin sold his interest in the company to me, at which point I became the sole owner of Navillus.  In or around March 2017, I transferred my ownership interests to certain trusts, however I remain the sole director, President and Chief Executive Officer of Navillus.

*Navillus' Business Operations*

Currently, Navillus is one of the largest subcontractors and general contractors in New York, specializing as a high-end concrete and masonry subcontractor on large private and public construction projects in the New York metropolitan area.  In addition to its core expertise in concrete superstructure work, Navillus also performs stone, tile, steel, restoration, repointing, roofing, carpentry, electrical, plastering and fireproofing work.  While the majority of Navillus' work is subcontracting work, Navillus also has the capability to serve as a general contractor on projects where it self-performs the work.  Navillus works closely with many of New York's most prominent architects, builders, owners, government agencies and institutions and is pre-qualified

by numerous commercial and government agencies.  Navillus also has one of the best safety records in the industry and is firmly committed to worker training and safety,

As of the Petition Date, Navillus employed over seven hundred (700) individuals, including approximately six hundred forty (640) individuals to provide labor in connection with approximately sixty eight (68) open construction projects and approximately sixty five (65) individuals at the management level and to provide home office support.  The level of field labor varies depending on the volume of open construction projects, and Navillus employs up to approximately one thousand six hundred (1,600) field laborers during peak times.

Navillus operates its business from a midtown Manhattan headquarters which it has leased since 2015.  Navillus also leases yard space in Astoria, Queens where it stores construction equipment and its fleet of vehicles.  On average, Navillus has gross annual income of approximately $180 million.  In the 2016 calendar year, Navillus had gross contract revenues of approximately $240 million.

Navillus is party to collective bargaining agreements with approximately eighteen (18) trade unions in New York.  Navillus is one of the largest contributors to union funds in the New York metropolitan area, having contributed more than $172 million to the New York union funds in the last five (5) years alone.

### *District Court Litigation With Unions*

Over the course of the past three (3) years, Navillus has defended a lawsuit (the "District Court Action") in the United States District Court for the Southern District of New York (the "District Court") brought by five union pension and welfare benefit funds (the "Union Plaintiffs") against Navillus and other defendants in the consolidated action styled as *Moore, et al. v. Navillus Tile, Inc., et al.* and *Gesualdi, et al. v. Navillus Tile, Inc., et al.* (Lead Case No. 14-

cv-08326).   The District Court Action has resulted in substantial litigation costs and a $76 million judgment (the "Judgment") entered against Navillus on September 22, 2017.  Navillus strongly believes that the Judgment was wrongly decided and has appealed (the "Appeal") the Judgment to the United States Court of Appeals for the Second Circuit (the "Second Circuit") where it intends to pursue its appellate remedies to overturn or, at the very least, substantially reduce, the Judgment.

Navillus cannot afford pay the Judgment and maintain its ongoing operations.   While Navillus has assets, many of its assets are in the form of work in progress on open construction projects as well as future contract revenues that are not capable of being liquidated.  Navillus has exhausted all available remedies to address this issue outside of a bankruptcy filing.

On September 30, 2017, Navillus moved for an emergency stay of the Judgment pending Appeal in the Second Circuit.  Oral argument was held before a three-judge panel of the Second Circuit and, on October 31, 2017, the Second Circuit issued an order denying Navillus' motion for a stay of execution of the Judgment.

Consequently, on November 1, 2017, the Union Plaintiffs served restraining notices on the Debtor's bank accounts, resulting in the freezing of Navillus' bank accounts and bringing operations to a halt.  On November 2, 2017, the U.S. Marshal levied the Debtor's bank accounts to satisfy approximately $1.8 million of the Judgment held by one of the Union Plaintiffs. Accordingly, on the Petition Date, Navillus filed this chapter 11 case.

