CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

*Proposed Counsel to Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re:                                              : Chapter 11
                                                    :
NAVILLUS TILE, INC., DBA NAVILLUS      : Case No. 17-13162 (SHL)
CONTRACTING                                  :
                                                    :
                        Debtor.                 :
                                                    :
----------------------------------------------------------------x

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY (A) CERTAIN PREPETITION EMPLOYEE OBLIGATIONS AND (B) PREPETITION WITHHOLDING OBLIGATIONS, (II) AUTHORIZING THE DEBTOR TO CONTINUE PERFORMING UNDER THE COLLECTIVE BARGAINING AGREEMENTS  (III) AUTHORIZING THE DEBTOR TO CONTINUE TO PROVIDE EMPLOYEE BENEFIT PROGRAMS TO NON-UNION EMPLOYEES; (IV) DIRECTING BANKS TO HONOR RELATED PREPETITION <u>TRANSFERS, AND (V) GRANTING RELATED RELIEF</u>

Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-

possession (the "Debtor" or "Navillus"), by and through its proposed attorneys Cullen and

Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105, 363, 507,

1107 and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and

Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for

entry of an order (i) authorizing Navillus to pay (a) certain prepetition employee obligations, and

(b) prepetition withholding obligations and payroll taxes, (ii) authorizing Navillus to perform

under the terms of the collective bargaining agreements with various unions, (iii) authorizing Navillus to continue to provide certain employee benefit programs to its non-union employees; (iv) directing banks to honor prepetition transfers related to the foregoing, and (v) granting related relief.  In support of the Motion, Navillus respectfully represents as follows:

## INTRODUCTION

1.      On November 8, 2017 (the "Petition Date"), Navillus filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      Navillus has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, Navillus filed the Affidavit of Donal O'Sullivan pursuant to Local Bankruptcy Rule 1007-2 (the "O'Sullivan Affidavit").  A detailed factual background of Navillus' business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the O'Sullivan Affidavit, filed contemporaneous herewith and incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105, 363, 507, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

7.      Founded in 1987 as a small family-owned tile business, Navillus is now one of the largest subcontractors and general contractors in New York, serving primarily as a masonry and concrete subcontractor on large private and public construction projects in the New York metropolitan area.  Although the size of its work force fluctuates based on the volume of open construction projects, as of the Petition Date, Navillus employed approximately seven hundred (700) individuals to provide labor in connection with approximately sixty eight (68) open construction projects as well as home office support from its Manhattan headquarters.

8.      Navillus' current work force as of the Petition Date (the "Employees") is comprised of: (a) sixty five (65) salaried employees, (b) six hundred forty (640) hourly union employees, and (c) three (3) independent contractors. During its peak periods, Navillus employs over one thousand six hundred (1,600) individuals.

9.      Accordingly, in order to maintain its operations and maximize the value of the its estate, Navillus must retain its Employees so that it can continue to perform work on its open construction projects and provide the home office and managerial support necessary to oversee the performance of work at a critical time for the company while it transitions its operations into chapter 11.

## RELIEF REQUESTED

10.      By this Motion, Navillus seeks authority, in its discretion, to pay and/or honor in the ordinary course of business, (a) all prepetition wage claims of Employees up to the statutory cap of $12,850 per Employee, and (b) all prepetition withholding obligations and payroll taxes related to such wages.  Navillus seeks further authority to continue to perform under the terms of various collective bargaining agreements with the Unions (defined below), including

withholding Union Dues (defined below) and making payment of Union Fringes (defined below), to provide for the continuation of certain employee benefit programs.  With respect to Navillus' Non-Union Employees (defined below), Navillus similarly seeks authority to continue to provide the employee benefit programs that were in place prior to the Petition Date, as well as to make payment of amounts due Independent Contractors and for Business Expenses (each as defined below).

11.    Navillus also requests that the Court enter an order directing all banks to honor Navillus' prepetition checks or electronic transfers for payment of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing.  Finally, Navillus requests authority, in its discretion, to issue new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently.

