UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                                    :
In re:                                                              :    Chapter 11
                                                                    :
NAVILLUS TILE, INC., DBA NAVILLUS                                   :    Case No. 17-13162 (SHL)
CONTRACTING                                                         :
                                                                    :
                                Debtor.                             :
                                                                    :
-------------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§105(a), 362, 363, AND 364 OF THE BANKRUPTCY CODE (I) AUTHORIZING POST-PETITION SECURED FINANCING; (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS; (III) AUTHORIZING USE OF CASH COLLATERAL AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)**

Upon the motion (the "Motion")[1] of Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-possession (the "Debtor"), seeking entry of an interim order (this "Interim Order") and a Final Order (defined herein) pursuant to sections 105, 362, 363 and 364 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, et seq. (the "Bankruptcy Code"), Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), *inter alia*:

(i)    authorizing Navillus to obtain secured post-petition financing on a superpriority basis up to the aggregate amount of $135,000,000 (the "DIP Facility") pursuant to the terms and conditions of that certain Financing Agreement, by and among Navillus, Donal O'Sullivan, individually and Kathleen O'Sullivan, individually (collectively, the "Indemnitors") as borrowers and Liberty Mutual Insurance Company ("Liberty"), as lender (the "DIP Financing

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the DIP Financing Agreement, as applicable.

Agreement"), a copy of which is annexed as Exhibit "1" to the Motion, and authorizing Navillus to borrow up to $13,500,000 on an interim basis;

(ii) granting Liberty, pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, perfected and indefeasible lien on and security interest in (the "Post-Petition Lien and Security Interest") all of Navillus' assets directly related to the Bonded Contracts including, without limitation, property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code and, hereinafter, "Cash Collateral"), except for the Equipment;

(iii) granting Liberty, pursuant to sections 364(c)(1) and 105 of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "Superpriority Claim") with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, subject only to the Liberty Carve-Out, to the extent of any losses incurred by Liberty in connection with the Bonds or the Indemnity Agreements after the filing of this chapter 11 case;

(iv) authorizing Navillus' use of Cash Collateral on the terms and conditions set forth in this Interim Order, subject to the terms of a rolling thirteen week budget (the "Budget"), a copy of which is annexed to the Motion as Exhibit "2";

(v) scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing any requested relief not granted under the Interim Order on a final basis, all as set forth in the Motion; and

(vi) such other and further relief as is sought in the Motion;

The Court having considered the Motion, the Declaration of Christopher Wu filed in support of the Motion; the Affidavit of Donal O'Sullivan in support of Navillus' first day motions and orders, the DIP Financing Agreement, the arguments of counsel and evidence

submitted by Navillus at an interim hearing held before the Court on November 29, 2017 (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001 and Local Rule 4001-2, and due and proper notice of the Motion and the Interim Hearing having been given; and it appearing that approval of the relief requested in the Motion is necessary to prevent immediate and irreparable harm to Navillus, and otherwise is fair and reasonable and in the best interest of Navillus, its creditors and its estate, and is essential for the continued operation of Navillus' business and to preserve and maximize the value of Navillus' estate for the benefit of all stakeholders; and it further appearing that Navillus is unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and this Court having found good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  <u>Petition</u>.  On November 8, 2017 (the "Petition Date"), Navillus filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code.  Navillus is continuing in possession of its property, and operating and managing its business, as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B.  <u>Jurisdiction and Venue</u>.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of Navillus' case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  <u>Notice</u>.  Under the circumstances, notice of the Motion, the Interim Hearing and the relief sought thereunder given by Navillus to (a) the United States Trustee for the Southern

District of New York; (b) Navillus' twenty (20) largest unsecured creditors; (c) counsel to Liberty Mutual Insurance Company; (d) counsel to Signature Bank; (e) any known parties asserting a lien against any portion of the Collateral; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the United States Department of Justice; and (i) any other party who requests to receive notices (the "Notice Parties") constitutes due and sufficient notice thereof and complies with the Bankruptcy Rules and Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

