Mark T. Power, Esq.  
Jeffrey Zawadzki, Esq.  
HAHN & HESSEN LLP  
488 Madison Avenue  
New York, New York  10022  
(212) 478-7200  

Hearing Date:  December 20, 2017 at 2:00 p.m. (EST)

*Proposed Counsel to The Official Committee of  
Unsecured Creditors of Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------------x  
In re:                                                                                    Chapter 11  

NAVILLUS TILE, INC., d/b/a NAVILLUS                      Case No. 17-13162 (SHL)  
CONTRACTING,  

                            Debtor.  
------------------------------------------------------------------x  

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'  
STATEMENT IN SUPPORT OF THE MOTION OF METALLIC LATHERS  
AND REINFORCING IRONWORKERS, LOCAL 46 AND CEMENT &  
CONCRETE WORKERS DISTRICT COUNCIL, LIUNA FOR RELIEF <u>FROM  
THE AUTOMATIC STAY UNDER § 362(d) OF THE CODE</u>**

      The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of the above-captioned debtor and debtor-in-possession ("<u>Navillus</u>" or the "<u>Debtor</u>"), by its proposed counsel, Hahn & Hessen LLP, hereby files this statement in support of the *Motion of Metallic Lathers and Reinforcing Ironworkers, Local 46 and Cement & Concrete Workers District Council, LIUNA for Relief from the Automatic Stay under § 362(d) of the Code* [D.I. 62] (the "<u>Motion</u>"), and respectfully states as follows:

**BACKGROUND**

      1.     Prior to the Petition Date, certain union pension and welfare benefit funds (the "<u>Funds</u>") commenced litigation in the United States District Court for the Southern District of New York (the "<u>District Court</u>") against Navillus, Advanced Contracting

872106/010-6890206.1

Solutions, LLC ("ACS")[1] and certain principals and affiliates contending that ACS and the affiliates were the alter egos of Navillus and as a result, were subject to and bound by Navillus' collective bargaining agreements (the "CBAs") making them jointly and severally liable for the unfunded benefit fund contributions attributable to the construction jobs which ACS performed utilizing non-union labor.

2. On September 22, 2017, the District Court, after conducting a two week trial, entered a judgment in favor of the Funds and against Navillus and ACS in the aggregate amount of approximately $74 million (the "Judgment"). The Debtor and ACS have appealed the Judgment to the United States Court of Appeals for the Second Circuit (the "Second Circuit").

3. In its Decision, the District Court found that ACS and Navillus they were in fact alter egos from the inception of ACS. The District Court's decision does not appear to impose any limitation on the period of time for which ACS and Navillus were adjudged to be alter egos, and the Committee is not aware of any change in the equity holders or senior management of either ACS or Navillus between June 2016 and the Petition Date. The Committee was able to obtain a copy of the Plaintiffs' expert report on the calculation of damages in that litigation (which was adopted by the District Court in determining its damage award). A copy of the Expert Report is annexed hereto as Exhibit A (the "Expert Report"). The Expert Report sets forth at page 4 the covered work hours on various ACS projects that were included in the damages calculation. These covered work hours for which damages were awarded include not only covered hours worked as of June 21, 2016, the date of the damages report, but also projected hours that were projected to be worked

---

[1] ACS filed for bankruptcy protection on November 6, 2017 and its case is currently pending before this Court under case no. 17-13147 (SHL).

beyond that. So, for example, the projected job end date for the 122 East 23rd St project was February 12, 2017; the job end date for the 210 Livingston Project was January 22, 2017, and the job end date for the 26 Ann St Project was February 5, 2017. The Expert Report indicates that a number of other projects had covered work hours that were projected to be worked after June 21, 2016. Based on this Expert Report, which was adopted by the District Court as the basis for quantifying the amount of the Judgment, the Debtor's (and ACS') argument that there was a temporal limit on the District Court's finding of an alter ego relationship appears questionable.[2] Indeed, the District Court expressly found that "the record as a whole demonstrates that the alter ego relationship continued well beyond any "start up" period. See District Court Decision pp. 68-69, Motion Exhibit #1.

4.    On November 8, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

5.    On November 22, 2017, Metallic Lathers and Reinforcing Ironworkers Local 46 and Cement & Concrete Workers District Council, LIUNA (collectively, the "Unions"), two of the unions that sponsored the Funds in the District Court litigation, filed the instant Motion. By their Motion, the Unions are seeking relief from the automatic stay to allow the Unions to process a grievance alleging that after the relevant period in the Judgment Navillus and ACS continued to violate, and are continuing post-petition to violate, Navillus'

---

[2]    The potential impact of the two chapter 11 filings on the continuing alter ego issue is a separate, more complex issue, which the Committee does not address in this Statement. All of the Committee's rights are reserved with respect to that issue.

3

CBAs by ACS (as Navillus' alter ego) continuing to perform work on various projects utilizing non-union labor while failing to fund the benefit fund contributions required under the CBAs. Consistent with the Judgment, the Unions are seeking to find the Debtor and ACS jointly and severely liable for such unpaid benefit fund contributions as either general unsecured claims or administrative expense claims of both estates (the "Additional Claims"). By their Motion, the Unions are also seeking to bifurcate the issues by having the issue of potential liability on the Additional Claims determined expeditiously through the grievance and arbitration process under the CBAs while reserving for the Bankruptcy Court the issue of whether any additional liability assessed after arbitration constitutes an administrative expense claim under 11 U.S.C. § 503(a) in either or both of the Debtor's and ACS' chapter 11 cases.

