Mark T. Power, Esq.  
Jeffrey Zawadzki, Esq.  
HAHN & HESSEN LLP  
488 Madison Avenue  
New York, New York  10022  
(212) 478-7200  

Hearing Date and Time:  December 20, 2017 at 2:00 p.m. (ET)

*Proposed Counsel to The Official Committee of*  
*Unsecured Creditors of Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------------x  

In re:                                                  Chapter 11  

NAVILLUS TILE, INC., d/b/a NAVILLUS                     Case No. 17-13162 (SHL)  
CONTRACTING,  

                                 Debtor.  
---------------------------------------------------------------------x  

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RESPONSE TO DEBTOR'S MOTION TO ASSIGN THE DISPUTED CLAIMS TO MEDIATION AND DIRECTING THE FUNDS TO PARTICIPATE IN MEDIATION

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor-in-possession ("Navillus" or the "Debtor"), by its proposed counsel, Hahn & Hessen LLP, hereby files this Response (the "Response") to *Navillus Tile Inc.'s Motion For Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code and Local Rule 9019-1 Assigning the Disputed Claims to Mediation and Directing the Plaintiff Funds to Participate in Such Mediation* [D.I. 102] (the "Motion"), and respectfully states as follows:

### PRELIMINARY STATEMENT

Although the Committee does not presume to speak for the Funds, from the Committee's perspective, the Debtor's motion to compel mediation of the Funds' Disputed Claims appears to be premature at this early stage of this chapter 11 case since the parties do

not currently have all of the critical information they need in order to be in a position to participate meaningfully in any such mediation. By way of example, the amount of the Funds' Disputed Claims has not been fully liquidated since the Funds have alleged that ACS has continued to breach their CBAs by continuing to perform new construction jobs using non-union labor without paying (or reserving) for the contribution benefits. Further, the Debtor has not even begun to formulate a medium or long-term business plan, with projected revenues, which would permit the parties to be able to evaluate the potential value of the reorganized Debtor's business and its ability to satisfy its creditors' claims, including the Funds' fully liquidated Disputed Claims. Moreover, the Committee has just begun its investigation into the Debtor's financial affairs and prepetition affiliate and insider transactions. Completion of its investigation is critical for the creditors to be in a position to evaluate what other potential sources of recovery exist for satisfaction of their claims. All of these, and other, significant issues need to be addressed before the parties-in-interest will realistically be in a position to participate meaningfully in any such mediation. Accordingly, the Debtor's motion for mediation at this early stage in the case should either be withdrawn or tabled until the parties have the requisite critical information they need in order to be able to participate meaningfully in a global mediation.

## BACKGROUND

1.      Prior to the Petition Date, certain union pension and welfare benefit funds (the "Funds") commenced litigation in the United States District Court for the Southern District of New York (the "District Court") against Navillus, Advanced Contracting Solutions, LLC ("ACS")[1] and certain principals and affiliates contending that ACS and the

---

[1] ACS filed for bankruptcy protection on November 6, 2017 and its case is currently pending before this Court under case no. 17-13147 (SHL).

affiliates were the alter egos of Navillus and as a result, were subject to and bound by Navillus' collective bargaining agreements (the "CBAs") making them jointly and severally liable for the unfunded benefit fund contributions attributable to the construction jobs which ACS performed utilizing non-union labor.

2. On September 22, 2017, the District Court, after conducting a two week trial, entered a judgment in favor of the Funds and against Navillus and ACS in the aggregate amount of approximately $74 million (the "Judgment"). The Debtor and ACS have appealed the Judgment to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). [2]

3. In its Decision, the District Court found that ACS and Navillus they were in fact alter egos from the inception of ACS. In calculating the amount of the Judgment, the District Court utilized an expert report dated June 21, 2016 which calculated the contribution benefits that were owed to the Funds based on covered hours worked as of June 21, 2016 on various ACS jobs, and covered hours that were projected to be worked to before completion of such jobs. The Funds and the Debtor (and ACS) currently dispute whether there was a temporal limit on the District Court's finding of an alter ego relationship or is ongoing such that the Fund's claims against ACS and the Debtor continue to accrue (collectively, with the Judgment, the "Funds' Disputed Claims"). [3]

4. On November 8, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

---

[2] The Funds have cross-appealed with respect to the District Court's dismissal of the Funds' claims against Donal O'Sullivan individually.

[3] The potential impact of the two chapter 11 filings on the continuing alter ego issue is a separate, more complex issue, which the Committee does not address in this Statement. All of the Committee's rights are reserved with respect to that issue.

