Mark T. Power, Esq.
Jeffrey Zawadzki, Esq.
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York  10022
(212) 478-7200

Hearing Date and Time:   January 24, 2018 at 2:00 p.m. (ET)
Objection Deadline (for Committee):   January 19, 2018

*Proposed Counsel to The Official Committee of
Unsecured Creditors of Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
In re:                                                                                    Chapter 11

NAVILLUS TILE, INC., DBA NAVILLUS                          Case No. 17-13162 (SHL)
CONTRACTING,

                                            Debtor.
----------------------------------------------------------------------x

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED
OBJECTION TO MOTION OF NAVILLUS TILE, INC. FOR ENTRY OF AN
ORDER (A) AUTHORIZING THE DEBTOR TO ENTER INTO
COMPLETION AGREEMENT WITH LIBERTY MUTUAL INSURANCE
COMPANY AND (B) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor-in-possession (the "Debtor"), by its proposed counsel, Hahn & Hessen LLP, hereby files this limited objection to the *Motion of Navillus Tile, Inc. for Entry of an Order (A) Authorizing Debtor to Enter into Completion Agreement with Liberty Mutual Insurance Company and (B) Granting Related Relief* [D.I. 176] (the "Motion"),[1] and in support thereof respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Overall, the Committee supports the relief sought in the Debtor's Motion for authorization to enter into the completion agreement (the "Completion Agreement") with

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

872106/010-6902627.2

Liberty Mutual Insurance Company ("Liberty").  By entering into the Completion Agreement, the Debtor will become the completion subcontractor for Liberty on the Superstructure Concrete Contract – One Vanderbilt Avenue, New York, New York (the "OVA Project") with the consent of the project's construction manager Tishman Construction Corp. of New York ("Tishman") and owner, One Vanderbilt Owner LLC (the "Owner").  The Committee believes that the Debtor is exercising sound business judgment by seeking to continue and complete its work on the OVA Project, currently the Debtor's largest single construction project, thereby maximizing the potential value for the estate by preserving its single largest asset.

2. Unfortunately, one part of the Completion Agreement goes far beyond the purview of the Debtor's exercise of its judgment about its business operations and unnecessarily enters into the bankruptcy realm of relinquishing control of the chapter 11 plan process by inserting a provision which grants Liberty sole discretion to terminate the Completion Agreement based -- not on any performance default on the OVA Project -- but solely on the Debtor's failure to file and confirm a plan of reorganization by certain arbitrary drop dead dates.[2]  By including this provision, the Debtor effectively abdicates its control over the timing of the chapter 11 plan process to Liberty, a non-fiduciary in this case with at-best a contingent claim.  The Committee submits that the Debtor's relinquishment of control of the chapter 11 plan process in a single project construction contract is wholly inappropriate and should not be approved by this Court.  The timing of the plan confirmation process in this case has nothing to do with the Debtor's performance under the

---

[2]    Indicative of how arbitrary these plan milestones are, there is no requirement or indication of what requisite terms the plan must contain.  The Debtor just has to file a plan, any plan containing any terms, and confirm that plan within 95 days.  There is not even any flexibility to accommodate the Court's calendar in the event a hearing cannot be scheduled by a proposed deadline.

2

OVA Project and should be left to the estate's fiduciaries and this Court. Not only does the inclusion of these arbitrary milestones unnecessarily force the Debtor to take actions and file pleadings, which may not be in the best interest of the estate, they also potentially hamstring the ability of the Committee to take certain actions in this case and could even inhibit this Court's ability to exercise its discretion over the case. For example, the Committee's ability to seek to terminate the Debtor's exclusivity and file its own plan or oppose confirmation of the Debtor's plan could be inhibited since if successful, it would give Liberty the unilateral right to terminate the Completion Agreement even though the Debtor had fully performed on the OVA Project and Liberty (or the Owner) have suffered no damages. Similarly, this Court's ability to, for example, deny or delay confirmation of the Debtor's plan could be restricted because it could result in the Debtor arbitrarily losing its largest construction contract. There is simply no legitimate basis to link the Debtor's performance on the OVA Project under the Completion Agreement to the timing of the Debtor's chapter 11 plan process or any interim steps that need to be accomplished for that plan to become effective. Liberty should not be permitted to control the timing of this case. This Court should only approve the Completion Agreement, conditioned upon the plan milestone provision being removed.

