UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| NAVILLUS TILE, INC., DBA NAVILLUS CONTRACTING, | ) Case No. 17-13162 (SHL) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

### ORDER (A) AUTHORIZING NAVILLUS TILE, INC. TO ENTER INTO A COMPLETION AGREEMENT WITH LIBERTY MUTUAL INSURANCE COMPANY AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of Navillus Tile, Inc., as debtor and debtor-in-possession in the above-captioned chapter 11 case ("Navillus" or the "Debtor"), for an order pursuant to sections 362 and 363 of title 11 United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 and 6004-1 of the Local Rules for the Southern District of New York (the "Local Rules") authorizing Navillus to enter into the Completion Agreement (as defined below) with Liberty Mutual Insurance Company ("Liberty"); and upon consideration of the Affidavit of Donal O'Sullivan pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or in the Completion Agreement, as applicable.

other or further notice need be provided; and the relief being requested being in the best interests of Navillus and its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent provided herein.

2.      Pursuant to Bankruptcy Code section 363(b), effective upon entry of this Order, Navillus is authorized to enter into the Completion Agreement attached hereto as **Exhibit 1,** as well as all accompanying ancillary agreements including: (a) all form bailment agreements required thereunder in substantially the same form attached as **Exhibit A** thereto; (b) all form third-party contract assignments required thereunder in the same form attached as **Exhibit B** thereto; and (c) the bill of sale required thereunder in substantially the same form attached as **Exhibit C** thereto.

3.      Entering into the Completion Agreement is in the sound business judgment of Navillus and in the best interest of Navillus, its estate, and its creditors.

4.      The automatic stay under Bankruptcy Code section 362 is hereby modified to allow Navillus and Liberty to enter into the Completion Agreement and carry out and execute the provisions set forth therein.

5.      Liberty is not required to seek further relief from this Court to enforce the provisions of the Completion Agreement including, but not limited, seeking relief from the Court to terminate the Completion Agreement pursuant to its terms.  Notwithstanding the foregoing, in

the event a Chapter 11 Notice Party objects to the termination of the Completion Agreement by Liberty based on any failure to meet a Milestone, such Chapter 11 Notice Party shall, within five (5) business days of receiving notice of termination by Liberty in accordance with the objection procedure set forth in paragraph 15 of the Completion Agreement, file with this Court a motion seeking: (a) standing to prosecute its objection to termination based on any failure to meet a Milestone, and (b) a finding that Navillus has made reasonable and best efforts towards confirmation of a confirmable chapter 11 plan, together with a request for an expedited hearing on its motion at the earliest date convenient for the Court.  The Completion Agreement shall remain in effect pending a ruling of this Court on any such motion filed by a Chapter 11 Notice Party.

6.    Navillus is authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

7.    Nothing contained in this Order or the Completion Agreement shall limit the Committee's right to seek to terminate the Debtor's exclusivity to file a chapter 11 plan, file a competing chapter 11 plan or object to the terms of any chapter 11 plan filed by the Debtor and any such actions by the Committee shall not constitute a material breach under the Completion Agreement or a basis for Surety to declare a default under the Completion Agreement; provided, however, that Surety shall still have the right to declare a default in the event that the Milestones set forth in the Completion Agreement are not met (subject to the objection procedure set forth in paragraph 15 of the Completion Agreement).

8.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation and/or enforcement of this Order.

Dated: February 8, 2018
New York, New York

                            */s/ Sean H. Lane*
                            HONORABLE SEAN H. LANE
                            UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Completion Agreement**

## COMPLETION AGREEMENT

This Completion Agreement is made and entered into this ___ day of January 2018, by and between Liberty Mutual Insurance Company (the "Surety") and Navillus Tile, Inc., d/b/a Navillus Contracting ("Navillus" and, together with the Surety, the "Parties").

**WHEREAS**, on or about October 21, 2016, Navillus and Tishman Construction Corporation of New York ("Tishman") entered into a contract ("the Contract") for Navillus to perform a construction project known as "Superstructure Concrete – One Vanderbilt Avenue, New York, NY" (the "Project"), with a contract price of $135,926,646.00;

**WHEREAS,** the Surety executed and delivered to Tishman and One Vanderbilt Owner LLC (collectively, the "Obligees"), and the Obligees accepted, Performance Bond No. 015052680 (the "Bond"), in the penal sum of $135,926,646.00, dated February 8, 2017, in connection with the Contract;

**WHEREAS**, on September 22, 2017, a judgment was entered against Navillus in the United States District Court, Southern District of New York, for an amount in excess of $75 million (the "Judgment");

**WHEREAS**, by letter dated October 3, 2017, Tishman provided written notice that it considered Navillus to be in default under the Contract and that Tishman was electing to terminate the Contract for cause (the "Termination");

**WHEREAS,** the Obligees thereafter requested that the Surety complete the performance of Navillus's obligations under the Contract, pursuant to the Bond;

