UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
NAVILLUS TILE, INC., DBA NAVILLUS                            :   Case No. 17-13162 (SHL)
CONTRACTING,                                                 :
                                                             :
                    Debtor.                                  :
                                                             :
-------------------------------------------------------------x

### DECLARATION OF EMILY YOUNG OF GARDEN CITY GROUP, LLC CERTIFYING THE METHODOLOGY FOR THE TABULATION OF VOTES AND RESULTS OF VOTING WITH RESPECT TO THE CONSENSUAL AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Emily Young, under penalty of perjury, declares pursuant to the provisions of 28 U.S.C. § 1746 as follows:

1.  I have personal knowledge of the facts set forth herein.

2.  I am an Assistant Director, Operations, with Garden City Group, LLC ("GCG").[1] GCG is a bankruptcy and class action settlement administration firm headquartered in Lake Success, New York. GCG was authorized by the Court to serve as the administrative advisor for Navillus Tile, Inc., DBA Navillus Contracting (the "Debtor") in the above-captioned chapter 11 case pursuant to the *Order Authorizing the Retention and Employment of Garden City Group, LLC as Administrative Advisor for the Debtor and Debtor in Possession Pursuant to 11 U.S.C. §§ 327(a) and 330, Nunc Pro Tunc to the Engagement Date* [Docket No. 191].[2] Pursuant to the retention Order, the Court authorized GCG to manage the solicitation and tabulation of votes on

---

[1] GCG was acquired by Epiq Class Action and Claims Solutions, Inc. on June 15, 2018.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Approval Order or the Plan (defined herein).

a chapter 11 plan filed by the Debtor, provide ballot reports to the Debtor, and generate an official ballot certification.

**Plan, Disclosure Statement, and Solicitation Procedures Order**

3. On August 25, 2018, the Debtor filed the *Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc., D/B/A Navillus Contracting Under Chapter 11 of the Bankruptcy Code* [Docket No. 603] (as may be modified, amended or supplemented, the "Plan") and accompanying *Amended Disclosure Statement with Respect to Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc., D/B/A Navillus Contracting Under Chapter 11 of the Bankruptcy Code* [Docket No. 602] (as may be modified, amended or supplemented, the "Disclosure Statement").

4. On August 29, 2018, the Court entered the *Order (I) Conditionally Approving Disclosure Statement; (II) Scheduling Combined Hearing; (III) Establishing a Voting Record Date; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; (V) Approving the Official Committee of Unsecured Creditors' Solicitation Letter in Support of Confirmation of the Plan; (VI) Approving the Form of Ballot and Establishing Procedures for Voting on the Plan; (VII) Approving the Form of Notice to Non-Voting Classes under the Plan; (VIII) Approving the Form of Notice of the Combined Hearing; (IX) Establishing Notice and Objection Procedures for Confirmation of the Plan; (X) Setting Related Deadlines; (XI) Authorizing the Filing of Omnibus Assumption Motion; and (XII) Allowing Union Parties Cure Claims For Voting Purposes* [Docket No. 607] (the "Approval Order").

5. The Approval Order established the specific procedures for GCG to use to solicit and tabulate votes on the Plan. The Solicitation Procedures Order also set August 29, 2018 (the "Voting Record Date") as the record date for purposes of determining which creditors and parties

in interest hold Claims or Interests that entitle them to receive solicitation materials and/or to vote on the Plan.

6. As further detailed herein, pursuant to the Approval Order, GCG solicited votes to accept or reject the Plan from creditors holding Claims in the following classes (the "Voting Classes"):

| Class | Description |
|---|---|
| 4 | Union Parties Cure Claims |
| 5 | General Unsecured Claims |

## Solicitation Mailing

**Solicitation Packages with Ballots**

7. On August 31, 2018, pursuant to the Approval Order, GCG caused true and correct copies of the following documents to be served by first class mail on Class 4 Union Parties Cure Claims:

- **Official Committee of Unsecured Creditors' Solicitation Letter in Support of Confirmation of the Plan** ("Committee Letter");

- **Notice of (I) Conditional Approval of Disclosure Statement; (II) Establishment of Record Date; (III) Approval of Procedures and Deadline for Voting on the Plan; and (IV) Hearing on Final Approval of Disclosure Statement and Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan** ("Combined Hearing Notice");

- **Disclosure Statement** (with all exhibits thereto including the Plan) ("Disclosure Statement Book");

- **Approval Order** (without exhibits); and

- [customized] **Class 4 Ballot for Accepting or Rejecting Chapter 11 Plan**, along with a postage prepaid envelope.