### *Events Leading to Chapter 11 Filing*

Outside of chapter 11, because no consensual or judicial stay was in place, the Union Plaintiffs commenced with execution on the Judgment upon entry of the order of the Second Circuit denying Navillus' motion for an emergency stay of the Judgment pending Appeal.  Given

the size of the Judgment, a precipitous foreclosure by the Union Plaintiffs in the District Court Action would pose a serious threat to Navillus' long-term viability to the detriment of all of its constituencies, including its over seven hundred (700) employees.

In addition, the Judgment has led to numerous issues on Navillus' two largest open construction projects.  On October 3, 2017 and October 5, 2017, Tishman Construction Corporation of New York ("Tishman"), in its capacity as construction manager on Navillus' two largest construction projects – One Vanderbilt and Manhattan West (the "Tishman Projects"), respectively, issued notices of default and termination to Navillus based on its determination that the Judgment rendered Navillus insolvent.  These two projects, with a combined contract value of over $279 million and over $190 million in work in progress remaining as of the Petition Date, account for approximately 40% of Navillus' current work in progress as of the Petition Date.

Following the issuance of termination letters, on October 5, 2017, Tishman directed Navillus to continue working on the Tishman Projects to facilitate an orderly transition of the work to Liberty.  While Navillus contests the propriety of the terminations, it agreed to continue working on the Tishman Projects pursuant to the terms of transition work agreements while Tishman, Liberty and Navillus entered into negotiations regarding the completion of work on the Tishman Projects.

As a part of these negotiations, Tishman requested that Liberty provide Navillus with backstop financing to continue the progress of work on the Tishman Projects.  Navillus and Liberty thereafter engaged in negotiations regarding the terms of a Financing Agreement pursuant to which Liberty has agreed to provide Navillus with financing in an amount of up to $135 million to allow Navillus to continue to perform work on all of its open construction

projects that are bonded by Liberty.  Navillus anticipates finalizing the terms of the Financing

Agreement and submitting such agreement to the Court for approval in the coming days.

Accordingly, absent the protections of chapter 11, Navillus is at risk of having its assets

depleted and losing the contracts that comprise its sole source of revenues.  This chapter 11 filing

seeks to protect the value of Navillus' business for all of its constituencies – including the trade

creditors that continue to supply materials, equipment and other goods and services to Navillus

in connection with its open construction projects, as well as the Union Plaintiffs.

After careful consideration, and after exhausting all available remedies outside of a

chapter 11 filing, Navillus has determined that it requires the protection offered by chapter 11.

Navillus intends to expeditiously pursue the Appeal in the Second Circuit and use the chapter 11

process to reorganize its operations in an orderly fashion and develop a reorganization plan that

will preserve its value as a going concern for its creditors and interest holders.  Even if the

Appeal is successful and the Judgment is vacated or substantially reduced, Navillus will still

need to reorganize through chapter 11 to address the issues that have arisen with Tishman and

Liberty with respect to the Tishman Projects.

As a result of the foregoing, on the Petition Date, Navillus filed its chapter 11 bankruptcy

case.  Navillus intends to continue operating and to file a plan of reorganization through which it

will repay its obligations so that it may continue working on its backlog of future construction

projects and serving as a significant union employer in the New York construction market.

Navillus believes that based on the current valuation of its assets, there will be funds sufficient to

make a distribution to unsecured creditors.

As part of its reorganization strategy, Navillus has determined that it would be in the best

interest of the company and its estate to employ Glass Ratner ("GR") to provide a chief

restructuring officer and related support to Navillus to assist it with its reorganization strategy. Accordingly, on the Petition Date, Navillus retained GR and Dan Scouler, Sr. has been designated as Navillus' chief restructuring officer.

*First Day Motions*

To preserve the value of the business, Navillus' immediate objective is to maintain a business-as-usual atmosphere during the pendency of this chapter 11 case with as little additional interruption or disruption to the Navillus' business operations as possible. In that regard, Navillus will file certain requests for immediate relief on shortened notice (the "First Day Motions"). I believe that if the Court grants the relief requested in each of the First Day Motions, the prospect for achieving these objectives will be substantially enhanced.