12.    Navillus' Employees are an extremely valuable asset, and Navillus' ability to maintain its workforce is critical to its ability to demonstrate to construction project owners that business will continue without interruption during the chapter 11 case.  Navillus' success is dependent on its ability to minimize the disruption to its ongoing operations through coordination with home office and field level employees.  The Employees who provide labor on ongoing construction projects in the New York metropolitan area as well as the individuals employed at Navillus' home office that support and oversee all aspects of construction operations are essential to Navillus' ability to effectively reorganize.  Absent the relief requested herein, not only would the Employees suffer enormous personal hardship, but Navillus' business

would be immediately and irreparably harmed. Without its Employees, Navillus would have no ongoing operations and would therefore be unable to reorganize for the benefit of its creditors.

13.    In addition, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor corporation and its employees. The uncertainty of any debtor-employer's future often damages employee morale at a critical time when the debtor requires its employees' loyalty the most. In this case, honoring the pre-petition employee obligations described herein will minimize the hardship that the Employees would otherwise endure if payroll and benefit programs were interrupted. Honoring these obligations will also prevent a rapid loss of Employees that otherwise may occur if the Employees lost their reasonable expectation of compensation for their services. Navillus therefore believes that the continued payment of prepetition employee obligations in the ordinary course of business is both critical and justified based on the importance of the Employees to Navillus' operations.

### I.    Payment of Employee Wages and Withholding Obligations

#### *Wages*

14.    As of the Petition Date, Navillus' aggregate workforce consisted of approximately seven hundred five (705) Employees, approximately six hundred forty (640) of which are members of the following twenty (20) unions (collectively, the "Unions"):

- Bricklayers and Allied Craftworks Local 1
- Bricklayers and Allied Craftworkers Local 7
- New York City District Council of Carpenters, Local 157 and 1156
- Cement and Concrete Workers of NYC, Local 6A, 18A, 20,
- Cement Masons, Local 780
- International Union of Operating Engineers, Local 14
- Operating Engineers and Surveyors, Local 15, 15D and 138
- LIUNA Local 731 Excavators

- LIUNA Local 66 Laborers

- LIUNA Laborer's Local 1010 Pavers,

- LIUNA Construction and General Building Laborers, Local 79

- Metallic Lathers and Reinforcing Ironworkers, Local 46

- Plasterers, Local 1 and Local 262

- Pointers, Cleaners and Caulkers, Local 1

- United Derrickmen and Riggers, Local 197

- Bricklayers Union, Stone Setters, Local 1

- Teamsters Local 282

- Ironworkers Local 580

Navillus is obligated to these unions through collective bargaining agreements ("CBAs")

with the Building Contractors Association ("BCA"), Project Labor Agreements ("PLAs"), and/or

independent CBAs.

15.   As of the Petition Date, Navillus' average one-week gross payroll for the

Employees is approximately $1,360,000.   Navillus' payroll process is administered in-house.

The Employees are paid every Thursday by Navillus from a payroll account (Account No.

x7348) held at Signature Bank for the week ending on the Tuesday prior.   Thus, on each pay day,

there are two (2) days of accrued, but unpaid wages. The first payroll due following the Petition

Date would therefore be made on Thursday, November 9, 2017 covering unpaid wages (the

"Wages") for the time period from Wednesday, November 1, 2017 to Tuesday, November 7,

2017.   Navillus therefore estimates that, prior to the Petition Date, its Employees will have

accrued one week of Wages for the payroll period from November 1, 2017 to November 7, 2017

in the aggregate amount of approximately $1,360,000.   As of the Petition Date, no Employee is

owed ordinary Wages in an amount exceeding the $12,850 priority cap imposed by section

507(a)(4) of the Bankruptcy Code.

*Withholding Obligations and Payroll Taxes*

16.      In connection with its payroll Navillus, as an employer, is required by law to withhold federal, state and local taxes, including Social Security taxes, unemployment taxes, Medicare taxes, and garnishments (collectively, the "Withholding Obligations") from Wages for remittance to appropriate authorities.  Navillus' estimated total Withholding Obligations for the pay period from November 1, 2017 to November 7, 2017 is approximately $435,000.

17.      In addition, Navillus is required to match, from its own funds, the Social Security and Medicare taxes and pay, based on a percentage of gross payroll, and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (the "Payroll Taxes") and remit the same to the appropriate authorities.  Navillus pays these Payroll Taxes on a weekly basis to various taxing authorities in accordance with the Internal Revenue Code and applicable state law. Navillus' estimated total obligation for Payroll Taxes for the pay period from November 1, 2017 to November 7, 2017 is approximately $110,000.