D.    <u>Findings Regarding Pre-Petition Indemnity Agreements and Pre-Petition Secured Indebtedness</u>.  Without prejudice to the rights of any other party in interest, Navillus acknowledges, admits, and agrees that:

(i)    *Pre-Petition Indemnity Agreements*. Prior to the Petition Date, on or around October 24, 1995, December 12, 2006 and March 15, 2007, the Indemnitors and certain other individuals and non-debtor entities executed General Agreements of Indemnity (collectively, the "Indemnity Agreements") in favor of Liberty (and any affiliate of Liberty).  In the Indemnity Agreements, the Indemnitors agreed, among other things, to exonerate, hold harmless and indemnify Liberty from and against any and all liability for losses, fees, costs and expenses incurred by Liberty, *inter alia*, as a result of executing certain surety bonds to guarantee (i) the performance of various contracts by Navillus (the "Performance Bonds") and (ii) the payment of certain obligations of Navillus (the "Payment Bonds" and, together with the Performance Bonds, the "Bonds") with respect to certain of Navillus' contracts (the "Bonded Contracts").  The DIP Financing Agreement is being executed in addition to, and not in lieu of, the Indemnity

4

Agreements, and nothing contained in the DIP Financing Agreement or this Interim Order in any way diminishes the rights set forth in the Indemnity Agreements or the rights of any party under the Bonds.

(ii)    *Pre-Petition Obligations*.  As of the Petition Date, Navillus and the Indemnitors were not obligated for any losses under the Bonds, however certain costs and expenses are recoverable under the Indemnity Agreements as of the Petition Date. Additionally, certain of those costs shall be paid to Liberty pursuant to an Initial Collateral Deposit Agreement entered into between Liberty and Indemnitors other than Navillus.

(iii)    *Pre-Petition Equipment Loans*.  Prior to the Petition Date, Navillus entered into equipment loans with Signature Financial LLC ("Signature Financial") secured by two (2) 2015 Toyota Forklifts Model 8FDU25, serial numbers 60497 and 60493, together with all present and future attachments, accessories, additions, accessions, parts and supplies, and any replacements thereof, installed in, affixed to, or used in connection with said property, and all proceeds of said property, and a 2014 Kenworth T800 truck (the "Equipment").  As of the Petition Date, approximately $68,080 remained due and owing Signature Financial on account of the loans secured by the Equipment.

E.    Findings Regarding DIP Financing.

(i)    *Need for Post-Petition Financing*.  Navillus' ability to continue operating on its open construction projects and maintain its business relationships with Tishman and all project owners depends on obtaining immediate access to the DIP Facility to address their concerns regarding Navillus' ability to complete its open construction projects.  The access of

5

Navillus to liquidity through the incurrence of new indebtedness for borrowed money is vital for preserving and maintaining the going concern value of Navillus. Failure to obtain the relief requested in the Motion will immediately and irreparably harm Navillus, its estate, creditors and equity holders.

    (ii) *No Credit Available on More Favorable Terms*. Navillus is unable to obtain financing on terms more favorable than those offered by Liberty under the DIP Facility and is unable to obtain unsecured credit allowable under section 503(b)(l) of the Bankruptcy Code as an administrative expense. Navillus is also unable to obtain secured credit under section 364(c) of the Bankruptcy Code on equal or more favorable terms than those offered by Liberty under the DIP Facility. Navillus has made an adequate showing of its efforts to obtain financing on more favorable terms. A credit facility in the amount and on the terms provided by the DIP Facility is not available from Liberty without Navillus granting Liberty (a) the Post-Petition Lien and Security Interest and the Superpriority Claims, and (b) the other protections set forth in this Interim Order.