6. On November 28, 2017 (the "Formation Date"), the United States Trustee for the Southern District of New York appointed three of the Debtor's largest unsecured creditors to the Committee. The Committee is currently comprised of (a) NYC District Council of Carpenters Benefit Funds, (b) Cement and Concrete Workers District Council Funds, and (c) District Council of New York City & Vicinity of the United Brotherhood of Carpenters.

7. On the Formation Date, the Committee selected Hahn & Hessen LLP as its counsel. On December 7, 2017, the Committee selected FTI Consulting, Inc. as its financial advisors.

8. On December 8, 2017, the Debtor filed an objection to the relief sought by the Motion (the "Objection") arguing that the Court should adjourn the Motion pending (a) a decision of the Second Circuit on the appeal, (b) the conclusion of the proposed sale of

ACS' assets in the ACS bankruptcy, or (c) the conclusion of a proposed mediation requested to be ordered by the Court with respect to the Judgment by and among all parties-in-interest. With respect to the last point, the Debtor contemporaneously filed a motion seeking to assign to mediation the disputed claims underlying the Judgment. *See* D.I. 102.

## STATEMENT IN SUPPORT OF THE MOTION

9. The Committee has grave concerns over the potential adverse impact of ACS' ongoing actions on the Debtor's estate. The Unions have asserted and seek to pursue grievances alleging that ACS, as Navillus' District Court-adjudicated alter ego, is continuing to breach post-petition the Debtor's CBAs, potentially causing the Debtor's estate to incur additional liability, all or some of which may constitute an administrative expense claim under 11 U.S.C. § 503(a). To the extent that ACS' ongoing actions of continuing to perform work on various projects utilizing non-union labor while failing to fund (or even reserve for) the benefit fund contributions required under the CBAs is creating additional potential liability to the Navillus estate, it is an intolerable situation which must be remedied immediately. ACS' and its principals' wrongful prepetition conduct has already unnecessarily forced the Debtor to incur a $74 million Judgment for damages to the Funds, necessitating this chapter 11 filing. ACS must not be allowed to continue post-petition to put the Debtor's estate in further financial jeopardy. Determining as quickly as possible whether the District Court's alter ego finding and continuing breach of the CBAs is an ongoing, reoccurring problem is an issue of critical importance to this Debtor's estate – one which is essential to formulating a chapter 11 plan for the Debtor. The Committee, therefore, supports the most expeditious and cost efficient manner for resolving this issue so

that the Debtor's estate can mitigate any potential additional liability. Arbitration would appear to be the fastest and most cost efficient vehicle for resolving the Additional Claims.

10. Further, as noted in the Motion, even if it is determined that once the Debtor and ACS both filed for chapter 11, ACS' post-petition actions no longer create a continuing liability to the Debtor's estate, determining whether ACS' ongoing work on projects not included in the Judgment caused Navillus and ACS to incur additional liabilities to the Funds beyond the amount of the Judgment is necessary in order to liquidate the entire amount of the Funds' claims against both ACS and Navillus.

11. While the Committee recognizes that the Debtor has appealed the Judgment to the Second Circuit,[3] the Second Circuit is not deciding the issue of the potential continuing post-Judgment breach of the CBAs or liquidating any potential Additional Claims as a result thereof. Moreover, the Second Circuit could take upwards to a year or more to render its decision on the underlying Judgment during which time the Additional Claims would continue to accrue (potentially, in part, as an asserted administrative expense) to the detriment of the Debtor's estate and its unsecured creditors. As such, awaiting a decision from the Second Circuit does not satisfy the estate's need to proceed in the most expeditious and efficient manner to address the issue of potential Additional Claims that may have accrued and continue to accrue.

12. Similarly, while a potential sale of ACS' assets may resolve the alleged continuing breach of the CBAs, until the closing of any such sale Additional Claims continue to accrue without any mitigation and, in any event, the amount of the Additional Claims still needs to be liquidated.

---

[3] The Funds have cross-appealed with respect to the District Court's dismissal of the Funds' claims against Donal O'Sullivan individually.

13. Further, while Court-directed mediation for all parties-in-interest is on a superficial level an enticing proposal, the request appears to be premature at this early stage of this chapter 11 case as the Committee has just begun its investigation into the Debtor's financial affairs and prepetition affiliate and insider transactions, the Debtor has not even begun to formulate a long-term business plan, with projected revenues, which would permit the parties to be able to evaluate the potential value of the Debtor's business and its ability to satisfy its creditors' claims, including the Judgment and Additional Claims, and the potential amount of the Fund's Additional Claims has not been determined. All of these, and other, significant issues need to be addressed before the parties-in-interest will realistically be in a position to participate meaningfully in any such mediation.

14. Finally, contrary to the Debtor's concern about piecemeal arbitration, the fact that not all of the Funds have moved for stay relief is of no import as a determination of the amount of the Additional Claims of these two Unions and ACS' potential continuing breach of Navillus' CBAs with these two Unions can readily be applied to the other Funds, as the alleged violations by ACS do not vary based on the different CBAs.

15. Given that the issue of Additional Claims and their potential priority status is critical toward the continued viability of the Debtor and the ultimate formulation of its chapter 11 plan, and that the grievance and arbitration process appears to be the most efficient and expeditious method of liquidating the Additional Claims, the Committee supports the relief sought in the Motion.

**WHEREFORE**, the Committee respectfully requests that this Court (a) overrule the Objection, (b) grant the Motion, and (c) grant such other and further relief as may be just and proper.

Dated: New York, New York
December 14, 2017

Respectfully submitted,

**HAHN & HESSEN LLP**

 /s/ Mark T. Power
Mark T. Power, Esq.
Jeffrey Zawadzki, Esq.
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Proposed Counsel to The Official Committee of Unsecured Creditors of Navillus Tile, Inc.*