The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

5. On November 22, 2017, Metallic Lathers and Reinforcing Ironworkers Local 46 and Cement & Concrete Workers District Council, LIUNA (collectively, the "Unions"), two of the unions that sponsored the Funds in the District Court litigation, filed a motion seeking relief from the automatic stay to allow the Unions to process a grievance alleging that, post-the relevant period in the Judgment, Navillus and ACS continued to violate, and are continuing violate post-petition, Navillus' CBAs by ACS, as Navillus' alter ego, continuing to perform work on various projects utilizing non-union labor while failing to fund the benefit fund contributions required under the CBAs. The Unions are seeking to find the Debtor and ACS jointly and severely liable for such unpaid benefit fund contributions as either general unsecured claims or administrative expense claims of both estates.

6. On November 28, 2017 (the "Formation Date"), the United States Trustee for the Southern District of New York appointed three of the Debtor's largest unsecured creditors to the Committee. The Committee is currently comprised of (a) NYC District Council of Carpenters Benefit Funds, (b) Cement and Concrete Workers District Council Funds, and (c) District Council of New York City & Vicinity of the United Brotherhood of Carpenters.

7. On the Formation Date, the Committee selected Hahn & Hessen LLP as its counsel. On December 7, 2017, the Committee selected FTI Consulting, Inc. as its financial advisors.

8.      On December 8, 2017, the Debtor filed an objection to the relief sought by the Unions (the "Debtor's Objection"), arguing that the Court should adjourn the Unions' motion pending (a) a decision of the Second Circuit on the appeal, (b) the conclusion of the proposed sale of ACS' assets in the ACS bankruptcy, or (c) the conclusion of a proposed mediation (the "Mediation") requested to be ordered by the Court with respect to the Judgment by and among all parties-in-interest.

9.      With respect to the last point, the Debtor contemporaneously filed its Motion seeking to assign to mediation the Disputed Claims. *See* D.I. 102. All the Funds that were parties to the Judgment would be required to participate in the Mediation. The Debtor believes that Mediation would be useful in resolving the Disputed Claims, avoiding the incurrence of additional fees and costs, and avoiding unnecessary and excessive litigation.

## RESPONSE

10.     While Court-directed mediation for all parties-in-interest is, on a superficial level, an enticing proposal, the Committee believes that the request is premature at this early stage of this chapter 11 case since the Committee believes that the parties to the mediation do not currently have all the information they need in order to be able to participate in a fully-engaged and meaningful in a Mediation.

11.     Specifically, the Committee has only just begun its investigation into the Debtor's financial affairs and prepetition affiliate and insider transactions.  Completion of such an investigation is critical for the parties to be confident that they have uncovered all potential sources of recovery on their claims.

12.     Further, the Debtor has not even begun to formulate a long-term business plan with projected revenues.  A more in-depth analysis and knowledge of the Debtor's

financial affairs and current projections will permit the parties to understand the value of the Debtor's business and its ability to satisfy its creditors' claims, including the Disputed Claims. The Committee is reluctant to enter prematurely into settlement discussions without first fully understanding the Debtor's ability to satisfy its claims or a proposed settlement.

13. In addition to the lack of information regarding the Debtor's financial affairs, there is also insufficient information regarding the nature and scope of the Disputed Claims themselves. In particular, the potential amount of the Funds' Disputed Claims beyond the amount of the Judgment has not been determined, as the Unions have asserted that ACS's breach of the CBAs is ongoing and open-ended. In order to have a productive Mediation, the Committee believes that the parties should have a full and concrete understanding of the liabilities that are the subject of the Mediation. The Debtor, the Committee and the Funds need to first understand the potential magnitude of the Disputed Claims before they are in a position to evaluate and accept any payout proposal under a plan.

14. In sum, there are significant issues that need to be addressed before the parties-in-interest will realistically be in a position to participate meaningfully in the Debtor's proposed Mediation. The Committee does not believe that the parties are in a position at this early stage in the case to be able to engage in a productive discussion as to a potential settlement through Mediation. Any attempt to mediate prematurely where the parties lack sufficient information to reach a global resolution of their disputes will only unnecessarily increase the costs and fees of the parties, waste time that could have been spent in a more productive manner, and may even further complicate issues between the parties, thus lessening the possibility of a successful mediation in the future.

15. The Committee is not opposed to the idea of a mediation at some point in the near future. However, until the parties have the requisite information necessary to meaningfully participate in Mediation, the Committee objects to the Debtor's Motion as being premature and, at this point in the bankruptcy case, potentially counterproductive and wasteful of estate resources.

**WHEREFORE**, the Committee respectfully requests that this Court deny the Debtor's Motion, without prejudice to its right to refile the Motion at a future date, and grant such other and further relief as may be just and proper.

Dated: New York, New York
December 19, 2017

Respectfully submitted,

**HAHN & HESSEN LLP**

_/s/ Mark T. Power_
Mark T. Power, Esq.
Jeffrey Zawadzki, Esq.
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Proposed Counsel to The Official Committee of
Unsecured Creditors of Navillus Tile, Inc.*