## BACKGROUND

3. On November 8, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtor continues to operate its business and manage its properties as debtor-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

4.  On November 28, 2017 (the "Formation Date"), the United States Trustee for the Southern District of New York appointed three of the Debtor's largest unsecured creditors to the Committee. The Committee is currently comprised of (a) NYC District Council of Carpenters Benefit Funds, (b) Cement and Concrete Workers District Council Funds, and (c) District Council of New York City & Vicinity of the United Brotherhood of Carpenters.

5.  On the Formation Date, the Committee selected Hahn & Hessen LLP as its counsel. Thereafter, on December 7, 2017, the Committee selected FTI Consulting, Inc. as its financial advisors.

6.  On December 22, 2017, the Court entered on a fully consensual basis a Final Order approving the Financing Agreement between the Debtor and Liberty providing for a commitment for a $135 million credit facility for debtor-in-possession financing (see D.I. 156 "Final DIP Order").

7.  On January 8, 2018, the Debtor filed its Motion.

## LIMITED OBJECTION

8.  While the Committee supports the Debtor's entry into the Completion Agreement as it preserves for the benefit of the estate the Debtor's largest single construction project, the plan milestone provision in the Completion Agreement is an unwarranted and inappropriate intrusion into the administration of this bankruptcy case by effectively granting Liberty veto rights over the estate's chapter 11 plan process.

**A.    There Is No Valid Basis For Including Plan
      Milestones In The Completion Agreement**

9.     The Completion Agreement contains several drop dead dates by which the Debtor must file a plan and disclosure statement, obtain approval to disseminate the disclosure statement, confirm its plan and have the plan go effective. Specifically, the Completion Agreement provides, in relevant part, that:

> 15. Navillus shall use its reasonable and best efforts to pursue confirmation of a plan of reorganization pursuant to the following timeline, all of which shall be subject to the Bankruptcy Court's calendar and approval (in each case, a "<u>Milestone</u>"):
>
> (a)    On or about May 30, 2018, Navillus will file a plan of reorganization (the "Plan") and accompanying disclosure statement (the "Disclosure Statement");
>
> (b)    On or about to [sic] June 6, 2018, Navillus will file a motion for approval of the Disclosure Statement;
>
> (c)    On or about July 18, 2018, Navillus will obtain entry of an order approving the Disclosure Statement and scheduling a hearing to consider confirmation of the Plan;
>
> (d)    On or about September 3, 2018, Navillus will obtain entry of an Order confirming the Plan; and
>
> (e)    On or about November 9, 2018, Navillus' Plan may become be [sic] effective.
>
> **In the event Navillus fails to meet any of the Milestones, the Surety shall have the right**, but not the obligation, **to declare that such a failure constitutes a material breach of this Completion Agreement and terminate this Completion Agreement, in its sole discretion.** Navillus' failure to meet any of the Milestones shall not constitute a material breach of this Completion Agreement, either hereunder or under the Takeover Agreement, absent the Surety declaring such failure to constitute a material breach, in its sole discretion.

Motion, Ex. 2, ¶ 15 (emphasis added). As such, even if the Debtor is fully and satisfactorily performing on the OVA Project, in the event that any of the Milestones is not met, Liberty

5

has the unfettered right to terminate the Completion Agreement and replace the Debtor as the completion subcontractor on the OVA Project. This provision is unnecessary, overreaching and inappropriate.