**WHEREAS,** the Surety is willing to undertake completion of the Contract pursuant to paragraph 5.1 of the Bond and in accordance with the terms of the Contract, the Bond, and an appropriate Takeover Agreement, provided that (a) in doing so, the Surety will receive the entire Remaining Contract Balance in accordance with the terms of the Takeover Agreement (as

hereinafter defined), (b) the Obligees consent to the Surety's retention of Navillus as completion contractor, and (c) all of Surety's rights, claims, and remedies relative to Navillus under any Agreement of Indemnity are preserved;

**WHEREAS,** Navillus is willing to consent to the Surety's takeover of the Project, waive any and all claims and defenses against or relative to the Surety and its takeover of the Project as of the effective date of this Completion Agreement, waive any and all claims and defenses against the Obligees that the Termination was improper or invalid, and complete the Work (as defined below) as the Surety's completion contractor, provided that, in doing so, it receives the Remaining Contract Balance in accordance with the terms of the Takeover Agreement (as defined below) for completing the Work;

**WHEREAS,** Navillus represents that it remains ready, willing, and able to complete the performance of its obligations under the Contract in accordance with and pursuant to the terms and conditions of the Contract (and as may be modified herein) for the Remaining Contract Balance (as defined below and as the same may be adjusted based upon changes to the Contract), either pursuant to the Contract directly or as the Surety's completion contractor after a takeover;

**WHEREAS**, on October 11, 2017, Tishman and Navillus, with the Surety's consent, executed a Transition Work Agreement, effective October 4, 2017, whereby Navillus agreed to perform the Transition Work (as defined therein) as directed by Tishman and subject to the terms and conditions of the Transition Work Agreement, as such agreement has been extended pursuant to its terms through and including December 26, 2017;

**WHEREAS**, on November 8, 2017, Navillus filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code");

2

**WHEREAS**, the Surety and Navillus have executed the Financing Agreement, dated December 22, 2017, providing a commitment for a $135 million facility for debtor-in-possession financing by the Surety to fund Navillus's work in accordance with the terms of the Financing Agreement on all of the projects bonded by the Surety, including without limitation the Project ("DIP Financing");

**NOW, THEREFORE,** in consideration of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.        Navillus reaffirms its execution of any and all Agreements of Indemnity in favor of the Surety (and any affiliate of the Surety) and the obligations contained therein, including but not limited to (a) the General Agreement of Indemnity dated October 24, 1995; (b) the General Agreement of Indemnity dated December 12, 2006; and (c) the General Agreement of Indemnity for Contractors dated March 15, 2007. Navillus consents to the Surety's takeover of the Project, and waives and releases any all rights, remedies, claims, and defenses that it now has or may have as of the effective date of this Completion Agreement arising from or otherwise relating to the Surety's takeover of the Project except for any claim(s) against the Surety that Navillus performed labor or supplied materials or equipment to the Project hereunder and was not paid therefor or any other claims pursuant to this Completion Agreement.

2.        With respect to the Obligees, Navillus also hereby waives and releases any claim or defense that the Termination was improper or invalid.  For purposes of clarity, but not as a limitation, Navillus acknowledges that, as against the Surety, (a) it shall not and cannot assert that Navillus was not in default or that the Surety should not have taken over the Project as an affirmative claim against the Surety or as a defense to any claim by the Surety against Navillus

under any Agreement of Indemnity or pursuant to common law, (b) any and all such rights, remedies, claims, and defenses of Navillus are hereby waived and released by Navillus, and (c) the Surety is entering into this Completion Agreement and the related Takeover Agreement in reliance upon and having been induced (in part) by this waiver and release.

3.      Navillus, as an independent contractor and not as an agent of the Surety, shall fully perform and complete all obligations required to be performed and completed under (a) the Contract, including all amendments, addenda, change orders, approved submittals, and all other documents that have (prior to the date hereof) become part of the Contract as well as all such amendments and documents that hereafter become part of the Contract pursuant to its terms, all of which are expressly incorporated herein by reference, and (b) this Completion Agreement ((a) and (b) are collectively referred to herein as "the Work"). Navillus shall fully perform and complete the Work and assumes all responsibilities relative thereto as if Tishman had not terminated the Contract, including but not limited to:

(a)     furnishing all equipment, tools, labor, materials, supplies, and services required and/or necessary to complete the Work;

(b)     completing all incomplete work under the Contract, in accordance with the Contract; and

(c)     fulfilling any and all guarantee and/or warranty obligations specified in the Contract.

4.      This Completion Agreement consists of the terms and provisions contained herein and in the Contract in its entirety, including but not limited to all documents identified in paragraph 59 of the Contract and any and all changes/modifications to the Contract made prior to

the date hereof, all of which are incorporated herein by reference and which are hereinafter referred to collectively as "the Contract Documents".

5.      Navillus hereby accepts and assumes responsibility for the full and final completion of the Work as if Tishman had not terminated the Contract.  Navillus acknowledges that, as the original contractor on the Project, it is in the best position to know the status of the work performed under the Contract to date, that neither the Surety nor the Obligees have made any representations or warranties concerning the work completed to date, and that it is not relying upon and would not rely upon any such representations in entering into this Completion Agreement.