3

8. On August 31, 2018, pursuant to the Approval Order, GCG caused true and correct copies of the following documents to be served by first class mail on Class 5 General Unsecured Claims:

- **Committee Letter**;
- **Combined Hearing Notice**;
- **Disclosure Statement Book**;
- **Approval Order** (without exhibits); and
- [customized] **Class 5 Ballot for Accepting or Rejecting Chapter 11 Plan**, along with a postage prepaid envelope.

**Solicitation Packages without Ballots**

9. On August 31, 2018, pursuant to the Approval Order, GCG caused true and correct copies of the following documents to be served by first class mail on Class 1 Article 3A Claims, Class 2 Other Secured Claims, Class 3 Other Priority Claims and Class 6 Equity Interests:

- **Combined Hearing Notice**; and
- **Notice of Non-Voting Status**.

10. On August 31, pursuant to the Approval Order, GCG caused true and correct copies of the following documents to be served by first class mail on the Master Service List and Notice of Appearance Parties:[3]

- **Committee Letter**;
- **Combined Hearing Notice**;
- **Disclosure Statement Book**; and

---

[3] The Master Service List was established pursuant to the *Order Establishing Notice Procedures and a Master Service List* (docket 83).

4

- **Approval Order** (without exhibits).

11. On August 31, 2018, pursuant to the Approval Order, GCG caused a true and correct copy of the **Combined Hearing Notice** to be served by first class mail on Executory Contract and Lease Counterparties and on all other parties in the creditor matrix not otherwise included in the services described above.

### Posting Solicitation Documents on the Case Website

12. GCG posted the Plan, Disclosure Statement, and Approval Order to the case website (http://cases.gardencitygroup.com/nvs) maintained by GCG. GCG endeavored to respond to all requests for documents and information, including replacement Ballots, in a timely manner.

### Affidavit

13. On September 7, 2018, GCG filed an affidavit of service, [Docket No. 623], detailing its service of the solicitation materials on behalf of the Debtor in accordance with the Approval Order.

### Voting Deadline

14. The Approval Order required Creditors to submit their Ballots so that GCG actually received their Ballots by September 28, 2018 at 5:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"). The Approval Order prohibited Creditors from returning Ballots by facsimile, e-mail, or other electronic methods of transmission unless approved by the Debtor.

### Tabulation of Votes

15. Upon GCG's receipt of a Ballot, GCG personnel opened the envelope containing the Ballot and stamped it with the date and time received. GCG personnel then scanned the Ballot into a computer database reserved exclusively for the Debtor's case and assigned a sequential number to the Ballot (the "Sequence Number").

16.   To tabulate the Ballots, GCG reviewed the Ballots and recorded all pertinent information from each Ballot, including but not limited to the date of receipt, assigned Sequence Number, voting dollar amount, and acceptance or rejection of the Plan.

**Determination of Voting Amounts**

17.   In accordance with the Approval Order, GCG used the following hierarchy to determine the validity and amount at which to tabulate votes in Classes 4 and 5:

    a)   in the amount deemed Allowed under the Plan or an order of the Court;

    b)   if (a) did not apply, then in the liquidated and non-contingent amount set forth on the timely filed Proof of Claim;

    c)   if (a) and (b) did not apply, then in the liquidated, non-disputed and non-contingent amount set forth on the scheduled Claim.

18.   If a Proof of Claim is wholly-contingent and/or wholly unliquidated, such Claim was temporarily allowed for voting purposes in the amount of $1.00.

19.   If a filed Proof of Claim is partially liquidated and partially unliquidated, such Claim was allowed in the liquidated amount for voting purposes.