I have reviewed each of the First Day Motions and proposed orders and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I believe that the relief sought in each of the First Day Motions and accompanying orders is vital to enable Navillus to operate in chapter 11 while preserving the value of this business. I believe that immediate and irreparable harm will result to Navillus and its estate if the relief sought in the First Day Motions is not granted because each of the First Day Motions involve matters of such a nature that any delay necessary to hear them in the ordinary course could cause serious and irreparable harm to Navillus, its employees and its estate.

5.      Local Rule 1007-2(a)(2): Not applicable because Navillus' case was not originally commenced under Chapter 7 or 13.

6.      Local Rule 1007-2(a)(3): Not applicable because no committee was organized prior to the Petition Date.

7.      Local Rule 1007-2(a)(4): Schedule 1 hereto lists the following information with

respect to each of the holders of Navillus' twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number, the name(s) of persons(s) familiar with Navillus' accounts if known, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

8.      Local Rule 1007-2(a)(5): Schedule 2 hereto provides the following information with respect to each of the holders of Navillus' five (5) largest secured claims: the creditor's name and address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description of the claim, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

9.      Local Rule 1007-2(a)(6): Schedule 3 hereto is a summary of Navillus' assets and liabilities.

10.     Local Rule 1007-2(a)(7): Not applicable because none of the securities of Navillus are publicly held.

11.      Local Rule 1007-2(a)(8): Not applicable because none of Navillus' property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, including the name, address, telephone number of each such entity and the court in which any proceeding related thereto is pending.

12.     Local Rule 1007-2(a)(9):  Schedule 4 hereto provides a list of the premises owned, leased or held under other arrangement from which Navillus operates its business.

13.     Local Rule 1007-2(a)(10): Schedule 5 hereto provides the location of Navillus' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by Navillus outside the territorial limits of the United States.

14.    <u>Local Rule 1007-2(a)(11)</u>: Schedule 6 hereto provides the nature and present status of each action or proceeding, pending or threatened, against Navillus or its property where a judgment against Navillus or a seizure of its property is imminent.

15.    <u>Local Rule 1007-2(a)(12)</u>: Schedule 7 hereto provides a list of the names of the individuals who comprise Navillus' existing senior management, their tenure with Navillus, and a brief summary of their relevant responsibilities and experience.

16.    <u>Local Rule 1007-2(b)(1)</u>: Schedule 8 hereto provides the estimated amount of weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date.

17.    <u>Local Rule 1007-2(b)(2)</u>:  Schedule 9 hereto provides the estimated amount of weekly payroll to Navillus' officers, directors, stockholders and partners for the thirty (30) day period following the Petition Date.

18.    <u>Local Rule 1007-2(b)(3)</u>:  Schedule 10 hereto provides a schedule of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing for the thirty (30) day period following the Petition Date.

Dated:  November 8, 2017

                                                 NAVILLUS TILE, INC.

                                                 By: _____
                                                        Donal O'Sullivan
                                                        President

Sworn to before me, this
8th day of November, 2017

_____
Notary Public

BEATA KUZMA
Notary Public, State of New York
No. 01KU6346967
Qualified in Queens County
Commission Expires August 22, 2020

## **Schedule 1**

**20 Largest Unsecured Claims (Excluding Insiders)**

**SEE ATTACHED**

| Fill in this information to identify the case: | |
| --- | --- |
| Debtor name | **Navillus Tile, Inc.** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | **17-13162** |