18.      Prior to each payroll, Navillus calculates the Withholding Obligations and Payroll Taxes for the applicable pay period.  Navillus' payroll account is funded so that disbursements can be made in accordance with the appropriate payment schedule.  Thereafter, Navillus withholds the Withholding Obligations from Employee paychecks and remits the Withholding Obligations, together with the Payroll Taxes, to third parties.   Withholding Obligations to taxing authorities are remitted on a weekly basis.  As a result, as of the Petition Date, Navillus is in possession of Withholding Obligations and/or Payroll Taxes relating to the prepetition period.

19.      Navillus believes that such withheld funds, to the extent they remain in Navillus' possession, constitute monies held in trust and therefore do not constitute property of Navillus'

bankruptcy estate.  Moreover, the Withholding Obligations and Payroll Taxes likely give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code if not paid.  Accordingly, Navillus requests authority to pay any accrued and unpaid Withholding Obligations and Payroll Taxes that may relate to the prepetition period as and when they become due in the ordinary course of Navillus' business.

20.     The Debtor also believes that all of its Employees hold priority claims with respect to their accrued but unpaid prepetition Wages pursuant to section 507(a)(4) of the Bankruptcy Code.  Due to the critical importance of the Employees to Navillus' business operations and the inability of Navillus to replace the Employees without significant disruption to ongoing construction projects, Navillus hereby requests authority to pay the Wages due and owing to its Employees for the prepetition period as well as any Withholding Obligations and Payroll Taxes associated with the Wages.

### *Union Dues*

21.     Navillus also withholds certain amounts on a weekly basis from the Employees' paychecks for the payment of dues to the Unions (the "Union Dues").  These withheld amounts are remitted to the respective Unions in accordance with the terms of the CBAs.  The Union Dues are collected weekly from the Employees and remitted to the Unions on either a weekly or monthly basis, depending on the terms of the particular CBA.

## II.     Employee Benefits Provided By Unions Under CBAs

22.     With respect to the approximately ninety (90%) percent of the Debtor's Employees who as of the Petition Date are members of Unions (the "Union Employees"), the terms of Navillus' respective CBAs with the Unions govern Navillus' employee benefit plans and policies related to vacation time, sick time and paid time off.  Accordingly, by this Motion,

Navillus seeks authority to continue performing under the CBAs with the respective Unions to ensure that the Union Employees continue to receive the benefits provided under the various Employee Benefit Programs (defined below) and paid time off.

23.    In the ordinary course of business, Navillus' Employees, through the Unions, participate in various employee benefit plans, programs and policies, including, without limitation, medical insurance, prescription drug coverage, dental insurance, vision insurance, flexible spending and health savings account programs, life insurance, accidental death and dismemberment insurance, worker's compensation, short-term and long-term disability coverage, a 401(k) plan and pension plans (collectively, the "Employee Benefit Programs").

24.    The particular Employee Benefit Programs offered and the details of each plan or policy vary based upon the Union and the terms of that Union's CBA with Navillus. Accordingly, the Unions administer the Employee Benefit Programs for the benefit of the Employees.  The Employee Benefit Programs are funded by fringe benefit payments made to the Union by Navillus on the Employees' behalf.

25.    To fund, among other things, the Employee Benefit Programs, on a monthly basis, Navillus remits payments to the Unions on account of the fringe benefits, which include the Employee Benefit Programs (the "Union Fringes") in accordance with the terms of each Union's CBA with Navillus.  Navillus makes payment of the Union Fringes either on a bi-monthly basis, a monthly basis, or every forty-five (45) days, depending on the particular Union.

26.    The continued payment of the Union Fringes is critical to the Unions' ability to continue the Employee Benefit Programs without disruption.  Navillus estimates that, as of the Petition Date, approximately $2,700,000 of Union Fringes are accrued and unpaid.

9

### III.    Employee Benefit Programs Provided to Non-Union Employees

27.    With respect to the approximately ten (10%) percent of Navillus' Employees that are not members of Unions (the "Non-Union Employees"), Navillus provides certain Employee Benefit Programs and other employment-related policies and practices in the ordinary course of business which it seeks to continue during the post-petition period.