    (iii) *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Facility and the DIP Financing Agreement, as modified by this Interim Order and any Final Order, are fair, reasonable, and the best available to Navillus under the circumstances, reflect the exercise of prudent business judgment by Navillus consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated without collusion, in good faith and at arms' length between and among Navillus and Liberty. Use of credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, within the meaning of section 364(e) of the Bankruptcy Code and in express reliance on the protections offered by

6

section 364(e) of the Bankruptcy Code, and Liberty is therefore entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

    (iv) *Interim Relief*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001. The permission granted herein to obtain the DIP Facility and the access to funds available thereunder on an interim basis in the amount of up to $7,500,000 is necessary to avoid immediate and irreparable harm to Navillus.  No party appearing in Navillus' chapter 11 case has filed or made an objection to the relief sought in the Motion, or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

  F. <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate for continued operations, and the management, maintenance and preservation of Navillus' assets as it will, among other things, provide Navillus with the necessary liquidity to (i) minimize disruption to ongoing operations and allow for Navillus to perform and complete its open construction projects and continue bidding work to obtain new construction projects; (ii) preserve and maximize the value of the estate for the benefit of all creditors; and (iii) avoid immediate and irreparable harm to Navillus, its creditors, its business, its employees, and its estate.  It is in the best interest of Navillus' estate for Navillus to be allowed to establish the DIP Facility contemplated by the DIP Financing Agreement and to grant the other relief set forth herein.  Good cause has been shown for the relief requested in the Motion and as granted in this Interim Order.

  Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Interim Financing Approved</u>.  The Motion is granted in accordance with the terms of this Interim Order.  All objections to the Motion, to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.

2. <u>Authorization of the DIP Facility</u>.  Navillus is expressly and immediately authorized to execute and deliver the DIP Financing Agreement and to incur and perform any obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreement, and to execute and deliver all instruments and documents which may be necessary or required for the performance by Navillus under the DIP Financing Agreement and any documents executed pursuant thereto and the creation and perfection of the Post-Petition Lien and Security Interest described in and provided for by this Interim Order and the DIP Financing Agreement.  Pending entry of the Final Order, the DIP Financing Agreement is hereby approved on an interim basis and shall represent a valid and binding obligation of Navillus, enforceable against Navillus and its estate in accordance with its terms.

3. <u>Authorization to Borrow</u>.  Subject to the terms and conditions set forth in the DIP Financing Agreement and this Interim Order, Navillus is hereby authorized to borrow on an interim and as-needed basis up to $7,500,000 under the DIP Facility; <u>provided</u>, <u>however</u>, that during the time period covered by this Interim Order, Navillus shall borrow funds under the DIP Facility as a last resort solely if its existing cash on hand is insufficient for Navillus to operate in the ordinary course of business pursuant to the DIP Budget.

4. <u>Use of DIP Facility Proceeds</u>. From and after the Petition Date, Navillus shall use the proceeds of the DIP Facility only for the purposes specifically set forth in this the DIP Financing Agreement and any documents executed pursuant thereto.  Notwithstanding anything

8

to the contrary in this Interim Order or the DIP Financing Agreement, in no event shall any proceeds of the DIP Facility be used (a) for any purpose that is not permitted under this Interim Order; (b) in a manner not consistent with any budget provided to Liberty under the DIP Financing Agreement with copy to proposed counsel for the Official Committee of Unsecured Creditors of Navillus Tile, Inc. (the "Committee") on not less than two (2) business days' notice (the "DIP Budget"); (c) for any investigation or analysis of any claim or cause of action against Liberty or any of its affiliates; and (d) for any preparation or prosecution of any claim or cause of action against Liberty or any of its affiliates.  Navillus shall not pay any compensation to insiders (as that term is defined in the Bankruptcy Code) from the proceeds of the DIP Facility pursuant to this Interim Order.

5. <u>DIP Loan Obligations</u>.  The term "DIP Loan Obligations" shall mean any monies advanced by Liberty under the DIP Facility during the time period covered by this Interim Order along with any losses incurred by Liberty in connection with the Bonds or the Indemnity Agreements after the filing of this chapter 11 case due to the post-petition breach by Navillus on any Bonded Projects.