10. The Milestones create artificial deadlines[3] which can be used, in Liberty's sole and absolute discretion, to create a non-performance-based default under the Debtor's largest contract. Neither Liberty nor Tishman nor the Owner should be granted such authority. Given that the Debtor has waived any claim or defense that Tishman's termination of its contract with the Debtor on the OVA Project or that Liberty taking over of the OVA Project was invalid or improper (see Motion, Ex. 2, ¶¶ 1-2), the Debtor would be left without any recourse on the loss of the estate's single largest asset.

11. Additionally, Liberty's termination of the Completion Agreement for failure to meet any Milestone would also potentially constitute a "DIP Financing Default" under the post-petition financing agreement approved the Final DIP Order, which would permit Liberty to withhold approval of any disbursement under the $135 million DIP Facility (as defined in the Final DIP Order). See D.I. 57 ("DIP Motion"), Ex. 2 ("Financing Agreement"), ¶¶ D, F and F(b). Notably, neither the Final DIP Order nor the Financing Agreement contained any such chapter 11 milestones.

12. As such, the Milestone provision in the Completion Agreement potentially undermines the hard work of the Debtor to date in stabilizing its business and assuring its customers that it can complete its ongoing construction projects and weighs heavily against a finding that a "good business reason" exists to support its inclusion in the Completion

---

[3] There has been no showing that the Milestones are even achievable. Indeed, briefing on the Debtor's appeal to the United States Court of Appeal for the Second Circuit of the $76 judgment entered against it by the United States District Court for the Southern District of New York, which decision will have a determinative impact on any chapter 11 plan, has not even been completed.

Agreement. Indeed, the Debtor's decision to acquiesce to the Milestones has nothing to do with an exercise of judgment about its business, as the Milestones relate sole to the timing of the Chapter 11 plan process.

13. Moreover, Liberty's ability to terminate the Completion Agreement upon the Debtor's failure to meet any Milestone (and, potentially, withhold approval of any disbursements under the DIP Facility) severely hamstrings the estate's professionals' ability to formulate and negotiate a consensual chapter 11 plan, absent Liberty's consent, as the loss of the OVA Project, the Remaining Contract Balance and the Debtor's access to the DIP Facility would constitute significant prejudice to the estate.

14. Thus, not only does the Milestone provision improperly condition the Debtor's performance on the OVA Project under the Completion Agreement on wholly unrelated and arbitrary chapter 11 milestones, it shifts control of the chapter 11 plan process from the estate's fiduciaries to Liberty (a non-fiduciary holding a contingent claim). As such, inclusion of the Milestone provision is not supported by a "good business reason" or the exercise of the Debtor's "sound business judgment" and should, therefore, be excised from the Completion Agreement.

15. The Debtor's decision to acquiesce to the Milestones could also adversely impact the Committee's ability to exercise its fiduciary duties in this case as failure to meet a Milestone could be used in the future as an arbitrary basis to deny or overrule any position the Committee may take concerning the Debtor's exclusivity over the plan process or the terms of a proposed plan itself.

16. Even more problematic is the fact that the Milestones, if approved at this early stage in the case, could hamstring this Court's ability in the future to control and make

decisions about the chapter 11 plan process, since any decision by the Court which could potentially cause a default of any of the Milestones could be extremely detrimental to the Debtor's operations by risking a termination of the Completion Agreement.  In short, these arbitrary Milestones unnecessarily seek to tie the hands of the Debtor, the Committee and even this Court in managing the chapter 11 plan process in this case.

**WHEREFORE**, the Committee respectfully requests that this Court (a) sustain the Objection, (b) limit the relief sought in the Motion to the extent provided for herein, and (c) grant such other and further relief as may be just and proper.

Dated:  New York, New York
         January 19, 2018

                                Respectfully submitted,

                                **HAHN & HESSEN LLP**

                                 /s/ *Mark T. Power*
                                Mark T. Power, Esq.
                                Jeffrey Zawadzki, Esq.
                                488 Madison Avenue
                                New York, New York 10022
                                (212) 478-7200

                                *Proposed Counsel to The Official Committee of*
                                *Unsecured Creditors of Navillus Tile, Inc.*