6.      Navillus shall be bound to the Surety by all of the terms and provisions of the Contract Documents, including administrative as well as technical provisions, and shall comply therewith in all respects.  Navillus shall be bound to the Surety in the same manner and to the same extent that it was bound to Tishman prior to Tishman's termination of the Contract.

7.      Navillus shall complete the Work in exchange for payment of the Remaining Contract Balance pursuant to the terms of this Completion Agreement.  The "Remaining Contract Balance" (as the same may be adjusted based upon changes to the Contract), is the amount stated in paragraph 6 of the Takeover Agreement executed (or to be executed) by and between the Surety and the Obligees. Navillus confirms that it has received and reviewed the Takeover Agreement and that it will complete the Work for the Remaining Contract Balance payable by the Surety to Navillus as and when paid to the Surety by Tishman pursuant to the Contract, as full compensation for the performance and completion of the Work. Navillus shall assist the Surety in the preparation and submission of payment requisitions to Tishman as the Surety may request, and the Surety shall issue payment to Navillus for work performed

hereunder within five (5) days after the Surety receives payment for such work from Tishman unless otherwise agreed to by the Parties.

(a)     Navillus's commitment to complete the Work for the Remaining Contract Balance includes all costs and expenses of Navillus of every nature including, but not limited to, all labor, materials, services, equipment, rentals, overhead, and any other costs or expenses that are or could be incurred by Navillus to perform and satisfactorily complete the Work. Navillus shall furnish and pay for all labor, materials, services, and equipment and shall do everything else necessary to perform and satisfactorily complete the Work as required by the Contract Documents. Navillus expressly confirms and acknowledges that paragraph 37 of the Contract applies with equal force to this Completion Agreement.

8.     Navillus shall commence performance hereunder immediately upon receipt of a written Notice to Proceed from the Surety, and shall complete the Work within the time provided by the Contract. Time is of the essence. If Navillus fails to complete the Work in the time provided by the Contract, then Navillus shall be liable to the Surety for all liquidated or other damages assessed by the Obligees (or either of them) against the Surety. The Surety may withhold from the payments that otherwise may be due to Navillus an amount equal to the liquidated or other damages actually assessed or which, in the Surety's reasonable belief, may be assessed. Notwithstanding any assessment or non-assessment of liquidated or delay damages against the Surety, the Surety shall have the right to assess against Navillus its actual damages if Navillus fails to timely complete the Work.

9.     Nothing herein shall alter or otherwise affect the Surety's obligations to third-party claimants, if any, under the Payment Bond it executed on behalf of Navillus relative to the Project. The Payment Bond shall remain in full force and effect, and shall cover Navillus for

6

labor performed and materials and equipment supplied in furtherance of Navillus's completion of the Work. Navillus, however, shall remain primarily responsible for all claims made by any laborers, subcontractors, or material suppliers for labor, material, or equipment supplied in connection with the Project or in connection with or in furtherance of this Completion Agreement. With respect to any liens filed against the Project by any laborer, subcontractor, supplier or representative thereof, Navillus shall be obligated to fully and strictly comply with the requirements of paragraph 20 of the Contract.

10.     Notwithstanding the date of execution of this Completion Agreement, this Completion Agreement shall be conditioned upon, and shall not be effective or in force until, (i) the execution of a written Takeover Agreement by and between the Surety and Tishman, and (ii) authorization by the Bankruptcy Court for Navillus to enter into this Completion Agreement, both of which constitute a condition precedent to the effectiveness of this Completion Agreement. If this Completion Agreement is executed by the Surety and Navillus prior to the occurrence of this condition precedent, the effective date of this Completion Agreement shall be the same as the effective date of the Takeover Agreement.

11.     In the event the Takeover Agreement is terminated according to its terms, the term of this Completion Agreement will automatically expire and the Completion Agreement shall be deemed terminated by its own terms without liability to the Surety or the Obligees.

12.     Acceptance of payment by Navillus constitutes a complete and full release of any and all claims, of any type or kind, asserted or unasserted, that Navillus may have against the Surety and/or its employees, directors, officers, consultants, agents, and representatives, with respect to the Contract, the Project, and/or this Completion Agreement. Navillus shall execute separate release(s) and lien waiver(s) in accordance with Section 36 of the Contract releasing

Surety and the Obligees, as well as any additional release(s) and lien waiver(s) reasonably required by the Surety in exchange for payment.