**Other Tabulation Procedures**

20.   Additionally, in accordance with the Solicitation Procedures Order, GCG tabulated Ballots according to the following voting procedures, conventions, and assumptions.

    a)   Creditors that possess only a contingent and/or unliquidated Scheduled Claim and failed to file a timely Proof of Claim were not entitled to vote;

    b)   If a Proof of Claim was amended by a later filed Proof of Claim, only the later filed Proof of Claim was entitled to Vote, regardless of whether the Debtor had objected to such earlier filed Claim;

    c)   A creditor was not entitled to vote its Claim to the extent such Claim duplicates or has been superseded by another Claim of such creditor; and

    d)   With regard to a Claim that was the subject of an objection filed at least twenty-five (25) days prior to the Voting Deadline, such Claim was provisionally allowed for voting purposes in the amount of $1.00 or the undisputed amount of

the Claim, whichever was greater, except to the extent and in the manner that (i) Navillus agreed that the Claim should be allowed for voting purposes in its objection to such Claim; or (ii) such Claim was allowed temporarily for voting purposes in accordance with Bankruptcy Rule 3018 pursuant to a motion filed at least fourteen (14) days prior to the Voting Deadline.

**Invalid Votes**

21. GCG did not count or otherwise consider votes meeting any of the following criteria and the Debtor did not waive any defect or irregularities:

   a) Any Ballot received after the Voting Deadline;

   b) Any unsigned Ballot;

   c) Any Ballot that was illegible or contained insufficient information to permit the identification of the Creditor;

   d) Any Ballot cast by a person or entity that does not hold a Claim in the Voting Class;

   e) Any Ballot GCG received by facsimile, email or other electronic transmission;

   f) Any Ballot that partially rejects and partially accepts the Plan;

   g) Duplicative Ballots cast simultaneously by a holder of Claim who voted inconsistently;

   h) Any Ballot that was properly completed, executed and timely returned to GCG that failed to indicate an acceptance or rejection or indicated both an acceptance and a rejection of the Plan; and

   i) Any Ballot that was superseded by a later filed valid Ballot received on or before the Voting Deadline.

22. GCG complied in all respects with the provisions of the Approval Order, including as to provisions thereof not explicitly set forth herein.

23. GCG is in possession of copies of the Ballots received, which are available for review during GCG's regular business hours at 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017.

## Tabulation Results

### Votes to Accept or Reject the Plan

24. The results of the tabulation of valid votes in Classes 4 and 5 are set forth below.

| CLASS | ACCEPT THE PLAN | | REJECT THE PLAN | |
|---|---|---|---|---|
| | Dollar Amount Voted / Percentage of Total Dollar Amount | Number of Votes / Percentage of Number of Votes | Dollar Amount Voted / Percentage of Total Dollar Amount | Number of Votes / Percentage of Number of Votes |
| Class 4 Union Parties Cure Claims | $170,520,187.25 / 100% | 13 / 100% | $0.00 / 0.00% | 0 / 0.00% |
| Class 5 General Unsecured Claims | $16,974,731.32 / 100% | 22 / 100% | $0.00 / 0.00% | 0 / 0.00% |

25. Exhibits A1 and A2 attached hereto set forth a detailed accounting of the aforesaid tabulations.

### Invalidated Ballots

26. Exhibit B attached hereto sets forth a detailed accounting of the invalid Ballots. In connection therewith, the following entry under "Reasons for Invalid Status" has the following meaning:

- "Did Not Vote" means the Creditor did not indicate an acceptance or rejection of the Plan on the Ballot.

### Curing Deficiencies

27. Pursuant to the Approval Order, neither GCG nor the Debtor was under any duty to provide notification to Creditors of defects or irregularities with respect to delivered Ballots.