☐ Check if this is an

amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **ACS System Associates, Inc. 160 W. Lincoln Avenue Mount Vernon, NY 10550** | | **Subcontractor** | | | | $330,023.75 |
| **Barbara J. Sales 126 Venango Ct. New Kensington, PA 15068** | | **Vendor** | | | | $379,568.00 |
| **Carpenters Funds - T. Kennedy c/o Kennedy, Jennik & Murray 113 University Place New York, NY 10003** | | **Judgment** | **Disputed** | | | $27,975,082.30 |
| **Cement Workers Fds -T. Kennedy c/o Kennedy Jennik & Murray 113 University Place New York, NY 10003** | | **Judgment** | **Disputed** | | | $21,926,409.86 |
| **CFS Steel Company P.O. Box 7777 Philadelphia, PA 19175-0341** | | **Vendor** | | | | $1,147,799.15 |
| **Construction Risk Partners,LLC 1250 Route 28 Suite 201 Branchburg, NJ 08876** | | **Professional Services** | | | | $1,633,791.00 |
| **DEI 151 21st Street Brooklyn, NY 11232** | | **Subcontractor** | | | | $417,978.26 |

| Debtor | **Navillus Tile, Inc.** | Case number *(if known)* | **17-13162** |
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Doka USA, Ltd. 214 Gates Road Little Ferry, NJ 07643 | | Vendor | | | | $478,577.20 |
| E. Fitzgerald Electric Co 633 3rd Avenue, 17th Fl. New York, NY 10017 | | Subcontractor | | | | $688,344.09 |
| Ferrara Bros. P.O. Box 419248 Boston, MA 02241-9248 | | Vendor | | | | $575,309.16 |
| J-BAR Reinforcement, Inc. 46 Edgemere Avenue Greenwood Lake, NY 10925 | | Subcontractor | | | | $456,147.25 |
| Local 282 Funds c/o Trivella & Forte LLP 1331 Mamaroneck Ave., Ste 170 White Plains, NY 10605 | | Judgment | Disputed | | | $1,885,012.16 |
| Local 46 Funds-Attn:T. Kennedy c/o Kennedy, Jennik & Murray 113 University Place New York, NY 10003 | | Judgment | Disputed | | | $20,483,070.01 |
| Local 780 Funds-Att-T. Kennedy c/o Kennedy, Jennik & Murray 113 University Place New York, NY 10003 | | Judgment | Disputed | | | $3,953,158.99 |
| Meco Electric Co., Inc. 56 West Street Staten Island, NY 10310 | | Subcontractor | | | | $376,071.14 |
| Morrow Equipment Comp LLC P.O. Box 3306 Salem, OR 97302 | | Vendor | | | | $338,976.29 |

| Debtor | **Navillus Tile, Inc.** | Case number *(if known)* | **17-13162** |
|---|---|---|---|
| | Name | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Peri Formwork Systems Inc. 62149 Collection Center Drive Chicago, IL 60693-0621** | | **Vendor** | | | | **$232,001.79** |
| **PMC Rebar Inc 47 Woodchuck Hollow Court Port Jefferson, NY 11777** | | **Subcontractor** | | | | **$676,254.99** |
| **Stillwell Supply Corp. 44-68 Vernon Blvd. Long Island City, NY 11101** | | **Vendor** | | | | **$315,367.51** |
| **Varsity Plumbing & Heating Inc 31-99 123rd Street Flushing, NY 11354** | | **Subcontractor** | | | | **$312,127.08** |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**Schedule 2**

**5 Largest Secured Claims**

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| **Signature Bank** | $0 | Revolving Line of Credit | Unknown | N |

## Schedule 3

### Summary of Debtor's Assets and Liabilities

   Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following unaudited financial information is the latest available information and reflects Navillus' financial condition as of March 31, 2017.

<u>Total Assets</u>:   $107,066,348

<u>Total Liabilities</u>:  $58,602,177[1]

---

[1] The amount of Navillus' total liabilities as of March 31, 2017 does not include the amount of the Judgment.