*Health Care Programs*

28.    Navillus offers its Non-Union Employees employer-funded health insurance through Emblem Health and dental insurance through Cigna (the "Health Care Programs"). Navillus' average monthly cost for the Health Care Programs is approximately $60,000.

29.    By this Motion, Navillus seeks authority, in its sole discretion, to continue to provide the Health Care Programs for its Employees in the ordinary course of business and to continue to honor obligations under such programs including, without limitation, the payment of all amounts owed under the Health Care Programs to the extent that any may be owed related to the prepetition period.

*401(k) Savings Plan*

30.    Navillus maintains a retirement savings plan through John Hancock that meets the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). Employees who elect to participate in the 401(k) Plan make contributions to the plan through payroll deductions, and Navillus has matched on a discretionary basis up to one hundred (100%) percent of the Employee contributions up to the applicable statutory limits. Navillus also withholds from certain Employee paychecks amounts due for repayment of loans that those Employees have taken from the funds on deposit on their respective 401(k) accounts. Historically, Navillus has

provided matching contributions to the 401(k) Plan of what amounts to approximately $6,000 per week.

31.    By this Motion, Navillus seeks authority, but not direction, to continue the 401(k) Plan in the ordinary course of business and honor any obligations thereunder, such as any administrative fees, including amounts related to the prepetition period, as well as to continue withholding for repayment of Employee loans from the 401(k) Plan.  Navillus submits that its matching contributions are a key component of the benefits offered to Non-Union Employees and that discontinuing this obligation would have a negative impact on morale during a critical transitional time.

### Paid Time Off

32.    Navillus provides its Employees with paid time off benefits that allow Employees thirteen (13) days of paid time off from work for reasons such as vacation and personal reasons, including illness, medical appointments, holidays not observed by Navillus, or other personal business.  Navillus also offers its Employees paid holidays throughout the year.

33.    By this Motion, Navillus seeks authority, in its sole discretion, to continue to honor its paid vacation and holiday policies (the "PTO Policies") in the ordinary course of business during this chapter 11 case.

### Bonus Program

34.    Navillus maintains a performance based bonus program (the "Bonus Program") that is dependent on project profitability.  Pursuant to the Bonus Program, certain Non-Union Employees including, without limitation, management, project managers, project supervisors, accounting and other administrative staff and employees in any other position that Navillus

deems to be eligible, may receive a payment through the Bonus Program based on the calculation made in Navillus' project management software.

35.     The amounts payable under the Bonus Program have historically been assessed on or around September 30, which is six (6) months after the end of Navillus' financial year, for the period from April 1 of the prior year through March 31 of the current year.  Once assessed and calculated, payments under the Bonus Program can be made at any time, either in full or in installments, at the request of the Employee upon approval by Navillus.  Historically, Employees have requested repayment of amounts earned under the Bonus Program during the holiday season to supplement their year-end income.

36.     As of the Petition Date, Navillus has accrued and unpaid amounts to be assessed under the Bonus Program for the period from April 1, 2016 through March 31, 2017 which have not yet been calculated.  The Employees that are eligible to participate in the Bonus Program rely on the Bonus Program as a supplement to their ordinary Wages, and the amounts payable thereunder are part of the compensation package that the Employees negotiated for at the time of hire and have an expectation to receive. Given that the Bonus Program is based on project profitability, the expectation of payment under the Bonus Program has provided Navillus' Employees with an incentive to use their best efforts in connection with the construction projects that they are responsible for. Accordingly, to deprive the Employees of payment of the amounts owed under the Bonus Program would have an extremely detrimental effect on employee morale that could carry over into construction operations and lead to a decline in Navillus' workforce.

37.     For these reasons, Navillus believes that it is critical to afford Navillus the authority, in its sole discretion, to continue the Bonus Program in the ordinary course of business

and continue to honor obligations thereunder, and to pay all amounts owed under the Bonus

Program to the extent any amounts owed relate to the prepetition period.