6. <u>Superpriority Claim</u>.  Pursuant to section 364(c)(l) of the Bankruptcy Code, but subject to the Carve-Out (as defined herein), and to the rights of lien law trust fund beneficiaries pursuant to Article 3-A of the Lien Law of the State of New York, the DIP Loan Obligations shall constitute an allowed superpriority administrative expense claim against Navillus (the "Superpriority Claim") with priority over any and all administrative expense claims of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, as provided under sections 364(c)(1) and 105 of the Bankruptcy Code; and which shall at all times be senior to the rights of

9

Navillus, and the estate, any successor trustee or other estate representative and any creditor or other party in interest to the extent permitted by law.

7. <u>Post-Petition Lien and Security Interest</u>.  As security for the DIP Loan Obligations and without the necessity of the execution, recordation of filings by Navillus of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by Liberty or its agents over any collateral, Liberty is hereby granted a first priority, perfected and indefeasible lien on and security interest in (the "Post-Petition Lien and Security Interest"), pursuant to section 364(c)(2) of the Bankruptcy Code, all of Navillus' assets directly related to the Bonded Contracts, except for the Equipment (the "Collateral"), and except to the extent any funds received by Navillus related to the Bonded Contracts constitute trust funds under Article 3-A of the Lien Law of the State of New York.  The Post-Petition Lien and Security Interest shall not extend to any avoidance actions under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

8. <u>Perfection of Post-Petition Lien and Security Interest</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Post-Petition Lien and Security Interest, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any lockbox or deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Post-Petition Lien and Security Interest, or to entitle Liberty to the priorities granted herein.  Notwithstanding the foregoing, Liberty is authorized to file, at its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable

non-bankruptcy law or to otherwise evidence the Post-Petition Lien and Security Interest, and all such financing statements, mortgages, notices, other documents and approvals shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Post-Petition Lien and Security Interest. Navillus is authorized and directed to execute and deliver promptly upon demand to Liberty all such financing statements, mortgages, notices and other documents as Liberty reasonably requests. Liberty in its discretion may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

9. <u>Liberty Carve-Out</u>. Subject to entry of a Final Order, Liberty's Superpriority Claim and Post-Petition Lien and Security Interest granted under this Interim Order or in existence on, or arising after, the Petition Date, shall be subject only to a carve-out for the following (the "Liberty Carve-Out"): (i) all fees required to be paid by the Clerk of the Bankruptcy Court and to the Office of the United States Trustee; (ii) $50,000 for any potential Chapter 7 trustee; (iii) all reasonable and unpaid fees, costs, disbursements and expenses of any professional retained by Navillus in this case up to an aggregate amount of $4,235,000; and (iv) all reasonable and unpaid fees, costs, disbursements and expenses of any professional retained by the official committee of unsecured creditors in this case, should one be appointed by the Office of the United States Trustee up to an aggregate amount of $500,000. Subject to entry of a Final Order, the Liberty Carve-Out shall be in addition to any of Navillus' rights under section 506(c) of the Bankruptcy Code to the extent that those rights relate to the Collateral; however, the maximum amount of the Liberty Carve-Out, including any claims under section 506(c) of the

11

Bankruptcy Code relating to Liberty's Collateral in the bankruptcy proceeding, shall in no event exceed $5,000,000. The Liberty Carve-Out shall apply to the payment of any and all interim fees made prior to the occurrence of a DIP Financing Default under the DIP Financing Agreement. For the avoidance of doubt, any payments made pursuant to the Liberty Carve-Out shall not reduce the amount of the Superpriority Claim or the amount of any obligation due to Liberty under the Bonds, the Indemnity Agreements, the DIP Financing Motion or related agreements, or otherwise.

10. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order and the DIP Financing Agreement and the DIP Budget, Navillus is authorized to use Cash Collateral until the time of termination of the DIP Facility.