13.    The Surety may terminate Navillus's right to perform under this Completion Agreement upon determining that Navillus is not completing the Work in accordance with the Contract Documents.  Upon the termination of Navillus's right to perform under this Completion Agreement, Navillus shall promptly discontinue all work (unless the notice of termination directs otherwise) and deliver or otherwise make available to the Surety, for its use, all data, drawings, specifications, reports, estimates, summaries, and such other information and materials pertaining to the Project in Navillus's possession, whether in hard copy or electronic format. Without limitation, Surety shall also have all of the rights under paragraph 26 of the Contract, including the right to take possession of Navillus's materials, tools, plant, equipment, and appliances used or to be used for the construction, whether on or off the site of the Project, including without limitation the form systems and crane, which Navillus acknowledges that the engineering drawings for the crane have been paid for by the Obligees; in furtherance of this obligation, Navillus shall use commercially reasonable efforts to cause all storage facilities, warehouses, and other bailees, if any, to execute form bailment agreements in favor of Tishman for all material stored off-site in substantially the same form attached hereto as Exhibit A, which will be deemed effective following a termination of the Completion Agreement.  At Tishman's election, to the extent possible, Navillus shall also assign any outstanding supplier and vendor contracts, or other agreements with third-parties, pertaining to the Work or the Project, including without limitation with respect to the crane; in furtherance of this obligation, Navillus shall execute form assignments in favor of Tishman for all third-party contracts in substantially the same form attached hereto as Exhibit B, which will be deemed effective following a termination

of the Completion Agreement and at the election of Tishman.  To the extent owned by Navillus, Navillus shall also provide a bill of sale in favor of the Surety or Tishman, to be mutually decided, of the Peri forms system in substantially the same form attached hereto as <u>Exhibit C</u>, which will be deemed effective following a termination of the Completion Agreement. Termination of Navillus's right to perform under this Completion Agreement shall not relieve it of (a) its responsibility under this Completion Agreement to pay for the labor performed and materials/equipment supplied by it or its subcontractors or suppliers (to the extent it has received payment from the Surety hereunder) or (b) its obligations under any Agreement of Indemnity.

14.    Navillus hereby agrees that, should the automatic stay provisions contained in the United States Bankruptcy Code, 11 U.S.C. § 362, apply to this Completion Agreement, the Surety's right to terminate this Completion Agreement shall not be limited by such provisions, and Navillus accordingly waives the automatic stay as might otherwise be applicable to this Completion Agreement.

15.    Navillus shall use its reasonable and best efforts to pursue confirmation of a plan of reorganization pursuant to the following timeline, all of which shall be subject to the Bankruptcy Court's calendar and approval (in each case, a "Milestone"):

(a)    On or about June 29, 2018, Navillus will file a plan of reorganization (the "Plan") and accompanying disclosure statement (the "Disclosure Statement");

(b)    On or about July 6, 2018, Navillus will file a motion for approval of the Disclosure Statement;

(c)    On or about August 30, 2018, Navillus will obtain entry of an order approving the Disclosure Statement and scheduling a hearing to consider confirmation of the Plan;

(d)      On or about October 15, 2018, Navillus will obtain entry of an Order confirming the Plan; and

(e)      On or about December 14, 2018 Navillus' Plan may become effective.

In the event Navillus fails to meet any of the Milestones, the Surety, and only the Surety, shall have the right, but not the obligation, to declare that such a failure constitutes a material breach of this Completion Agreement and terminate this Completion Agreement on no less than five (5) business days' notice by both overnight delivery and email to, in additional to any other entities entitled to notice under the Completion Agreement, (a) counsel to Navillus, (b) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn:  Mark T. Power, Esq., mpower@hahnhessen.com, counsel to the official committee of unsecured creditors appointed in Navillus' chapter 11 case (the "Committee"), and (c) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Paul K. Schwartzberg, Esq., paul.schwartzberg@usdoj.gov ((a)-(c), the "Chapter 11 Notice Parties").   In the event that a Chapter 11 Notice Party files an objection with the Bankruptcy Court to the Surety's termination of this Completion Agreement based upon a failure to meet a Milestone, such termination shall be effective unless the Bankruptcy Court finds that the objecting party has the requisite standing to prosecute such objection and Navillus has made reasonable and best efforts towards confirmation of a confirmable chapter 11 plan.  Navillus' failure to meet any of the Milestones shall not constitute (y) a material breach of, or cross-default under, the DIP Financing, or (z) a material breach of this Completion Agreement, either hereunder or under the Takeover Agreement, absent the Surety declaring such failure to constitute a material breach, subject to the Bankruptcy Court sustaining an objection as set forth above.  For the avoidance of doubt, the notice and objection provisions contained in this section

10

relate solely to the issue of termination of this Completion Agreement based upon a failure to achieve a Milestone and do not relate in any way to a termination of this Completion Agreement by the Surety for any other reason provided in this Completion Agreement.

16.     The Surety designates Beacon Consulting Group ("Beacon") as its agent and representative in connection with the completion of the Work.  Beacon is authorized to represent the Surety in dealing with Navillus in connection with the Project. Navillus shall comply with directives issued by Beacon's authorized representatives. Beacon will represent the Surety in connection with the Project on a day-to-day basis. While Navillus should communicate with Beacon, on the Surety's behalf, on project-related matters, nothing herein is intended to preclude Navillus from communicating directly with the Obligees (or either of them) relative to the Project, provided the Surety is advised of all material communications between Navillus and the Obligees (or either of them) contemporaneously therewith.