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: October 3, 2018

/s/Emily Young
Emily Young
Assistant Director, Operations
Garden City Group, LLC

# EXHIBIT A-1

# CLASS 4

## Class 4 - Union Parties Cure Claims

| Ballot No. | Voting Party | Amount Accepting | Amount Rejecting |
|---|---|---|---|
| 26 | BUILDING MATERIAL TEAMSTERS LOCAL 282 | $321,484.02 | $0.00 |
| 16 | CEMENT & CONCRETE WORKERS DC & ITS | $28,429,697.00 | $0.00 |
| 22 | CEMENT AND CONCRETE WORKERS FUNDS | $23,263,098.23 | $0.00 |
| 21 | CEMENT MASONS LOCAL 780 | $3,176,583.67 | $0.00 |
| 13 | CEMENT MASONS LOCAL 780 BENEFIT FUNDS | $219,024.79 | $0.00 |
| 12 | CEMENT MASONS LOCAL 780 EMPLOYEE BENEFIT | $103,131.12 | $0.00 |
| 14 | CEMENT MASONS LOCAL 780 EMPLOYEE BENEFIT | $13,109.16 | $0.00 |
| 2 | LOCAL 282 FUNDS | $2,127,660.19 | $0.00 |
| 25 | LOCAL 780 FUNDS | $4,184,379.53 | $0.00 |
| 23 | METAL LATHERS LOCAL 46 FUNDS | $21,645,125.51 | $0.00 |
| 24 | METALLIC LATHERS LOCAL 46 | $17,099,844.48 | $0.00 |
| 18 | NYC DC OF CARPENTERS BENEFIT FUNDS | $30,706,431.55 | $0.00 |
| 28 | NYC DIST. COUNCIL OF CARPENTERS | $39,230,618.00 | $0.00 |
|  |  | **$170,520,187.25** | **$0.00** |

# EXHIBIT A-2

# CLASS 5

### Class 5 - General Unsecured Claims

| Ballot No. | Voting Party | Amount Accepting | Amount Rejecting |
|---|---|---|---|
| 1 | 633 3RD AVE PROPERTY OWNER LLC | $83,773.91 | $0.00 |
| 27 | ALYCIA BENJAMIN-PEEBLES | $90,000.00 | $0.00 |
| 29 | BESTWAY CARTING INC | $119,533.01 | $0.00 |
| 34 | BRICKLAYERS AND TROWEL TRADES INTL PF | $56,100.00 | $0.00 |
| 36 | BRICKLAYERS ANNUITY FUND | $180,000.00 | $0.00 |
| 33 | BRICKLAYERS INSURANCE AND WELFARE FUND | $277,500.00 | $0.00 |
| 35 | BRICKLAYERS PENSION FUND | $200,400.00 | $0.00 |
| 10 | COLIN MATHERS | $220,000.00 | $0.00 |
| 6 | DONAL O'SULLIVAN | $1.00 | $0.00 |
| 19 | GOLDBERG & CONNOLLY | $5,960.25 | $0.00 |
| 17 | J-BAR REINFORCEMENT, INC. | $456,147.25 | $0.00 |
| 32 | JONES DAY | $484,365.60 | $0.00 |
| 15 | LIBERTY MUTUAL INSURANCE COMPANY | $213,190.00 | $0.00 |
| 7 | PADRAIG NAUGHTON | $200,000.00 | $0.00 |
| 4 | PECKAR & ABRAMSON PC | $11,512.50 | $0.00 |
| 5 | PETER DOWNES | $300,000.00 | $0.00 |
| 8 | SEE THAT GIRL'S CLEANING | $540.00 | $0.00 |
| 30 | SIGNATURE BANK A NEW YORK BANKING CORPOR | $8,307,609.98 | $0.00 |
| 31 | SIGNATURE FINANCIAL LLC | $2,614,447.00 | $0.00 |
| 9 | THE MARINO ORGANIZATION INC. | $7,500.00 | $0.00 |
| 20 | TIME SQUARE CONSTRUCTION INC | $3,140,914.00 | $0.00 |
| 3 | WEEKS LERMAN | $5,236.82 | $0.00 |
|  |  | **$16,974,731.32** | **$0.00** |

# EXHIBIT B

# INVALID BALLOTS

**Invalid Ballots**

| Class | Ballot No. | Voting Party | Reason for Invalid Status | Ballot Amount | Vote |
|---|---|---|---|---|---|
| CL5 | 11 | BOIES SCHILLER FLEXNER LLP | Did Not Vote | $7,732.58 | N/A |