**Schedule 4**

**Premises Owned or Leased**

| Address of Property | Owned or Leased |
|---|---|
| 633 Third Avenue, 17th Floor, New York, New York | Leased |
| 26-40 1st Street, Astoria, New York 11102 | Leased |
| 27-02 1st Street, Astoria, New York 11102 | Leased |
| 27-50 1st Street, Astoria, New York 11102 | Leased |

## Schedule 5

**Location of Debtor's Significant Assets, Books
and Records and Assets Outside of U.S.**

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 633 Third Avenue, 17th Fl. New York, NY 10017 | N/A |
| Contract Receivables | Various New York project locations | N/A |
| Equipment and Inventory | Leased premises on 1st Street in Astoria, New York | N/A |

**Schedule 6**

**Litigation**

| Action or Proceeding | Nature of the Action | Status of the Action |
|---|---|---|
| Moore et al. v. Navillus Tile, Inc. dba Navilllus Contracting, Advanced Construction Solutions LLC aba ACS-NY LLC, Times Square Construction, HDK Construction (S.D.N.Y. Case No. 14-08326)<br><br>Gesualdi et al. v. Navillus Tile, Inc. dba Navvilus Contracting, Advanced Construction Solutions LLC aba ACS-NY LLC, Times Square Construction, HDK Construction (S.D.N.Y. Case No. 15-08441) | Action to collect alleged unpaid fringe benefits | Motion for stay pending appeal denied by Second Circuit Court of Appeals on October 31, 2017 (Docket Nos. 17-2985(L), 17-3028(Con.), 17-3182(Con.) |

**Schedule 7**

**Senior Management**

| Name | Title | Tenure | Experience/Responsibilities |
|---|---|---|---|
| Donal O'Sullivan | President and Chief Executive Officer | 1987 – Present | Mr. O'Sullivan is responsible for all operations of the company including, but not limited to,  construction, development, leasing and optimization of development projects, overseeing business operations and organizational management of the company, initializing quantifiable subcontractor bids prior to execution of contracts, consulting on all projects, coordinating with project owners, architects and other contracts, managing preliminary construction start-up phase, overseeing design and assist services and monitoring management of employees. |
| Peter Downes | Chief Estimator | 1994 – Present | Mr. Downes is responsible for overseeing business operations and organizational management of the company, consulting on all projects assigned to departments and liaising with these departments, and coordinating with project owners, architects and other contractors to ensure mutual understanding of contract scope and deliverables. |
| Colin Mathers | Director of Operations | 1987 – Present | Mr. Mathers is responsible for managing issues of job safety, job site security for people and equipment and construction quality, keeping accurate job related records, coordinating all facets of construction to meet overall organizational goals for operations, directing department operations, managing interdepartmental communications, performing audits to ensure subcontractor accountability and developing in house reporting. |
| Padraig Naughton | Financial Controller | 1998 – Present | Mr. Naughton is responsible for overseeing all financial operations and directing corporate financial planning and structure, coordinating, analyzing and reporting the financial performance to the executive team, providing effective financial leadership to the finance team, preparing short and long term financial forecasts, overseeing audit and tax functions and coordinating with outside audit and review firms, developing, implementing and maintaining accounting and administrative policies and procedures. |
| Helen O'Sullivan | Head of Payroll | 1992 – Present | Ms. O'Sullivan is responsible for managing payroll processes, compensation and wage structure, data entry management, developing standards, benefits administration and financial reporting. |

## Schedule 8

**Estimated Weekly Payroll (Non-Management)**

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $5,633,333, not including fringe benefits.

## Schedule 9

**Estimated Weekly Payroll (Management)**

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross payroll to Navillus' officers, directors, stockholders and partners for the thirty (30) day period following the Petition Date is approximately $22,127.30.

## **Schedule 10**

### **Cash Receipts and Disbursements, Net Cash**
### **Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

| | |
|---|---|
| **Cash Receipts** | $17,423,956 |
| **Cash Disbursements** | $18,661,626 |
| **Net Cash Gain (Loss)** | ($1,237,670) |
| **Unpaid Obligations (excluding professional fees)** | $0 |
| **Unpaid Receivables** | TBD |