### IV.      Payment of Independent Contractor Obligations

38.      In addition to its Employees, as of the Petition Date Navillus utilized the services

of three independent contractors – MKB Consulting LLC ("MKB"), Mendrich Consulting LLC

("Mendrich") and Blueworks Inc. ("Blueworks" and, together with MKB and Mendrich, the

"Independent Contractors") to provide critical project management and technical drafting

services in connection with Navillus' performance of work on its open construction projects.

Without the Independent Contractors, Navillus would experience significant disruption on

certain of its open construction projects, a change in project personnel which would negatively

impact Navillus' ability to progress its open projects and its relationships with owners'

representatives on its projects.

39.      MKB and Mendrich provide project management services to a number of

Navillus' open construction projects, each interfacing with project supervisors and owners'

representatives on the projects on which they provide consulting services on a daily basis.   As of

the Petition Date, Navillus owes MKB and Mendrich approximately $15,000 each on account of

services provided during the month of October 2017.   If Navillus fails to pay the amounts due

and owing to MKB and Mendrich for services provided during the month of October, they may

refuse to continue providing project management services to Navillus, thus causing a change in

project personnel and the introduction of new players during a critical transitional time.   Navillus

submits that its ability to maintain "business as usual" is essential to provide comfort to its

project owners that Navillus is ready, willing and able to continue performing on its open

construction projects in the same manner and with the same personnel that it utilized prior to the Petition Date, including the Independent Contractors.

40.     Blueworks provides detailed, project-driven technical drafting services on certain of Navillus' open construction projects.  Navillus does not have an in-house employee that provides these specialized services that are critical to Navillus' ability to perform the work required under its construction contracts. As of the Petition Date, Navillus owes Mendrich approximately $9,000 on account of services provided during the month of October 2017.  If Navillus fails to pay Blueworks for the amounts due and owing for drafting services provided during October 2017, Blueworks may refuse to continue providing this essential service to Navillus, and Navillus would have to search for a new independent contractor to provide these specialized services on an expedited basis.  As set forth above, a change in personnel during this critical time would be detrimental to Navillus, and any delay in its ability to obtain the technical drafting services that Blueworks provides would create significant negative impacts on Navillus' projects.

41.     Navillus seeks authority to pay the amounts due and owing the Independent Contractors that were incurred prior to the Petition Date in the aggregate amount of approximately $39,000 because the Independent Contractors provide extremely valuable services to Navillus that are essential to the continued smooth operation of Navillus' construction operations.

## V.      Reimbursement of Business Expenses

42.     Navillus customarily reimburses Employees who incur business expense in the ordinary course of performing their duties on behalf of Navillus including travel, lodging, ground transportation, meals and other miscellaneous business expenses (the "Business Expenses").  On

a monthly basis, Navillus reimburses approximately $50,000 in Business Expenses incurred by approximately eighty (80) to one hundred (100) Employees.

43.     Navillus submits that it would be inequitable to require Employees to bear personally any approved Business Expenses they incurred in furtherance of their responsibilities to Navillus.  Accordingly, Navillus requests authority, in its sole discretion and in the exercise of its business judgment, to continue to honor all of its Business Expense obligations in the ordinary course of business, regardless of when such obligations arose.

### VI.     Direction to Banks

44.     Navillus also requests that the Court authorize and direct the banks with which Navillus maintains accounts relating to its Employee obligations to receive, process, honor, accept and pay any and all checks or electronic transfers drawn on Navillus' accounts related to ordinary course obligations, including the proposed payments outlined above, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

45.     Finally, Navillus requests that the Court authorize Navillus to issue new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected inadvertently.  Navillus submits that this relief is integral in order to implement the relief sought by this Motion.

### BASIS FOR RELIEF REQUESTED

46.     Navillus requests authority to (i) pay the prepetition Wages and related Payroll Taxes and Withholding Obligations in the ordinary course of business, (ii) continue performing under the terms of the CBAs for the benefit of the Union Employees, including withholding the

Union Dues and making payment of the Union Fringes in accordance therewith, (iii) continue the Employee Benefit Programs for Non-Union Employees, including without limitation the Health Care Programs, the 401(k) Plan, the PTO Policies and the Bonus Programs, in the ordinary course of business and in the same manner as such programs were administered prior to the Petition Date.   Navillus requests further authorization to pay amounts due and owing to Independent Contractors as well as reimbursement of Business Expenses in the ordinary course of business.