11. <u>Voluntary Letters of Default</u>. The irrevocable assignment, irrevocable letter of direction and voluntary letters of default being provided to Liberty pursuant to paragraph L of the DIP Financing Agreement shall only be used by Liberty, with respect to a specific Bonded Contract if, pursuant to a further Order of the Court after notice and hearing, (a) Navillus is terminated for default on that specific Bonded Contract or (b) Navillus rejects that specific Bonded Contract. Upon such Order of the Court relating to the termination or rejection of a Bonded Contract, Liberty shall be granted relief from the automatic stay without further Order of the Court.

12. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, Liberty is entitled to the

protections provided in section 364(e) of the Bankruptcy Code with respect to the DIP Loan Obligations. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or any lien, claim or priority authorized or created hereby. Any liens or claims granted to Liberty hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

13. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified solely to the extent necessary to authorize Navillus and Liberty to take any action necessary to implement and effectuate the terms and provisions of this Interim Order, the DIP Financing Agreement and any documents executed pursuant thereto.

14. <u>Liberty Not Responsible Person</u>. In (a) making the decision to provide the DIP Facility; (b) administering the DIP Facility; or (c) extending related financial accommodations to Navillus, Liberty shall not be considered to be exercising control over any operations of Navillus or acting in any way as a "responsible person," or as an "owner or operator" with respect to the operation or management of Navillus, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under any applicable law. Navillus retains complete control of and responsibility for its operations, over which Liberty assumes no responsibility or control.

15. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

16. <u>No Waiver by Failure to Seek Relief</u>.  The failure of Liberty to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Financing Agreement, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

17. <u>Binding Effect of Interim Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of Navillus, Liberty, all other creditors of Navillus, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this case, or upon dismissal of this case.

18. <u>Binding Effect on Non-Debtor Indemnitors</u>.  In the event that the full extent of the relief sought in the Motion is not granted as to Navillus, the non-debtor Indemnitors shall nevertheless be bound by the DIP Financing Agreement pursuant to the terms thereof.

19. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

20. <u>Survival</u>.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to Liberty pursuant to this Interim Order, notwithstanding the entry of any further order, shall continue in this case, or following dismissal of this case, and shall maintain their priority as provided by this Interim Order until any and all obligations pursuant to the DIP Financing Agreement and this Interim Order have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and any agreement to extend credit under the DIP Facility is terminated.

21.     Reservation of Rights.  Notwithstanding anything to the contrary set forth in this Interim Order, Navillus, Liberty and the Committee reserve any and all rights as to whether Liberty is entitled to the Superpriority Claim and the Post-Petition Lien and Security Interest on account of any losses incurred by Liberty in connection with the Bonds or the Indemnity Agreements after the filing of this chapter 11 case due to the pre-petition breach by Navillus on any Bonded Projects.

22.     Final Hearing.  The Final Hearing to consider final approval of the DIP Facility and entry of the Final Order is scheduled before this Court for December 20, 2017, at 2:00 p.m. On or before December 5, 2017, Navillus shall serve a copy of this Interim Order and the Motion (a) by electronic mail upon the Notice Parties.  Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on December 13, 2017 at 4:00 p.m., which objections shall be served so as to be received on or before such date by: (1) counsel to Navillus, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard Garden City, NY 11530 (Attn: C. Nathan Dee, Esq. and Elizabeth M. Aboulafia, Esq.); (2) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004; (3) counsel to Liberty, Chiesa Shahinian & Giantomasi, P.C., 1 Boland Drive, West Orange, NJ 07052 (Attn: Adam Friedman, Esq. and Scott Zuber, Esq.); and (4) proposed counsel to the Committee, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn: Mark T. Power, Esq. and Jeffrey Zawadzki, Esq.).

23.     Bankruptcy Rule 7052.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order.

15

24. <u>Bankruptcy Rule 6004(h)</u>.  This Interim Order shall take effect immediately upon the entry hereof notwithstanding the stay provisions of Bankruptcy Rule 6004(h) which are hereby waived.

25. <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: December 1, 2017					*/s/ Sean H. Lane*
New York, New York					United States Bankruptcy Judge