17.     Prior to performing any work on the Project pursuant to this Completion Agreement, Navillus will maintain (or obtain, to the extent it has not already obtained) all insurance coverages in accordance with the terms of the Contract, which coverages will include without limitation the Surety, Beacon, each of the Obligees, and any other party required by the Contract to be named as insureds or additional insureds.  Notwithstanding the foregoing, Surety and Beacon shall be named as additional insureds under the wrap up policy provided for the Project.  Navillus will deliver to the Surety and the Obligees copies of certificates of insurance or other proof of coverage required by Obligees evidencing such coverages prior to commencing any work hereunder. Navillus shall at all times observe and comply with all federal, state, county, and city laws, ordinances, and regulations in any manner affecting the Project and its employees.

18.     Navillus assumes responsibility for any and all direct liabilities, claims, damages, losses, suits, and demands against the Surety arising out of any breach of this Completion Agreement by Navillus, or its failure to perform as required under this Completion Agreement, or the failure to perform of its subcontractors, employees, laborers, suppliers, and any other person or entity acting on behalf of Navillus relative to the Project.  Navillus will indemnify and hold the Surety and its respective employees, directors, officers, consultants, agents, and representatives, free and harmless from and against any and all actions, causes of action, suits, for limitation, counsel fees, and disbursements (including allocated costs of in-house counsel, accountants, and engineers) incurred by any of them as a result of, or arising out of, or relating to the Work, and Paragraph 7 of the Contract shall specifically apply to this Completion Agreement, with the Surety and Beacon also considered as "other Indemnitees". In the event of any inconsistency between this Completion Agreement and paragraph 7 of the Contract, the terms of paragraph 7 of the Contract shall govern.  All such indemnity is in addition to and not in lieu of any indemnity or similar obligations Navillus has under any Agreement of Indemnity.

19.     The Judgment is the subject of a Notice of Appeal that Navillus has filed with the United States Court of Appeals for the Second Circuit. Navillus has represented that it anticipates that its ability to complete the Work will not be materially affected by its filing for protection pursuant to Chapter 11 of the Bankruptcy Code.  Navillus further represents that it will seek Bankruptcy Court approval of this Completion Agreement at the earliest possible opportunity and otherwise take all steps possible to continue the Work without interruption and avoid or minimize any delay and disruption to the Project.  Specifically, and without limitation, Navillus agrees that it will move for authority to enter into this Completion Agreement within two (2) business days of the execution date of the Takeover Agreement.  In the event Navillus

fails to file a motion for authority to enter into this Completion Agreement within two (2) business days of the execution date of the Takeover Agreement, Surety shall have the right (but not the obligation) to terminate this Completion Agreement.

20.    All rights of the Surety and obligations of Navillus hereunder are in addition to, and not in lieu of, all rights of the Surety and obligations of Navillus in any Agreement of Indemnity that Navillus executed in favor of the Surety. All such Agreements of Indemnity, having been reaffirmed by Navillus in paragraph 1 above, survive this Completion Agreement without limitation or modification.

21.    Any notices or other formal communications given or made in connection with this Completion Agreement shall be deemed to have been properly given or made if sent via both e-mail and overnight mail to the following:

**FOR NAVILLUS:**

Navillus Tile, Inc. d/b/a Navillus Contracting
633 3rd Ave
New York, N.Y. 10017
Attn: Donal O'Sullivan
dosullivan@navillusinc.com

Cullen & Dykman, LLP
100 Quentin Roosevelt Blvd
Garden City, New York, 11743
Attn: C. Nathan Dee, Esq.
ndee@cullenanddykman.com

**FOR THE SURETY:**
Liberty Mutual Surety
2200 Renaissance Boulevard, Suite 400
King of Prussia, Pennsylvania 19406-2755
Attn: James D. Gibson/Michael Burkhardt
Jamesd.gibson@libertymutual.com
Michael.burkhardt@libertymutual.com

Chiesa Shahinaian & Giantomasi PC
One Boland Drive
West Orange, New Jersey 07052
Attn: Adam P. Friedman, Esq.
afriedman@csglaw.com.

Should a sender request confirmation of the recipient's receipt by e-mail of any notice, and should the recipient expressly confirm such receipt, then the additional delivery by overnight courier shall not be necessary. Surety and Navillus shall also provide a copy to the Obligees of any notice concerning Navillus's performance of the Work or any modification to this Completion Agreement, by sending a copy of such notice via both e-mail and first-class mail to the following:

**FOR ONE VANDERBILT OWNER LLC:**

Troutman Sanders LLP
875 Third Avenue
New York, New York
Attn: Aaron Abraham, Esq.
Aaron.Abraham@troutman.com

**FOR TISHMAN:**

Tishman Construction Corporation of New York
100 Park Avenue
New York, New York 10017
Attn: Judy Herman
Judy.Herman@aecom.com.

22.     This Completion Agreement is solely for the benefit of Navillus and the Surety. Navillus and the Surety do not intend by any provision of this Completion Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor do they intend to confer any benefit or enforceable rights under this Completion Agreement or otherwise upon anyone other than the Surety and Navillus. The Surety and Navillus acknowledge that nothing in this

Completion Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under its bonds.

23.        Neither this Completion Agreement nor any of the proceeds to be paid to Navillus hereunder may be assigned by Navillus without the prior written consent of the Surety, and any such assignment or attempted assignment shall be null and void absent such consent.