47.    Navillus submits that any delay in paying its Employees could severely disrupt the Debtor's business operations and the progress of the Debtor's ongoing construction projects. At this critical stage, Navillus cannot risk losing its workforce due to the uncertainty and decline in morale attributable to a chapter 11 filing.  Moreover, failure to continue to perform under the CBAs with the Unions or provide the Employee Benefit Programs offered to Non-Union Employees would jeopardize the Employees' ability to receive the benefits of the Employee Benefit Programs which may lead to a decline in morale among the Employees and a diminution in Navillus' workforce.

48.    Accordingly, by this Motion, Navillus seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the "necessity of payment" doctrine to pay outstanding prepetition obligations to its Employees.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Accordingly, the Court is authorized to grant the relief requested herein.

16

49.    A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

50.    The "necessity of payment" doctrine further supports the relief requested herein. This doctrine recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor. Ionosphere Clubs, 98 B.R. at 176; see also In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987); In re Just For Feet, Inc., 242 B.R. 821, 825-26 (D. Del. 1999) ("[n]ecessity of payment doctrine recognizes that paying certain prepetition claims may be necessary to realize the goal of chapter 11 – a successful reorganization"). This doctrine is consistent with the paramount goal of chapter 11 –"facilitating the continued operation and rehabilitation of the debtor . . . ." Ionosphere Clubs, 98 B.R. at 176.

51.    Courts have also permitted postpetition payment of prepetition claims pursuant to section 105(a) of the Bankruptcy Code in situations where non-payment of prepetition obligations would trigger a withholding of goods or services essential to the debtor's business reorganization plan.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (noting that "necessity of payment doctrine . . . permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their prepetition reorganization claims shall have been paid"); In re UNR Industries, Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay

prepetition claims of suppliers or employees whose continued cooperation is essential to the debtor's successful reorganization).

52.     In order to achieve a successful reorganization, Navillus requires its Union Employees to continue working on Navillus' open construction projects and its Non-Union Employees to continue the management and supervision of Navillus' operations in the ordinary course of business and in the same manner that the Employees performed their respective services to Navillus prior to the Petition Date.  The requested authority to continue to pay the Employees' Wages and maintain Employee Benefit Programs, including with respect to the Union Employees through the withholding of Union Dues and payment of Union Fringes in accordance with the terms of the CBAs, is necessary to ensure that the Debtors can retain their Employees at a time when they are clearly needed.  The "necessity of payment" doctrine authorizes the relief requested in this Motion because the Employees are indispensable to Navillus' operations and the successful resolution of this chapter 11 case.

53.     In addition, Navillus believes that the unpaid Wages and other benefits earned within the one hundred eighty (180) days prior to the Petition Date that Navillus seeks to pay are entitled to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $12,850.  Courts have recognized future priority status as a valid basis for allowing the payment of wage claims.  See, e.g., In re Braniff, Inc., 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (explaining that prepetition wage and wage-related claims are often allowed to be paid postpetition where the claims are entitled to priority because "in all but the direst of circumstances, the debtor will ultimately pay the prepetition wages because of their very high priority [and, therefore, the] court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case").  Accordingly, Navillus

submits that granting the relief requested herein will not have an adverse effect on other unsecured creditors of Navillus' estate.  The payment of these amounts is necessary here, and Navillus has articulated a sound business justification for the payment of these obligations.

54.     Moreover, with respect to the Employees that provide direct labor on Navillus' open construction projects, the payment of Wages and Union Fringes is entitled to statutory payment priority under Article 3-A of the New York Lien Law which provides that such amounts are trust funds required to be paid in full before Navillus is authorized to use funds received on such construction projects for other purposes.   Therefore, if Navillus is not authorized to pay the labor costs associated with work performed on its project sites, it would be in violation of the trust fund provisions established under Article 3-A of the Lien Law.