24.        Navillus acknowledges that there have been no oral, written, or other agreements of any kind made by the Surety as a condition precedent to or to induce its execution and delivery of this Completion Agreement.

25.        This Completion Agreement cannot be amended or altered in any way except in a writing signed by both the Surety and Navillus.

26.        This Completion Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same Completion Agreement. Facsimile, electronic, and/or images of signatures shall have the same force and effect as original signatures.

27.        This Completion Agreement shall be governed and controlled by the laws of the State of New York. Any disputes between Navillus and the Surety relative to this Completion Agreement shall be resolved or determined (a) pursuant to the laws of the State of New York in a court of competent jurisdiction irrespective of any conflict of laws principles or analysis, or (b) as otherwise may be provided in any Agreement of Indemnity.

28.        This Completion Agreement shall be binding upon the Parties and their respective successors and assigns.

29.        In the event a court of competent jurisdiction determines that one or more of the clauses of this Completion Agreement are unenforceable, such clause(s) shall be severed from

15

this Completion Agreement, and the balance of the Completion Agreement shall remain in full force and effect, provided that the fundamental terms and conditions of this Completion Agreement remain legal and enforceable.

30.    In the event a provision of this Completion Agreement is inconsistent with or contradicts the Contract, the terms of this Completion Agreement shall govern and control, except as stated in paragraph 17 above. Any capitalized term not defined in this Completion Agreement shall be ascribed the meaning set forth in the Contract.

31.    This Completion Agreement is the product of the Parties' joint drafting effort. As such, it shall be construed without regard to any presumption or other rule requiring construction against the drafter.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**IN WITNESS HEREOF,** the Parties have executed this Completion Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Completion Agreement on behalf of the respective parties.

**NAVILLUS TILE, INC.**                    **LIBERTY MUTUAL INSURANCE COMPANY**

By: _____            By: _____

**Exhibit A to Completion Agreement**

## Form of Bailment Agreement

## WAREHOUSEMAN/BAILEE RELEASE AND WAIVER AGREEMENT

THIS WAREHOUSEMAN/BAILEE RELEASE AND WAIVER AGREEMENT ("Agreement") is made effective as of the ___ day of _____, 2017, by [_____] (the "Warehouseman/Bailee") in favor of Tishman Construction Corporation of New York ("Tishman") and One Vanderbilt Owner LLC ("Owner").

## RECITALS

A.    Warehouseman/Bailee owns and operates a warehouse and/or storage facility located at [_____] (the "Premises").

B.    Liberty Mutual Insurance Company ("Surety"), Tishman or Owner have in the past and may in the future from time to time purchase, or provide the funding to Navillus Tile, Inc., d/b/a Navillus Contracting ("Contractor") to purchase, certain goods including, without limitation, existing and future inventory, merchandise, equipment, materials, machinery, parts, supplies, software and other personal property, and all plans, specifications and records relating thereto (collectively, the "Goods") to be used by Contractor in connection with a construction project known as "Superstructure Concrete – One Vanderbilt Avenue, New York, NY".

C.    Surety, Tishman, Owner or Contractor have in the past and may in the future from time to time deliver or cause to be delivered to the Warehouseman/Bailee certain of the Goods to be stored at the Premises.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Warehouseman/Bailee hereby agrees as follows:

## AGREEMENT

1.    The Warehouseman/Bailee hereby waives, releases, terminates and relinquishes to Tishman and Owner all right, title, interest and claim (if any) which the Warehouseman/Bailee has or may in the future have in, to or against any of the Goods at any time stored at the Premises, whether now owned or hereafter acquired by Surety, Tishman or Owner and/or purchased by Surety, Tishman or Owner and located at any time at the Premises.

2.    The Warehouseman/Bailee agrees that the Goods are bailed to the Warehouseman/Bailee solely for storage purposes and title to the Goods shall at all times remain in Tishman or Owner, respectively, and no other party shall at any time have any rights, title or interest in the Goods other than Tishman or Owner, respectively.    Neither the Warehouseman/Bailee nor the Contractor shall have any right, title or interest in the Goods and will not, by storing, processing or otherwise, acquire any right, title or interest therein.

3.      The Warehouseman/Bailee acknowledges that it has received notification of Tishman's or Owner's title in the Goods, and that it will be holding the Goods as bailee on behalf of Tishman or Owner, as appropriate.  The Warehouseman/Bailee has not received any notification from any entity other than Tishman or Owner claiming an interest in the Goods.

4.      To the extent that the Warehouseman/Bailee has any interest in the Goods whatsoever, the Warehouseman/Bailee waives, releases, and terminates any and all claims, liens, charges, interests and encumbrances which it now has or may at any time hereafter acquire (whether arising under applicable common law or statute, by contract, or otherwise) in, to, or against any of the Goods.  The Warehouseman/Bailee will not encumber, grant a security interest in, or dispose, sell or transfer any of the Goods.