55.     Similarly, allowing Navillus to remit the Withholding Obligations and Payroll Taxes to the appropriate authorities will not prejudice Navillus' creditors because such amounts are being held in trust by Navillus for the benefit of the Employees and thus do not constitute property of Navillus' estate within the meaning of section 541 of the Bankruptcy Code.  See Begier v. Internal Revenue Svc., 496 U.S. 53, 65 (1990) (taxes such as excise taxes, FICA taxes and withholding taxes are property held by debtor in trust for another and do not constitute property of the estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors).

56.     Navillus' Employees are essential to the success of its business.  As such, it is critical that Navillus continues performing under the CBAs in the ordinary course of business through the withholding of Union Dues and payment of Union Fringes on the Union Employees' behalf so that the Employees will receive the same Employee Benefit Programs that were in

place prior to the Petition Date.  Similarly, it is equally critical that Navillus be permitted to continue to administer the Employee Benefit Programs that it has established for the benefit of its Non-Union Employees that perform services necessary to the continued operation of the Debtor's business, including supervision, project management and administration of in-house payroll, accounting and related functions.

57.    Moreover, if checks issued and fund transfers requested on account of payment of these amounts are dishonored, or if such accrued obligations are not timely paid postpetition, Navillus' Employees may suffer extreme personal hardship.

58.    Authorizing, but not directing, Navillus to pay its prepetition employee obligations in accordance with its prepetition business practices is in the best interests of the Debtor, its creditors, and all parties in interest, as it will enable Navillus to continue to operate its business efficiently without disruption.  The total amount proposed to be paid if the relief sought herein is granted is modest when compared to the size of the Debtor's estate and the importance of the Employees to the reorganization effort.

59.    Pursuant to section 363 of the Bankruptcy Code, the Court is empowered to authorize a debtor to expend funds outside the ordinary course of business.  Payment of the prepetition obligations described in this Motion in order to preserve the Debtor's business, retain the Debtor's Employees and ultimately reorganize, even if such payment were deemed to be outside the ordinary course of business, is a sufficient business justification for such authorization.  See Ionosphere Clubs, 98 B.R. at 175.

60.    This Court has authorized the postpetition payment of prepetition wage obligations on the first day or in the early stages of other chapter 11 bankruptcy cases.  See, e.g., In re American Roads LLC, Case No. 13-12412 (BRL) (Bankr. S.D.N.Y. July 26, 2013); In re

Broadview Networks Holdings, Inc., Case No. 12-13581 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2012); In re Houghton Mifflin Harcourt Publishing Co., Case No. 12-12171 (REG) (Bankr. S.D.N.Y. May 22, 2012); In re TBS Shipping Svcs. Inc., Case No. 12-22224 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2013); In re Eastman Kodak Co., Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012); In re Hostess Brands, Inc., Case No. 12-22052 (RDD) (Bankr. S.D.N.Y. Jan. 27, 2012); In re General Maritime Corp., Case No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); and In re The Great Atlantic and Pacific Tea Co., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

## REQUEST FOR WAIVER OF STAY

61.     Navillus further submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, for all of the foregoing reasons, Bankruptcy Rule 6003 has been satisfied and it is essential that the Court approve payment of the prepetition obligations described in this Motion.

62.     Navillus further seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise."  As set forth above, the payments proposed herein are essential to prevent irreparable damage to the Debtor's operations and value. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

63.     Notice of this Motion has been given to (a) the United States Trustee for the Southern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c)

counsel to Liberty Mutual Insurance Company; (d) counsel to Signature Bank; (e) the Unions; (f) Emblem Health; (g) Cigna; (h) John Hancock; and (i) any other party who requests to receive notices. Navillus submits that, under the circumstances, no other or further notice is required.

64. No previous application for the relief sought herein has been made to this or any other Court.

## **CONCLUSION**

65. For the reasons set forth herein, it is critically important that Navillus be able to maintain its workforce through the payment of Wages and continued performance under the Employee Benefit Programs, whether directly or through continued performance under the CBAs. If the Debtor was the experience a decline in its workforce due to concerns that the Debtor would be unable to continue to pay its Employees in the same manner as it has prior to the Petition Date, it would cause severe disruption to the Debtor's ability to maintain its open construction projects and therefore result in irreparable harm to the Debtor's estate and reorganization efforts.