5.      While the Goods are in the Warehouseman/Bailee's possession, the Warehouseman/Bailee will segregate and separate them from any of its or any other party's inventory or other goods on the Premises or in its possession, and will identify the Goods in a manner satisfactory to Tishman and Owner as the property of Tishman or Owner, as appropriate.

6.      The Goods shall be stored at the Premises with rent or other charges payable by Contractor in the amount and on the terms set forth on **Attachment 1** attached hereto.

7.      Tishman or Owner, or Contractor until such time as Tishman or Liberty provides notice to the Warehouseman/Bailee that its Completion Agreement with Contractor has been terminated (the "Termination Notice"), shall be entitled at any time, and from time to time, to immediate possession of the Goods and may enter upon the Premises and take possession of and remove the Goods. Notwithstanding the foregoing, the Warehouseman/Bailee agrees that, upon receipt of the Termiantion Notice, the Warehouseman/Bailee shall refuse to release the Goods to Contractor or to any other party other than Tishman or Owner or the party designated by Tishman or Owner in such written direction.  The Warehouseman/Bailee shall return the Goods to Tishman or Owner on demand by Tishman or Owner, and should the Warehouseman/Bailee fail to do so, the Warehouseman/Bailee agrees that Tishman's or Owner's remedy at law will be inadequate and Tishman or Owner shall be entitled to the issuance of an order in equity for specific performance for compliance by the Warehouseman/Bailee in accordance herewith.

8.      The Warehouseman/Bailee agrees that the Goods are and shall not be deemed a fixture or part of the real estate (regardless of any manner of affixation), but shall at all times be considered personal property of Tishman or Owner, respectively.

9.      Until the Goods are delivered to and accepted by Contractor, Tishman or Owner, the Warehouseman/Bailee shall bear the sole risk of loss, damage, deterioration or destruction of the Goods, and shall be responsible and indemnify Tishman and Owner against the same. The Warehouseman/Bailee will keep the goods insured against fire, theft, and other commercial hazards in such amount, on such terms and conditions, and with such companies as Tishman or Owner shall require. Tishman and Owner shall be made loss payees and at the request of Tishman or Owner, the Warehouseman/Bailee shall furnish Tishman or Owner with evidence of such insurance on demand.

10.     The Goods shall be stored at the Premises for as long as Tishman or Owner require and during such time the Goods shall be subject to this Agreement and so long as Tishman and Owner are not in material default under this Agreement (which material default shall continue uncured for thirty (30) days after written notice of material default from Warehouseman/Bailee), the Warehouseman/Bailee shall not terminate this Agreement and shall continue to be bound hereby.

11.     This Agreement shall be binding upon the Warehouseman/Bailee, its successors and assigns, and shall inure to the benefit of, and be enforceable by, Tishman and Owner and each of their successors, assigns, and designees.  The Warehouseman/Bailee agrees that it will notify its assignees of the existence of this Agreement.

12.     The Warehouseman/Bailee consents to the jurisdiction of the courts of the State of New York in any and all actions between the Warehouseman/Bailee, Tishman, Owner, and/or Contractor, and irrevocably agrees to service of process by certified mail, return receipt requested.

13.     This Agreement shall be governed by New York law.  If any provision hereof is adjudged illegal or invalid, the remainder shall remain in full force and effect.  No waiver of any right or remedy by Tishman or Owner shall be effective unless in writing.

14.     This Agreement shall be a continuing agreement and shall remain in full force and effect until terminated by Tishman or Owner in writing. This Agreement may not be amended or supplemented in any manner other than by a writing signed by the Warehouseman/Bailee, Tishman and Owner.

15.     All notices shall be given in writing, sent by certified mail, return receipt requested, if to the:

**FOR TISHMAN:**

Tishman Construction Corporation of New York
100 Park Avenue
New York, New York 10017
Attn:  Judy Herman

**FOR ONE VANDERBILT OWNER LLC:**

Troutman Sanders LLP
875 Third Avenue
New York, New York
Attn:  Aaron Abraham, Esq.

**FOR WAREHOUSEMAN/BAILEE:**

[]

Each such notice shall be deemed delivered upon receipt.


[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the day and year first above written.

**WAREHOUSEMAN/BAILEE**

[_____]

By:_____
   Name:
   Title:


Acknowledged and agreed to:

**CONTRACTOR**

Navillus Tile, Inc.

By:_____
   Name:
   Title:


**TISHMAN**

Tishman Construction Corporation of New York

By:_____
   Name:
   Title:


**OWNER**

One Vanderbilt Owner LLC

By:_____
   Name:
   Title:

Attachment 1
Rent

**<u>Exhibit B to Completion Agreement</u>**

## ASSIGNMENT AND ASSUMPTION OF CONTRACT

**WHEREAS**, Navillus Tile, Inc., d/b/a Navillus Contracting ("Assignor") entered into a _____ Contract with _____ ("Vendor") for _____ (the "Contract"), attached hereto as **Attachment 1**.

**WHEREAS**, Assignor wishes to assign the Contract to Tishman Construction Corporation of New York ("Assignee").

**KNOW ALL MEN BY THESE PRESENTS** that Assignor in consideration of ten ($10.00) Dollars and other good and valuable consideration to it in hand paid by Assignee, the receipt of which is hereby acknowledged, hereby assigns unto the Assignee, all of Assignor's right, title and interest in the Contract from and after the date of full execution of this Assignment and Assumption of Contract ("Assignment").

1.    Effective Date.  This Assignment shall be effective as of the date of the termination of the Completion Agreement (the "Effective Date")..

2.    Assumption of Contract.  Assignee hereby assumes, from and after the Effective Date, all of the terms, covenants, conditions and provisions of the Contract applicable to the Assignor as though Assignee were originally named therein as the Assignor, provided however that nothing contained herein shall, in any way, be deemed to relieve Assignor of any of its obligations, liabilities and responsibilities under the Contract prior to the Effective Date.

3.    Governing Law.  This Assignment shall be deemed to be an agreement made under and shall be governed by and construed in accordance with the laws of the State of New York.  The parties hereby irrevocably consent to the jurisdiction and venue of any state or federal court located within, or having jurisdiction over, the County of New York, State of New York, for any disputes pertaining to this Assignment, and agree that any actions relating to the Assignment shall be litigated in such courts, and the parties hereby waive any objection which they may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court.

4.    Waiver/Modification.  This Assignment may not be waived or modified except by a written instrument executed by the parties hereto.

5.    Power and Authority:  The persons executing and delivering this Assignment on behalf of the parties have the power and authority to execute and deliver this Assignment.

6.    Counterparts.  This Assignment may be executed in one or more counterparts each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.  Signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.  For the purposes hereof, an electronic, facsimile, or other non-original or copy of any counterpart hereto shall be deemed an original and binding counterpart against the party(ies) to be charged.

**IN WITNESS WHEREOF**, the parties have executed this Agreement and Assumption of Contract on the _____ day of _____, 201_.

**ASSIGNOR**:

**Navillus Tile, Inc., d/b/a Navillus Contracting**


By: _____
    _____


**ASSIGNEE**:

**Tishman Construction Corporation of New York**


By: _____
    _____

**Exhibit C to Completion Agreement**

**Form Bill of Sale**

**BILL OF SALE TO TISHMAN CONSTRUCTION CORPORATION OF NEW YORK**


**FROM**

**NAVILLUS TILE, INC., D/B/A NAVILLUS CONTRACTING**

**KNOW ALL MEN BY THESE PRESENTS THAT**

Navillus Tile, Inc., d/b/a Navillus Contracting (hereinafter called the "Seller"), for and in consideration of [Insert purchase price paid by Navillus] to date, and other good and valuable consideration to it in hand paid simultaneously herewith by Tishman Construction Corporation of New York, a Delaware Corporation, ("Buyer" or "Tishman"), receipt of which is hereby acknowledged, and further intending to be legally bound hereby, does hereby sell, transfer and assign to Buyer the goods, materials and/or equipment described in Schedule A hereto (hereinafter called the "Goods") and located on the premises described in that schedule, manufactured or in the process of manufacture for delivery to, or for use on or in connection with coomercial construction project known as One Vanderbilt Avenue (hereinafter called the "Project").  And in the event that any of the Goods are in process of manufacture, this Bill of Sale is expressly intended to sell, transfer and assign the same in their completed state, as well as in the form and state they possess at the time of the execution of this instrument.

TO HAVE AND TO HOLD all and singular the Goods for Buyer, its successors and assigns, to their own use and behoof forever.

And the said Seller does hereby covenant with Buyer that it is the lawful owner of Goods; that they are free from all liens and claims whatsoever; that it has good right to sell the same;

Seller acknowledges and agrees that it executes this Bill of Sale in furtherance of the Completion Agreement referenced in Schedule A hereto

This Bill of Sale and all matters arising in connection with this Bill of Sale shall be governed in all respects by the laws of the State of New York, without giving effect to principles of conflicts of law.  Any litigation arising out of or connected in any way with this Bill of Sale shall take place in a state or federal court of competent jurisdiction in the County of New York and State of New York.  There shall be no consolidation of actions or proceedings or joinder of issues that would result in the removal of the applicable action or proceeding from the court hereinabove provided.  The parties hereby waive trial by jury in any such action or proceeding.


*[Signatures Appear On The Following Page]*

IN WITNESS WHEREOF, the said Seller has hereunto set its hand and seal and otherwise duly executed and signed this instrument this ___ day of _____.


_____
Seller

_____
Signature

_____
Name of Authorized Signatory

_____
Official Title (Officer)

CORPORATE SEAL:

_____

FOR CORPORATION

STATE OF_____)

: ss:

COUNTY OF _____)

On the ___ day of _____ before me personally came _____, to me known, who being by me duly sworn, did depose and say:

That he resides in _____ that he is _____ (Officer) of _____ the Corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; and that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.


_____
NOTARY PUBLIC

## SCHEDULE A

All material, equipment or other items constituting or relating to the PERI Form System, including but not limited to, the material, equipment and related items to be supplied pursuant to Navillus PO's. Nos. _____