WHEREFORE, Navillus respectfully requests entry of the Order annexed hereto as Exhibit "A" granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
    November 8, 2017

                              CULLEN AND DYKMAN LLP

                   By:    */s/  Elizabeth M. Aboulafia*
                          C. Nathan Dee, Esq.
                          Elizabeth M. Aboulafia, Esq.
                          100 Quentin Roosevelt Boulevard
                          Garden City, New York 11530
                          (516) 357-3700

                          *Proposed Counsel to Navillus Tile, Inc.*

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                      :

In re:                               :     Chapter 11
                                        :

NAVILLUS TILE, INC., DBA NAVILLUS    :     Case No. 17-13162 (SHL)
CONTRACTING                      :

                    Debtor.         :
                                        :
------------------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY (A) CERTAIN PREPETITION EMPLOYEE OBLIGATIONS AND (B) PREPETITION WITHHOLDING OBLIGATIONS, (II) AUTHORIZING THE DEBTOR TO CONTINUE PERFORMING UNDER THE COLLECTIVE BARGAINING AGREEMENTS (III) AUTHORIZING THE DEBTOR TO CONTINUE TO PROVIDE EMPLOYEE BENEFIT PROGRAMS TO NON-UNION EMPLOYEES; (IV) DIRECTING BANKS TO HONOR RELATED PREPETITION TRANSFERS, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] filed by Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-possession (the "Debtor" or "Navillus"), by and through its proposed attorneys Cullen and Dykman LLP, pursuant to sections 105, 363, 507, 1107 and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (i) authorizing Navillus to pay (a) certain prepetition employee obligations, and (b) prepetition withholding obligations and payroll taxes, (ii) authorizing Navillus to perform under the terms of the collective bargaining agreements with various unions, (iii) authorizing Navillus to continue to provide certain employee benefit programs to its non-union employees; (iv) directing banks to honor prepetition transfers related to the foregoing, and (v) granting related relief; the Court, having reviewed the Motion and having heard the statements of counsel

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in support of the interim relief requested in the Motion at the hearing before the Court on November __, 2017 (the "Hearing"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      Navillus shall be and hereby is authorized but not directed to pay, in its discretion, the prepetition Wages relating to its Employees up to the statutory cap of $12,850 per Employee, and to remit all prepetition Withholding Obligations and Payroll Taxes to the appropriate third parties as and when such obligations come due.

3.      Navillus shall be and hereby is authorized to withhold Union Dues and remit monthly payment of the Union Fringes to the Unions under the terms of the CBAs in the ordinary course of business.

4.      Navillus shall be and hereby is authorized to continue to perform under the CBAs with the Unions to ensure that the Employee Benefit Programs are honored and continued.

5.      Navillus shall be and hereby is authorized to continue to provide the Employee Benefit Programs to the Debtor's Non-Union Employees that were in place prior to the Petition Date in the ordinary course of business and in accordance with the Debtor's stated policies and prepetition practices including, without limitation, the Health Care Programs, the 401(k) Plan,

and the PTO Policies. Approval of the Debtor's Bonus Program shall be considered in connection with the Final Hearing (defined below) on the Motion.

6.      Navillus shall be and hereby is authorized but not directed to make payment of prepetition amounts due Independent Contractors.

7.      Navillus shall be and hereby is authorized but not directed to make payment of reimbursement for prepetition Business Expenses to the Debtor's Employees, provided that the aggregate amount of reimbursement for prepetition Business Expenses shall not exceed $50,000.00.

8.      All banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks drawn on the Debtor's accounts with the banks and fund transfers on account of the Debtor's prepetition obligations to its Employees, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

9.      Navillus shall be and hereby is authorized to issue, in its discretion, new postpetition checks or effect new postpetition fund transfers on account of its prepetition obligations to its Employees to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

10.     Notwithstanding Bankruptcy Rules 6004(h) or 7062, the terms and conditions of this order shall be immediately effective upon its entry.

11.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

12.     A hearing shall be held to consider the relief granted herein on a final basis on November __, 2017 at __:00 _.m. before the Honorable _____, United States

Bankruptcy Judge, in Courtroom ____ of the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York, 10004 (the "Final Hearing")

and, pending entry of an order following the conclusion of the Final Hearing, the relief granted

herein shall remain in effect on an interim basis.

Dated: November ____, 2017
      New York, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE