UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------x
                                              :

In re:                                       : Chapter 11
                                               :

NAVILLUS TILE, INC., DBA NAVILLUS CONTRACTING,   : Case No. 17-13162 (SHL)
                                               :
                                               :

                             Debtor.                     :
                                               :
------------------------------------------------------------------------------x

### ORDER CONFIRMING CONSENSUAL AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF NAVILLUS TILE, INC. D/B/A NAVILLUS CONTRACTING UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**WHEREAS**, Navillus Tile, Inc. d/b/a Navillus Contracting, the above-captioned debtor and debtor-in-possession ("Navillus" or the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 8, 2017 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or this "Court"); and

**WHEREAS**, Navillus filed with this Court the *Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting Under Chapter 11 of the Bankruptcy Code* dated August 24, 2018 (as may be amended, modified or supplemented, the "Plan" at Dkt. No. 679), annexed hereto as <u>Exhibit "A"</u>, the Plan Supplement (Dkt. No. 643) and Amended Plan Supplement (Dkt. No. 661), and an *Amended Disclosure Statement With Respect to Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting Under Chapter 11 of the Bankruptcy Code* dated August 24, 2018 (the "Disclosure Statement" at Dkt. No. 602); and

**WHEREAS**, following a hearing held before the Bankruptcy Court on August 27, 2018 (the "Conditional Approval Hearing") to conditionally approve the Disclosure Statement, by Order

dated August 29, 2018 (the "Conditional Approval Order" at Dkt. No. 607)[1], this Court, *inter alia*,

(a) conditionally approved the Disclosure Statement pursuant to section 105(d) of the Bankruptcy

Code, (b) scheduled a combined hearing on final approval of the Disclosure Statement and

confirmation of the Plan to occur on October 10, 2018 at 11:00 a.m. (the "Combined Hearing");

(c) established a record date for voting on the Plan, (d) approved the Solicitation Packages and

procedures for distribution thereof, (e) approved the form of ballot and established procedures for

voting on the Plan, (f) approved the Official Committee of Unsecured Creditors' Solicitation Letter

in support of confirmation of the Plan, (g) approved the form of notice to non-voting classes, (h)

approved the form of notice of the Combined Hearing and fixed October 1, 2018 at 5:00 p.m. as

the deadline to file objections to the adequacy of the Disclosure Statement or confirmation of the

Plan, (i) fixed September 28, 2018 at 5:00 p.m. as the deadline for receipt of Ballots to accept or

reject the Plan, and (j) authorized the filing of one or more omnibus motions to assume executory

contracts or unexpired leases; and

   **WHEREAS**, it appearing from the affidavit of service filed with this Bankruptcy Court on

September 7, 2018 (Dkt. No. 623) that the Solicitation Packages have been served in accordance

with the Conditional Approval Order; and

   **WHEREAS**, the *Declaration of Emily Young of Garden City Group, LLC Certifying the*

*Methodology for the Tabulation of Votes and Results of Voting With Respect to Consensual*

*Amended Chapter 11 Plan of Reorganization*, certified on October 1, 2018 (the "Ballot

Certification" at Dkt. No. 666), was filed attesting and certifying the method and results of the

tabulation of votes to accept or reject the Plan; and

   **WHEREAS**, Navillus filed: (i) *Memorandum of Law in Support of Confirmation of*

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Plan or the Conditional Approval Order.

*Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting Under Chapter 11 of the Bankruptcy Code* dated October 8, 2018 (the "Confirmation Brief" at Dkt. No. 677); (ii) the Declaration of Christopher K. Wu in Support of Confirmation of Plan (the "Wu Declaration" at Dkt. No. 671); and (iii) the *Amended* Declaration of William Fischer in Support of Confirmation of Plan (the "Fischer Declaration" at Dkt. No. 675); and

**WHEREAS**, the Combined Hearing was conducted on October 10, 2018, and the Ballot Certification, Wu Declaration and Fischer Declaration were admitted into evidence on the record at the Combined Hearing, and after hearing the arguments of counsel and of any entity objecting to the Plan and after presentation of any evidentiary testimony required; and upon the record of the Conditional Approval Hearing and of the Combined Hearing; and due deliberation having been had, and sufficient cause appearing therefor; and

**THIS COURT HAVING DETERMINED AND FOUND[2], AFTER NOTICE AND A HEARING, THAT:**

A.     <u>Jurisdiction</u>.  Pursuant to 28 U.S.C. §§ 157 and 1334, this Court has jurisdiction over the Chapter 11 Case and all contested matters and adversary proceedings therein or related thereto. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and this Court shall retain jurisdiction for all purposes under and in connection with the Plan, confirmation of the Plan and all disputes arising out of or

---

[2] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

relating to the confirmation and consummation of the Plan and under and in connection with all documents executed in furtherance of the Plan, including jurisdiction over the matters set forth in Article XI of the Plan.

B.      Notice and Service of Papers.  All persons, entities or governmental agencies entitled or required to receive notice have received due, proper and adequate notice of the Conditional Approval Hearing and the Combined Hearing.

C.      Plan Supplement.  The documents identified in the Plan Supplement were filed as required and were modified, amended and supplemented in accordance with the Plan.  Notice of such documents was good and proper in accordance with the Bankruptcy Code, Bankruptcy Rules and the Conditional Approval Order, and no other or further notice shall be required.

D.      Adequate Information.  Pursuant to section 1125(a) of the Bankruptcy Code, the Disclosure Statement contains "adequate information".

E.      Voting.  Pursuant to section 1126(b) of the Bankruptcy Code, the solicitation of votes to accept or reject the Plan was in in good faith and in compliance with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation, and such solicitation was conducted after disclosure of adequate information as defined in section 1125 of the Bankruptcy Code.

F.      Approval of Union Parties Settlement.  The settlement of the Union Parties Cure Claims, the District Court Decision and related appeal, and all pending litigation, claims objections and discovery between Navillus and the Union Parties as set forth in section 6.05 of the Plan is fair and equitable pursuant to section 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and all applicable law under Bankruptcy Rule 9019.

G.      Approval of Liberty Global Settlement.  The settlement with Liberty pursuant to

which Liberty has, among other things, consented to assumption of the Bonds and treatment of

any related cure amounts as a Class 5 General Unsecured Claim and agreed to provide Navillus

with Exit Financing to fund Distributions under the Plan as set forth in section 6.06 of the Plan is

fair and equitable pursuant to section 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 and all

applicable law under Bankruptcy Rule 9019.

H.    Plan Compliance with 11 U.S.C. § 1129.    All of the applicable requirements for

confirmation set forth section 1129(a) and (b) of the Bankruptcy Code have been satisfied with

respect to the Plan.

I.    Plan Compliance with Bankruptcy Code - 11 U.S.C.§ 1129(a)(1). The Plan

complies with the applicable provisions of chapter 11 of the Bankruptcy Code, and therefore

satisfies section 1129(a)(1) of the Bankruptcy Code.

1.    Proper Classification – 11 U.S.C. § 1122, 1123(a)(1).    Article II of the Plan

provides for the separate classification of Claims and Equity Interests into six (6) Classes, and the

Claims or Equity Interests in each such Class are substantially similar to the other Claims or Equity

Interests in each such Class.    Valid business, factual and legal reasons exist for classifying

separately the various Classes of Claims and Equity Interests under the Plan.    Accordingly, the

Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.    Identification of Unimpaired Classes – 11 U.S.C. § 1123(a)(2).    Articles II,

III and IV of the Plan state that unclassified Claims, Claims in Classes 1 (Article 3A Claims), 2

(Other Secured Claims), 3 (Other Priority Claims) and Equity Interests in Class 6 (Equity Interests)

are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

3.    Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).    Article II the

Plan states that Classes 4 (Union Parties Cure Claims) and 5 (General Unsecured Claims) of the

Plan are Impaired under the Plan, and Article IV of the Plan specifies the treatment for each such Class, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4.       Equal Treatment – 11 U.S.C. § 1123(a)(4).  Article IV of the Plan specifies the treatment of Claims and Equity Interests in each Class and provides for the same treatment by Navillus for each Claim or Equity Interest contained within each particular Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.       Implementation of the Plan – 11 U.S.C. § 1123(a)(5).  The Plan and the Plan Supplement provide adequate and proper means for the Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.  Among other things, Article VI of the Plan provides for the reorganization of Navillus pursuant to the terms of the Plan and the funding of Distributions required to be made under the Plan through one or more of: (a) Cash on hand, (b) the Exit Financing provided by Liberty, and (c) the New Value Contribution provided by DOS.  The New Value Contribution represents a new and substantial Cash infusion which is necessary to fund Distributions required to be made under the Plan.

6.       Nonvoting Equity Securities – 11 U.S.C. § 1123(a)(6).  Section 6.12 of the Plan contains a provision for modifying Navillus' corporate documents to include a provision prohibiting the issuance of nonvoting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

7.       Selection of Officers and Directors – 11 U.S.C. § 1123(a)(7).  Sections 6.09 and 6.10 of the Plan, as modified herein, provide that the officers and directors of Navillus immediately prior to the Petition Date shall continue to serve in their respective capacities, which selection is consistent with the interests of creditors and equity security holders and public policy.

The Plan, therefore, satisfies section 1123(a)(7) of the Bankruptcy Code.

8.    <u>Impairment of Claims and Equity Interests – 11 U.S.C. § 1123(b)(1)</u>. Article IV of the Plan describes the treatment for all Impaired and Unimpaired Classes of Claims and Equity Interests under the Plan as contemplated by section 1123(b)(1) of the Bankruptcy Code.

9.    <u>Executory Contracts and Unexpired Leases – 11 U.S.C. §1123(b)(2)</u>. Article VII of the Plan provides for the assumption and rejection of certain prepetition Executory Contracts and Unexpired Leases as authorized by section 1123(b)(2) of the Bankruptcy Code. Navillus has exercised sound business judgment in determining that it should assume or reject each of the Executory Contracts and Unexpired Leases to be assumed or rejected under the Plan. The assumption or rejection of each of the Executory Contracts and Unexpired Leases under the Plan shall be legal, valid and binding upon Reorganized Navillus and all non-debtor counterparties to such Executory Contracts and Unexpired Leases, as of the Effective Date, as if such assumption or rejection had been authorized and effectuated pursuant to a separate order of the Bankruptcy Court that was entered pursuant to section 365 of the Bankruptcy Code.

10.    <u>Settlement of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3)</u>. Article VI of the Plan provides for the compromise and settlement of the Union Parties Cure Claims and Liberty's Proof of Claim in accordance with applicable bankruptcy law including section 1123(b)(3) of the Bankruptcy Code.

11.    <u>Modification of Rights – 11 U.S.C. § 1123(b)(5)</u>. The Plan provides for the modification of the rights of holders of Allowed Claims in Classes 4 (Union Parties Cure Claims) and 5 (General Unsecured Claims) and leaves unaffected the rights of holders of Allowed Claims and Equity Interests in Class 1 (Article 3A Claims), Class 2 (Other Secured Claims), Class 3 (Other Priority Claims) and Class 6 (Equity Interests) in accordance with section 1123(b)(5) of the

Bankruptcy Code.

12.     Additional Plan Provisions/Releases – 11 U.S.C. § 1123(b)(6).   The

provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The release,

third party release, discharge, injunction and exculpation provisions set forth in Article XII of the

Plan, as modified, and implemented by this Confirmation Order are fair and equitable, given for

fair consideration and are in the best interests of Navillus and the Estate in this Chapter 11 Case.

Based on the record of this Chapter 11 Case, the representations of the parties, and the evidence

proffered, adduced and/or presented at the Combined Hearing, the Bankruptcy Court finds that the

releases, third party releases, discharges, injunctions and exculpations provided for in Article XII

of the Plan are appropriate, in accordance with all applicable law in the Second Circuit including

without limitation *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber

Net.*), 416 F.3d 136, 142 (2d Cir. 2005), and not inconsistent with the Bankruptcy Code.

J.     Debtor's Compliance With Bankruptcy Code – 11 U.S.C. § 1129(a)(2).  Navillus,

as the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

1.     Solicitation.  The solicitation of acceptances of the Plan was in good faith

and in compliance with the applicable provisions of the Bankruptcy Code and the Conditional

Approval Order, thereby satisfying section 1125 of the Bankruptcy Code.

2.     Ballot Tabulation.  The procedures by which the Ballots were distributed

and tabulated were fair, properly conducted and complied with the Conditional Approval Order,

thereby satisfying section 1126 of the Bankruptcy Code.

K.     Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3). The Plan has been proposed

in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the

Bankruptcy Code.  Navillus' good faith is evident from the facts set forth in the Disclosure

Statement and the record of the Combined Hearing and other proceedings held in this Chapter 11

Case.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of

the Estate and to effectuate a successful reorganization of Navillus' business.

L.    Payment for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4).    Any

payment made or to be made by Navillus for services or for costs and expenses incurred in

connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter

11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as

reasonable, thereby satisfying section 1129(a)(4) of the Plan.

M.    Directors, Officers, Insiders – 11 U.S.C. § 1129(a)(5). Navillus has complied with

section 1129(a)(5) of the Bankruptcy Code through the disclosures of the identity of the directors

and officers proposed to serve after confirmation of the Plan in sections 6.09 and 6.10 of the Plan,

as modified herein.   The continuance of DOS as President and Chief Executive Officer of

Reorganized Navillus on the same terms that were in place prior to the Petition Date is consistent

with the interests of creditors, equity security holders and public policy.

N.    No Rate Change Jurisdiction – 11 U.S.C. § 1129(a)(6).  The Plan does not provide

for any changes in any regulated rates and, therefore, section 1129(a)(6) of the Bankruptcy Code

is not applicable to the Chapter 11 Case.

O.    Best Interests of Creditors – 11 U.S.C. § 1129(a)(7).  The Plan satisfies section

1129(a)(7) of the Bankruptcy Code.  With respect to each Class designated by the Plan, each holder

of a Claim or Equity Interest in such Class has accepted the Plan, or will receive or retain under

the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date

9

of the Plan, that is not less than the amount such holder would receive or retain if Navillus was liquidated under chapter 7 of the Bankruptcy Code on such date.

P.    <u>Acceptance of the Plan – 11 U.S.C. § 1129(a)(8)</u>.  Classes 1 (Article 3A Claims), 2 (Other Secured Claims), 3 (Other Priority Claims) and 6 (Equity Interests) are Unimpaired under the Plan and are conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code.  Classes 4 (Union Parties Cure Claims) and 5 (General Unsecured Claims) are Impaired under the Plan and have unanimously voted to accept the Plan in accordance with the requirements of section 1126(c) of the Bankruptcy Code.  Section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to each class of Claims and Equity Interests.

Q.    <u>Treatment of Administrative and Priority Claims – 11 U.S.C. §1129(a)(9)</u>.  The treatment under the Plan of Claims of the type specified in section 507 of the Bankruptcy Code complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

R.    <u>Acceptance by Impaired Classes – 11 U.S.C. §1129(a)(10)</u>.  Class 4 (Union Parties Cure Claims) and Class 5 (General Unsecured Claims) are Impaired under the Plan and have voted to accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class, thus satisfying section 1129(a)(10) of the Bankruptcy Code.

S.    <u>Feasibility – 11 U.S.C. § 1129(a)(11)</u>.  The Disclosure Statement, Plan Supplement, Amended Plan Supplement, Wu Declaration, Fischer Declaration and all evidence proffered or adduced at the Combined Hearing establish that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of Navillus, and the Bankruptcy Court finds that the Plan is feasible, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

T.    <u>Payment of Fees – 11 U.S.C. § 1129(a)(12)</u>.  Sections 3.01 and 13.11 of the Plan

provide for the payment of all fees incurred pursuant to section 1930 of title 28 of the United States Code on or before the Effective Date and thereafter as may be required in compliance with section 1129(a)(12) of the Bankruptcy Code.

U.    Retiree Benefits – 11 U.S.C. § 1129(a)(13).  The assumption of certain collective bargaining agreements pursuant to Article VII of the Plan requires that Navillus continue payment of any retiree benefits for the duration of the period that Navillus is obligated under such agreements, and section 1129(a)(13) of the Bankruptcy Code is therefore satisfied.

V.    Inapplicable Provisions – 11 U.S.C. § 1129(a)(14) – (a)(16) Navillus is not required to pay a domestic support obligation, is not an individual, and no transfers of property are being made by a non-profit entity under the Plan, and therefore sections 1129(a)(14) – (a)(16) of the Bankruptcy Code, respectively, are inapplicable.

W.    Fair and Equitable; No Unfair Discrimination – 11 U.S.C. § 1129(b).  Section 1129(a)(8) of the Bankruptcy Code has been satisfied because each class of Claims or Equity Interests has accepted the Plan or is not Impaired under the Plan, and section 1129(b) of the Bankruptcy Code is therefore inapplicable.

X.    Only One Plan – 11 U.S.C. § 1129(c).  The Plan is the only plan filed in this Chapter 11 Case and, accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

Y.    Principal Purpose of Plan – 11 U.S.C. § 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Z.    Objections.  All Objections that have not been withdrawn are denied and overruled; provided; however, that the issues raised in the *Limited Objection of Hunter Roberts Construction*

*Group LLC to Consensual Amended Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus*

*Contracting Under Chapter 11 of the Bankruptcy Code* (the "Hunter Roberts Limited Objection"

at Dkt. No. 668) and the *Reply to the Hunter Roberts Limited Objection* (the "Reply to Hunter

Roberts Limited Objection" at Dkt. No. 676) are hereby reserved as reflected in the Court's bench

ruling at the Combined Hearing, and no party in interest shall be deemed to have waived its rights

to address the issues therein or otherwise be prejudiced by entry of this Confirmation Order.

**IT IS THEREFORE ORDERED THAT**:

1.      <u>Findings of Fact and Conclusions of Law</u>.  The findings set forth hereinabove are

hereby incorporated and shall be deemed to be an Order of this Court. This Court's oral findings

of fact and conclusions of law, if any, made at the Combined Hearing are further incorporated

herein by reference.

2.      <u>Final Approval of Disclosure Statement</u>.  The Disclosure Statement dated August

24, 2018 shall be, and hereby is, approved on a final basis as containing "adequate information"

pursuant to section 1125(a) of the Bankruptcy Code.

3.      <u>Confirmation of Plan</u>.  The Plan, annexed hereto as <u>Exhibit "A"</u>, as modified by

this Confirmation Order, including the Plan Supplement and Amended Plan Supplement, is hereby

approved and confirmed pursuant to section 1129 of the Bankruptcy Code.  Navillus is hereby

authorized to take all steps necessary to effectuate consummation of the Plan and the payments

and Distributions set forth therein, all in conformity with the terms of the Plan, as modified by this

Confirmation Order.

4.      <u>Disposition of Objections</u>.  All Objections that have not been withdrawn are denied

and overruled in their entirety; <u>provided</u>; <u>however</u>, that the issues raised in the Hunter Roberts

Limited Objection and the Reply to Hunter Roberts Limited Objection are hereby reserved as

reflected in the Court's bench ruling at the Combined Hearing, and no party in interest shall be deemed to have waived its rights to address the issues therein or otherwise be prejudiced by entry of this Confirmation Order.

5.    <u>Agreements and Plan Supplement</u>.    Entry of this Confirmation Order constitutes approval of (i) the Loan and Security Agreement to be entered into by and between Navillus and Liberty with respect to the Exit Financing; (ii) the Escrow Agreement dated as of September 28, 2018 and entered into by and among Navillus, DOS, Liberty, the Committee and Cullen and Dykman LLP, as escrow agent; and (iii) any other documents contained in the Plan Supplement, Amended Plan Supplement and any amendments, modifications, and supplements thereto, each of which shall be deemed adopted by Reorganized Navillus as of the Effective Date, and the execution, delivery and performance thereof by Reorganized Navillus is authorized.  Reorganized Navillus is authorized to consummate the Exit Financing without the need for any further corporate action.

6.    <u>Incorporation of Plan/Confirmation Order and Plan Control</u>.  The Plan is confirmed in its entirety and is hereby incorporated into this Confirmation Order by reference (subject to any provision incorporated by reference being governed by an express and contradictory provision herein).  The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of, or otherwise affect, the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Confirmation Order.  To the extent this Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, or any other agreement, instrument or document intended to implement the Plan or be executed in furtherance of the Plan, the Plan controls the Disclosure Statement and any such agreement,

13

instrument or document, and the Confirmation Order (and any later order of the Bankruptcy Court) controls the Plan.

7. **Professional Fee Claims. All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court and served on the notice parties listed in Interim Compensation Order, on or before the Professional Fee Claims Bar Date, unless otherwise ordered by the Bankruptcy Court. Any Person that fails to file such application with the Bankruptcy Court on or before the Professional Fee Claims Bar Date shall be forever barred from asserting such Professional Fee Claim against Navillus, Reorganized Navillus, the Estate, or its property, and the Holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Professional Fee Claim. To the extent necessary to give effect to the requirements of Section 3.02 of the Plan, entry of this Confirmation Order hereby amends and supersedes any previously entered order of the Bankruptcy Court regarding procedures for the payment of Professional Fee Claims.**

8. **Claims Relating to Rejected Pre-Petition Executory Contracts and Unexpired Leases. If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Claim, then such Claim must be filed with the Claims Agent and served upon counsel to Reorganized Navillus on or before the Rejection Damages Bar Date, and upon the failure of any Entity to file such Claim on or before such date, such Entity shall be forever barred from asserting a Claim on account of the rejection of such Executory Contract or Unexpired Lease, but shall nevertheless be bound by the provisions of the Plan. The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease; any other Claims held by a party to a rejected contract or lease not**

14

evidenced by a Proof of Claim filed by the applicable Bar Date shall be barred and unenforceable.  Nothing in Section 7.03 of the Plan will extend any prior Bar Date set by prior order of the Bankruptcy Court.

9.      **Administrative Claim Bar Date**. All requests for payment of Administrative Claims must be filed with the Bankruptcy Court, with copies to Reorganized Navillus' counsel, on or before the Administrative Claims Bar Date.  Such request for payment of an Administrative Claim shall include, at a minimum, (i) the name, address, telephone number and email address of the Holder of such Claim; (ii) the amount of such Claim; (iii) the basis for such Claim; and (iv) any supporting documentation to the extent such documentation would be required by Bankruptcy Rule 3001.  Notwithstanding the foregoing, no application seeking payment of an Administrative Claim need be filed with respect to a post-Petition Date liability paid or payable by Navillus in the ordinary course of business including, without limitation, any Union Ordinary Course CBA Claim.  Any Person that fails to file such request with the Bankruptcy Court on or before the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against Navillus, Reorganized Navillus, the Estate, or its property, and the Holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

10.     Fee Examiner Professional Fees.   The Fee Examiner and the Fee Examiner Professionals shall file final applications for compensation for services rendered or reimbursement of costs, expenses or other charges incurred by the Fee Examiner and the Fee Examiner Professionals on or before the date is thirty (30) days after the final hearing on Professional Fee Claims.   On the Effective Date, the Escrow Agent or the Distribution Agent shall segregate

sufficient funds to pay the estimated fees and expenses of the Fee Examiner and the Fee Examiner
Professionals upon approval by the Bankruptcy Court.

11.    <u>Approval of Union Parties Settlement</u>.  The Union Parties Settlement as set forth in
Section 6.05 of the Plan is hereby approved pursuant to section 1123 of the Bankruptcy Code,
Bankruptcy Rule 9019 and all applicable law under Bankruptcy Rule 9019.

12.    <u>Approval of Liberty Global Settlement</u>.  The Liberty Global Settlement as set forth
in Section 6.06 of the Plan is hereby approved.

13.    <u>Officers of Reorganized Navillus</u>.  The first sentence of Section 6.10 of the Plan is
hereby modified to provide that the officers of Navillus immediately prior to the Petition Date shall
serve as officers of Reorganized Navillus on and after the Effective Date.

14.    <u>Debtor Released Parties</u>.  The term "Debtor Released Parties" as set forth in Section
12.01(a) of the Plan is hereby modified to mean: (i) Navillus, (ii) Reorganized Navillus, (iii) the
Estate, (iv) each direct or indirect and actual or beneficial Holder of Equity Interests in Navillus,
including, without limitation, DOS, the Donal O'Sullivan Revocable Living Trust, Donal
O'Sullivan IDGT II, and any other trust settled by DOS, (v) TSC, (vi) HDK, and (vii) with respect
to the foregoing, each of their respective current and former officers and directors, managers,
members, trustees, beneficiaries, employees, agents, representatives, financial advisors,
professionals, accountants, attorneys, affiliates (including, without limitation, Kerry Leasing,
LLC, Manhattan Tool Repair, Inc., Structure Compliance Group, LLC, Navillus Group, LLC, E.
Fitzgerald Electric, Co., Inc., and all their employees, directors, officers, managers, and members),
relatives (including, without limitation, Kathleen O'Sullivan, Kevin O'Sullivan and Helen
O'Sullivan), and each of their predecessors, successors and assigns; <u>provided</u>; <u>however</u>, that the
Debtor Released Parties shall not include the aforementioned (i) beneficiaries, (ii) agents, (iii)

16

representatives, (iv) financial advisors, (v) professionals, (vi) accountants, (vii) attorneys, or (viii) affiliates of Kerry Leasing, LLC, Manhattan Tool Repair, Inc., Structure Compliance Group, LLC, Navillus Group, LLC, or E. Fitzgerald Electric, Co., Inc.[3]

15.    **Releases by the Debtor Released Parties**.  **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Released Parties, and any Person or Entity seeking to exercise the rights of Navillus' Estate, shall be deemed to forever release, waive, and discharge:**

i.    **each of the Union Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or in any way relating to (a) the District Court Decision and (b) any Proofs of Claim filed by the Union Parties against Navillus; and**

ii.    **each of the Liberty Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or  in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (f) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken,**

---

[3] To the extent a person or entity that receives a release under the Plan would be carved out under this proviso based on a position they hold or relationship they have with respect to one or more of Kerry Leasing, LLC, Manhattan Tool Repair, Inc., Structure Compliance Group, LLC, Navillus Group, LLC, or E. Fitzgerald Electric, Co., Inc. such carve-out is limited to their role in or relationship with such entity and they will not be carved out from the release in its entirety.

permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; and

iii.    each of the other Debtor Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or  in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (f) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.

Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Exit Financing, the Liberty Global Settlement and the Union Parties Settlement are not released.

16.    **Releases by the Union Released Parties**.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed:

i.    The Union Released Parties shall be deemed to forever release, waive, and discharge each of the Debtor Released Parties and the Liberty Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) the District Court Decision, (f) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (g) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement, the Plan, the District Court Decision, or the Proofs of Claim filed by the Union Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, including but not limited to any alter ego claims, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; **provided however**, that such release with respect to Navillus shall exclude any Union Ordinary Course CBA Claims.

19

ii.     **The Union Parties shall not cause any Person to bring, or assist any Person in developing or bringing, any claims or investigations against Navillus or DOS with respect to matters arising prior to the Effective Date, to the fullest extent permitted by law; <u>provided however</u>, that such release with respect to Navillus shall exclude any Union Ordinary Course CBA Claims.**

iii.    **The Union Released Parties shall be deemed to forever release, waive, and discharge each of the Debtor Released Parties, the Escrow Agent, the Distribution Agent, the Union Parties Cure Disbursing Agent and the Liberty Released Parties (the "<u>Allocation Release Beneficiaries</u>") from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Union Parties Settlement Allocation as provided in Section 8.04 of the Plan, or any failure to direct the Union Parties Cure Disbursing Agent to disburse the Distributions in accordance with such allocation (the "<u>Allocation Release</u>").**

**Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Union Parties Settlement and any Union Ordinary Course CBA Claims are not released.**

17.     **<u>Limited Release by Liberty</u>**.  **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Liberty shall be deemed to forever release, waive, and discharge Navillus, Reorganized Navillus, the Estate, and the Indemnitors from any and all claims and rights for and related to the specific post-petition costs and expenses that are the subject of the Allowed Liberty DIP Loan Claim in the amount in excess of three hundred thousand ($300,000) dollars.**

18.    **Releases by Holders of Claims and Equity Interests.**    As of the Effective

**Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each**

**Holder of a Claim against or Equity Interest in Navillus and Reorganized Navillus, excluding**

**the Debtor Released Parties, the Union Released Parties and Liberty, shall, to the fullest**

**extent permitted by law, be deemed to forever release, waive, and discharge each of the**

**Debtor Released Parties and Liberty Released Parties from any and all claims, obligations,**

**suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance**

**Actions), and  liabilities whatsoever in connection with or in any way relating to (a) Navillus,**

**(b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement**

**or the Plan, (e) the District Court Decision, (f) any agreement, understanding, contract,**

**instrument or other document which existed prior to the Effective Date relating in any way**

**to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement,**

**the Plan or the District Court Decision, and (g) any transaction, event, circumstance, action,**

**failure to act or occurrence of any kind or nature which occurred, existed, was taken,**

**permitted or begun at any time prior to the Effective Date relating in any way to Navillus,**

**the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement, the Plan**

**or the District Court Decision, whether liquidated or unliquidated, fixed or contingent,**

**matured or unmatured, known or unknown, foreseen or unforeseen, then existing or**

**thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act,**

**omission, transaction, event, or other occurrence taking place on or prior to the Effective**

**Date; provided, however, that nothing in Section 12.01(e) of the Plan shall operate as a**

**release, waiver or discharge of any Causes of Action or liabilities unknown to such Person as**

**of the Petition Date arising out of willful misconduct, gross negligence, fraud or criminal acts**

of any such Released Party as determined by a Final Order and any Union Ordinary Course CBA Claims.  Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Union Parties Settlement and any Union Ordinary Course CBA Claims are not released.

19.    **Discharge of Claims**.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.  The Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan.  This Confirmation Order shall be, as of the Effective Date, a judicial determination of discharge of all such Claims and other debts and liabilities against Navillus, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Navillus at any time, to the extent that such judgment relates to a discharged Claim.  Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Union Parties Settlement and any Union Ordinary Course CBA Claims are not discharged.

20.    **Injunction**.  Except as otherwise set forth herein, all Persons who have held, hold or may hold Claims, Causes of Action or Equity Interests and their successors and

22

assigns, and all other parties in interest, along with their respective present or former directors, officers, principals, employees, agents, professionals, representatives and affiliates shall be permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims, Causes of Action or Equity Interests against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties; (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of such Claims, Causes of Action or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties or against the property or interests in the property of Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of any such Claims, Causes of Action or Equity Interests, except as otherwise provided for in connection with the Exit Financing; (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distributions being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any Claim, Cause of Action, right or interest that has been extinguished, discharged, released, settled or exculpated pursuant to the Plan or the Confirmation Order.  Such injunction shall extend to all Persons protected by the discharge,

release and exculpation provisions of the Plan and the Confirmation Order, as well as to the successors of such Persons and to the respective property and interests in property of such Persons. Without limiting the effect of the foregoing provisions of Section 12.03 of the Plan upon any Person, by accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim or Equity Interest receiving a Distribution pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in Section 12.03 of the Plan. Without limiting the effect of the foregoing provisions of Section 12.03 of the Plan, the Union Released Parties shall be permanently enjoined, from and after the Effective Date, from commencing or continuing in any manner any action or proceeding of any kind with respect to any claims or actions released by the Allocation Release. In the event of a violation of such injunction, the Allocation Release Beneficiaries shall be entitled to injunctive relief and damages caused by such violation, including any costs incurred, including, but not limited to, reasonable attorneys' fees and disbursements, against the Union Party(ies) violating this injunction. Notwithstanding the foregoing, actions with respect to obligations under Article 3-A, the Plan (including without limitation the Exit Financing), the Union Parties Settlement and any Union Ordinary Course CBA Claims are not enjoined.

21.    **Exculpation.**    The Exculpated Parties who provided services to the Estate during this Chapter 11 Case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Estate, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the operation of Navillus during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (iv) the

Disclosure Statement or any contract, instrument, release or other agreement or document

entered into or any action taken or omitted to be taken during the administration of the

Chapter 11 Case or in connection with the Plan or Plan Supplement; or (v) any Distributions

made pursuant to the Plan.  Nothing in this section shall (i) be construed as a release of such

Person's fraud, gross negligence, malpractice or willful misconduct with respect to the

matters set forth in Section 12.04(b) of the Plan, or (ii) limit the liability of Navillus'

Professionals to their respective clients pursuant to DR 6-102 of the Code of Professional

Responsibility.  The Exculpated Parties are entitled to rely on, and act or refrain from acting

on, all information provided by other Exculpated Parties without any duty to investigate the

veracity or accuracy of such information.

22.    <u>Injunction Against Interference With Plan</u>.  Upon entry of this Confirmation Order,

all Holders of Claims and Equity Interests, and other parties in interest, along with their respective

present and former employees, agents, officers, directors, principals and affiliates shall be enjoined

from taking any actions to interfere with the implementation or consummation of the Plan.

23.    <u>Term of Injunctions or Stays</u>.   Unless otherwise provided herein or in the

Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections

105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding

any injunctions or stays contained in the Plan or this Confirmation Order), shall remain in full

force and effect until the Effective Date.

24.    <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Person or

Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any

heir, executor, administrator, personal representative, successor, or assign of such Person or Entity,

including, but not limited to, Reorganized Navillus and all other parties-in-interest in the Chapter

11 Case.

25.    <u>Effectuating Documents and Further Transactions</u>.    Upon entry of this Confirmation Order, the appropriate officers and directors of Reorganized Navillus and its counsel shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

26.    <u>Payment of Statutory Fees</u>.    All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Combined Hearing, shall be paid on or before the Effective Date.    All such fees that arise after the Effective Date shall be paid by Reorganized Navillus.    The obligation of Reorganized Navillus to pay quarterly fees to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Chapter 11 Case is closed.

27.    <u>Retention of Jurisdiction</u>.    This Court hereby retains jurisdiction for the purposes set forth in Article XI of the Plan, for such other purposes as may be necessary to aid in the confirmation, consummation and implementation of the Plan, and for any purpose for which this Court previously retained jurisdiction by any prior order of this Court.

28.    <u>Resolution with AIG</u>.    Nothing in the provisions of Article XI of the Plan, paragraph 21 of this Confirmation Order, or any other provision of the Plan or Confirmation Order, shall be construed to affect or otherwise limit the enforceability of any arbitration clause in the Insurance Policy Documents to which Navillus and National Union Fire Insurance Company of Pittsburg, Pa. and/or certain of its affiliates (collectively, "AIG") are a party.

29.    <u>Resolution With Signature</u>.    Notwithstanding anything to the contrary in Section 6.17 of the Plan or otherwise, Navillus hereby reaffirms and acknowledges its obligations under

26

the following documents, each of which shall not be cancelled pursuant to the Plan and shall continue to be effective as against Reorganized Navillus: (i) that certain Continuing Guaranty, dated June 12, 2014,  executed by Navillus and delivered to Signature Financial LLC ("Signature Financial") in connection with certain obligations of Kerry Leasing LLC; (ii) that certain Cross-Collateral and Cross-Default Agreement, dated June 16, 2014, executed by Navillus and delivered to Signature Financial in connection with certain obligations of Kerry Leasing LLC; and (iii) that certain guaranty, dated August 13, 2014, executed by Navillus and delivered to Signature Bank, N.A. in connection with certain obligations of 633 3rd Avenue Property Owner LLC.

Dated: October 11, 2018
　　　 New York, New York

　　　　　　　　　　　　　　　　　 _/s/ Sean H. Lane_
　　　　　　　　　　　　　　　　　 THE HONORABLE SEAN H. LANE
　　　　　　　　　　　　　　　　　 UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
NAVILLUS TILE, INC., DBA NAVILLUS         :   Case No. 17-13162 (SHL)
CONTRACTING                               :
                                          :
                    Debtor.               :
                                          :
-----------------------------------------------------------------x

**CONSENSUAL AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF
NAVILLUS TILE, INC. D/B/A NAVILLUS CONTRACTING
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**Dated as of August 24, 2018**

CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Counsel for Debtor
and Debtor in Possession

# TABLE OF CONTENTS

Article I        DEFINED TERMS AND RULES OF INTERPRETATION.............................. 2
    Section 1.01.    Defined Terms................................................................................ 2
    Section 1.02.    Rules of Construction................................................................... 13
    Section 1.03.    Plan Supplement........................................................................... 13

Article II       CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ....................... 13
    Section 2.01.    Introduction ................................................................................. 13
    Section 2.02.    Classes......................................................................................... 14
    Section 2.03.    General Rules of Classification.................................................... 14

Article III      TREATMENT OF UNCLASSIFIED CLAIMS........................................... 14
    Section 3.01.    Administrative Claims .................................................................. 14
    Section 3.02.    Professional Fee Claims .............................................................. 15
    Section 3.03.    Priority Tax Claims ...................................................................... 16
    Section 3.04.    Liberty DIP Loan Claim............................................................... 16

Article IV       TREATMENT OF CLAIMS AND EQUITY INTERESTS IN NAVILLUS ..... 16
    Section 4.01.    Class 1 – Article 3A Claims......................................................... 16
    Section 4.02.    Class 2 – Other Secured Claims................................................... 17
    Section 4.03.    Class 3 – Other Priority Claims ................................................... 17
    Section 4.04.    Class 4 – Union Parties Cure Claims ........................................... 18
    Section 4.05.    Class 5 – General Unsecured Claims ........................................... 18
    Section 4.06.    Class 6 –Equity Interests .............................................................. 18
    Section 4.07.    Reservation of Rights Regarding Claims ...................................... 19

Article V        ACCEPTANCE OR REJECTION OF THE PLAN ........................................ 19
    Section 5.01.    Voting of Claims .......................................................................... 19
    Section 5.02.    Acceptance by a Voting Class....................................................... 19
    Section 5.03.    Presumed Acceptances or Rejections by Certain Classes............ 19
    Section 5.04.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............ 19
    Section 5.05.    Elimination of Vacant Classes ..................................................... 20

Article VI       MEANS FOR IMPLEMENTATION OF THE PLAN...................................... 20
    Section 6.01.    Reorganization of Navillus ........................................................... 20
    Section 6.03.    Exit Financing .............................................................................. 21
    Section 6.04.    New Value Contribution ............................................................... 21
    Section 6.05.    Union Parties Settlement............................................................... 21
    Section 6.06.    Liberty Global Settlement............................................................. 22
    Section 6.07.    General Corporate Actions........................................................... 23
    Section 6.08.    Continued Corporate Existence.................................................... 23
    Section 6.09.    Board of Directors of Reorganized Navillus................................. 23
    Section 6.10.    Officers of Reorganized Navillus................................................. 23
    Section 6.11.    Senior Management Emergence Bonus Program .......................... 23
    Section 6.12.    Certificate of Incorporation and Bylaws ...................................... 23

Section 6.13.    Indemnification Obligations..................................................................... 24
Section 6.14.    Preservation of Causes of Action ............................................................ 24
Section 6.15.    Effectuating Documents; Further Transactions ........................................ 24
Section 6.16.    Exemption from Certain Transfer Taxes................................................... 25
Section 6.17.    Cancellation of Agreements ..................................................................... 25
Section 6.18.    Transactions on Business Days ................................................................ 25
Section 6.19.    Compromise and Settlement Under the Plan ........................................... 25

Article VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES... 26
Section 7.01.    General Assumption of Executory Contracts and Unexpired
                 Leases ..................................................................................................... 26
Section 7.02.    Payment of Cure Amounts Relating to Assumption of Executory
                 Contracts and Unexpired Leases ............................................................. 27
Section 7.03.    Rejection Damages Bar Date ................................................................... 28
Section 7.04.    Postpetition Contracts and Leases............................................................ 28
Section 7.05.    Compensation and Benefit Programs........................................................ 28
Section 7.06.    Special Provisions Regarding Insured Claims .......................................... 29
Section 7.07.    Continuing Obligations Owed to Navillus ................................................ 30

Article VIII      PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 30
Section 8.01.    Distributions on the Effective Date.......................................................... 30
Section 8.02.    Distributions After the Effective Date ..................................................... 30
Section 8.03.    Interest on Claims .................................................................................... 31
Section 8.04.    Union Parties Settlement Allocation ........................................................ 31
Section 8.05.    Distribution Agent.................................................................................... 31
Section 8.06.    Claims Filed After Bar Date .................................................................... 31
Section 8.07.    Transmittal of Distributions and Notices ................................................. 32
Section 8.08.    Unclaimed Property ................................................................................. 32
Section 8.09.    Withholding Taxes and Expenses of Distribution .................................... 32
Section 8.10.    Fractional Distributions............................................................................ 33
Section 8.11.    *De Minimis* Distributions ....................................................................... 33
Section 8.12.    Setoffs and Recoupments ........................................................................ 33
Section 8.13.    Pre-Payment ............................................................................................ 34
Section 8.14.    No Distribution in Excess of Allowed Amounts....................................... 34
Section 8.15.    Disposition of Excess Funds .................................................................... 34

Article IX        PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
                  UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT
                  THERETO ............................................................................................... 34
Section 9.01.    Prosecution of Objections to Claims........................................................ 34
Section 9.02.    Estimation of Claims................................................................................ 35
Section 9.03.    Resolution of Disputed Insured Claims ................................................... 35
Section 9.04.    No Distribution Pending Allowance ......................................................... 36
Section 9.05.    Distributions on Account of Disputed Claims Once They are
                 Allowed ................................................................................................... 36
Section 9.06.    Reserves for Plan Distributions................................................................ 37

Article X         CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................. 37
    Section 10.01.  Conditions Precedent to Confirmation. ........................................................ 37
    Section 10.02.  Conditions Precedent to the Effective Date ................................................. 37
    Section 10.03.  Waiver of Conditions to Occurrence of Effective Date ................................ 38

Article XI        RETENTION OF JURISDICTION .................................................................. 39
    Section 11.01.  Scope of Retention of Jurisdiction .............................................................. 39
    Section 11.02.  Failure of the Bankruptcy Court to Exercise Jurisdiction ............................ 41

Article XII       RELEASES, DISCHARGE, INJUNCTION AND EXCULPATION ................ 41
    Section 12.01.  Releases and Related Matters .................................................................... 41
    Section 12.02.  Discharge of Claims .................................................................................. 44
    Section 12.03.  Injunction .................................................................................................. 45
    Section 12.04.  Exculpation and Limitations of Liability ...................................................... 46

Article XIII      MISCELLANEOUS PROVISIONS ................................................................ 46
    Section 13.01.  Modifications and Amendments ................................................................. 46
    Section 13.02.  Severability of Plan Provisions .................................................................. 47
    Section 13.03.  Successors and Assigns and Binding Effect ............................................... 47
    Section 13.04.  Term of Injunctions or Stays ..................................................................... 47
    Section 13.05.  Injunction Against Interference With Plan ................................................... 48
    Section 13.06.  Revocation, Withdrawal, or Non-Consummation ......................................... 48
    Section 13.07.  Notices ...................................................................................................... 48
    Section 13.08.  Governing Law ........................................................................................... 49
    Section 13.09.  Fee Examiner Professional Fees ................................................................ 49
    Section 13.10.  Post-Effective Date Professional Fees ........................................................ 49
    Section 13.11.  Payment of Statutory Fees ........................................................................ 49
    Section 13.12.  Post-Confirmation Date Service List - Persons Entitled to Notice ............... 50
    Section 13.13.  Notice of Entry of Confirmation Order ........................................................ 50
    Section 13.14.  Post-Confirmation Reporting ..................................................................... 50
    Section 13.15.  Confirmation Order and Plan Control ......................................................... 50
    Section 13.16.  Dissolution of Committee ........................................................................... 50
    Section 13.17.  Extension of Dates; Consent ..................................................................... 51
    Section 13.18.  Closing of Chapter 11 Case ....................................................................... 51
    Section 13.19.  No Admission ............................................................................................ 51

# INTRODUCTION

Navillus Tile, Inc. d/b/a Navillus Contracting, as debtor and debtor-in-possession ("Navillus" or the "Debtor"), hereby proposes this Consensual Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to section 1121 of title 11 of the United States Code for the resolution of the outstanding Claims against and Equity Interests in Navillus.

Reference is made to the Disclosure Statement for a discussion of (i) Navillus' history, business, the administration of the Chapter 11 Case, results of operations, and projections for future operations, (ii) a summary of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.

Capitalized terms herein shall have the meanings set forth in Article I hereof. Navillus is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, and this Plan is being proposed by Navillus with the support of the Committee, the Union Parties and Liberty.

# SUMMARY OF THE PLAN

This Plan is a plan of reorganization that provides for the reorganization of Navillus as a going concern with the support of Liberty for future operations. The Plan will be funded by one or more of the following sources: Cash on hand, the Exit Facility, and the New Value Contribution.[1] The Plan divides Holders of Claims against and Equity Interests in Navillus into six (6) separate Classes based on the nature of their legal rights, two (2) of which are Impaired and four (4) of which are Unimpaired. The Plan also provides for Distributions to Holders of Claims in four (4) unclassified categories comprised of Administrative Claims, Professional Fee Claims, Priority Tax Claims and the Liberty DIP Loan Claim. Distributions to holders of Allowed Claims and Equity Interests will be made on or as soon as practicable after the Effective Date, and Distributions on account of Disputed Claims will be held in a Distribution Reserve until such Disputed Claims are resolved.

**ALL HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN NAVILLUS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, NAVILLUS RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

---

[1] To the extent the Plan fails to become effective due to the failure of the occurrence of the conditions to the Effective Date set forth in Section 10.2 of this Plan, Navillus reserves the right to seek to fund Distributions through the proceeds of the liquidation of assets, either through (x) a sale of substantially all of its assets pursuant to section 363 of the Bankruptcy Code or (y) the wind-down of its construction operations and orderly liquidation of assets, and the Committee reserves all rights regarding same.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

**Section 1.01.    Defined Terms.**  Unless otherwise provided in this Plan, all terms used herein have the meanings assigned to such terms in the Bankruptcy Code.  For the purposes of this Plan, the following terms have the meanings set forth below:

1.    "**ADR Procedures**" has the meaning ascribed in section 9.03 of this Plan.

2.    "**Administrative Claim**" means a Claim (other than a Professional Fee Claim or the fees and expenses of the Fee Examiner and the Fee Examiner Professionals) for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without express or implied limitation: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Navillus; (b) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by Navillus in the ordinary course of its business; and (c) any fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  For the avoidance of doubt, Article 3A Claims shall not be considered Administrative Claims under this Plan.

3.    "**Administrative Claims Bar Date**" means that date which is thirty (30) days after the Confirmation Date and will be the deadline for filing a request for payment of an Administrative Claim, unless otherwise ordered by the Bankruptcy Court.

4.    "**Affiliate**" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

5.    "**Allocation Release**" has the meaning set forth in Section 12.01(c)(iii) of this Plan.

6.    "**Allocation Release Beneficiaries**" has the meaning set forth in Section 12.01(c)(iii) of this Plan.

7.    "**Allowed**" means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and not Disputed or contingent and for which no contrary Proof of Claim has been filed (or as to which the applicable Proof of Claim has been withdrawn or Disallowed); (b) any timely filed, liquidated, non-contingent Claim or Equity Interest; (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in (a), (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; and (d) any Claim or Equity Interest allowed under or pursuant to the terms of the

2

Plan; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

8.      **"Article 3A"** means Article 3A of the New York Lien Law.

9.      **"Article 3A Claim"** means any Claim with a right to payment from Navillus or the Estate which is protected by the trust fund established in favor of the claimant under Article 3A.

10.      **"Assumption and Cure Schedule"** has the meaning ascribed in Section 7.01(d) of this Plan.

11.      **"Available Cash"** means the actual aggregate sum of Cash in the possession, custody or control of Navillus' Estate for distribution to Holders of Allowed Claims against the Estate, less the Minimum Working Capital and any Cash held in the Distribution Reserve.

12.      **"Avoidance Actions"** means any and all Causes of Action which a trustee, a debtor-in-possession, the Estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law (whether or not litigation is commenced to prosecute such Causes of Action).

13.      "**Ballot**" means any ballot distributed with the Disclosure Statement for purposes of voting to accept or reject the Plan.

14.      "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Case.

15.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or such other United States court as may have jurisdiction over the Chapter 11 Case or any aspect thereof.

16.      "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

17.      "**Bar Date**" means February 14, 2018, the date set by the Bankruptcy Court as the last day for filing Proofs of Claim against Navillus in the Chapter 11 Case, and May 8, 2018, the deadline for governmental units to file Proofs of Claim.

18.    "**Bonds**" means the payment and performance bonds issued by Liberty as set forth on Exhibit A to the DIP Financing Agreement.

19.    "**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

20.    "**Cash**" means cash and cash equivalents, including, without express or implied limitation, bank deposits, checks and other similar items.

21.    "**Causes of Action**" means any and all actions, causes of action, Avoidance Actions, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date; provided, however, that "Causes of Action" will not include causes of action with respect to any claim that has been released or waived by Navillus through the Plan or a Final Order of the Bankruptcy Court.

22.    "**Chapter 11 Case**" means the chapter 11 case of Navillus pending before the Bankruptcy Court, styled *In re Navillus Tile, Inc. dba Navillus Contracting*, Case No. 17-13162.

23.    "**Claim**" means any "claim" against Navillus, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

24.    "**Claims Agent**" means Garden City Group, LLC, which was retained as Navillus' claims and noticing agent in this Chapter 11 Case pursuant to an Order of the Bankruptcy Court dated January 16, 2018.

25.    "**Claims Objection Bar Date**" means the date that is one hundred and twenty (120) days after the Effective Date or such later date as may be extended by order of the Bankruptcy Court.

26.    "**Class**" means a category of Holders of Claims or Equity Interests in Navillus pursuant to section 1122(a) of the Bankruptcy Code, as described in Articles II and III of the Plan.

27.    "**Combined Hearing**" means the hearing held by the Bankruptcy Court to consider final approval of the Disclosure Statement and confirmation of the Plan pursuant to, among others, sections 1125 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

28.    "**Committee**" means the Official Committee of Unsecured Creditors of Navillus appointed by the U.S. Trustee on or around November 28, 2017 pursuant to section 1102(a) of the Bankruptcy Code.

29.    "**Conditional Approval Order**" means the order of the Bankruptcy Court conditionally approving the Disclosure Statement pursuant to, among others, section 1125 of the Bankruptcy Code.

30.    "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

31.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

32.    "**Contingent Claim**" means a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

33.    "**Debtor**" has the meaning ascribed to it in the Introduction to this Plan.

34.    "**Debtor Released Parties**" has the meaning ascribed to it in Section 12.01(a)(i) of this Plan.

35.    "**Deposit**" means the good faith deposit towards confirmation of the Plan in an amount of not less than two million five hundred thousand ($2,500,000) dollars to be posted by Navillus and/or DOS within thirty (30) Business Days after execution of the Union Parties Settlement and held in escrow by Navillus' bankruptcy counsel, unless otherwise agreed to in writing by Navillus' bankruptcy counsel and Committee counsel.

36.    "**DIP Financing Agreement**" means the financing agreement (together with all schedules and exhibits thereto), by and among Navillus, Donal O'Sullivan, individually, and Kathleen O'Sullivan, individually, as borrowers and Liberty, as lender, as amended, restated, supplemented or otherwise modified from time to time.

37.    "**DIP Documents**" means the DIP Financing Agreement and all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith as amended, restated, supplemented or otherwise modified from time to time.

38.    "**DIP Obligations**" means all of the obligations set forth in the DIP Financing Agreement and the DIP Order.

39.    "**DIP Order**" means the *Final Order Pursuant To 11 U.S.C. §§ 105(a), 362, 363, and 364 of the Bankruptcy Code (I) Authorizing Post-Petition Secured Financing; (II) Granting Security Interests and Superpriority Claims; (III) Authorizing Use of Cash Collateral; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)*, entered on December 21, 2017 (Dkt. No. 156).

40.     "**Disallowed**" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest or portion thereof that (i) has been disallowed pursuant to this Plan or by a Final Order of the Bankruptcy Court; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a Proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no Proof of Claim has been filed or deemed filed by the Bar Date.

41.     "**Disclosure Statement**" means the disclosure statement that relates to this Plan and has been conditionally approved by the Conditional Approval Order, as such disclosure statement may be revised, amended, modified or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

42.     "**Disputed Claim**" means (a) if no Proof of Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim that is listed on Navillus' Schedules as other than disputed, contingent or unliquidated, but as to which Navillus or Reorganized Navillus or, prior to the Confirmation Date, any other party in interest, has filed an objection by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on Navillus' Schedules as disputed, contingent or unliquidated; or (b) if a Proof of Claim or request for payment of an Administrative Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law, a Claim for which an objection has been filed by Navillus or Reorganized Navillus or, prior to the Confirmation Date, any other party-in-interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

43.     "**Distribution**" means any distribution pursuant to the Plan to the Holders of Allowed Claims against or Equity Interests in Navillus.

44.     "**Distribution Address**" means the address set forth in the relevant Proof of Claim.  If no Proof of Claim is filed in respect to a particular Claim, such defined term means the address set forth in Navillus' Schedules.

45.     "**Distribution Agent**" means Reorganized Navillus or any Person or Persons designated by Navillus or Reorganized Navillus, in its discretion, to serve as distribution agent under the Plan with respect to Distributions to Holders in particular Classes of Claims under Articles VIII and IX hereof.

46.     "**Distribution Date**" means a date on which a Distribution is made to Holders of Allowed Claims and Equity Interests entitled thereto.

47.     "**Distribution Reserve**" means the reserve created pursuant to Section 9.06 of this Plan to hold property for Distribution to Holders of Disputed Claims pending resolution of such Disputed Claims.

48.     "**District Court**" means the United States District Court for the Southern District of New York.

49.    "**District Court Decision**" means the Findings of Fact and Conclusions of Law and related judgment in the sum of $76,222,733.32 as to Navillus entered by the District Court on September 22, 2017 in the consolidated action styled as *Moore v. Navillus Tile Inc., DBA Navillus Contracting, Advanced Construction Solutions LLC, DBA ACS-NY LLC, Times Square Construction, HDK Construction*, Case No. 14-08326.

50.    "**DOS**" means Donal O'Sullivan.

51.    "**Effective Date**" means the first Business Day on or after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions precedent to the effectiveness of the Plan set forth in Section 10.02 of the Plan have been satisfied or expressly waived, by Navillus, with the Committee's consent in accordance with Section 10.03 of the Plan.

52.    "**Entity**" means a Person, estate, trust, governmental unit, and the U.S. Trustee, within the meaning of Bankruptcy Code section 101(15).

53.    "**Equity Interests**" means shares of common stock, preferred stock, other forms of ownership interest, or any other equity security (as defined in section 101(16) of the Bankruptcy Code) in Navillus that was in existence immediately before the Petition Date.

54.    "**Escrow Agent**" means Cullen and Dykman LLP, as escrow agent for Navillus, the Committee, DOS and Liberty and engaged pursuant to an escrow agreement that shall be included in the Plan Supplement.

55.    "**Estate**" means the estate of Navillus in the Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code.

56.    "**Exculpated Parties**" has the meaning ascribed in Section 12.04(a) of this Plan.

57.    "**Exit Financing**" means the (i) term loan in a principal amount of up to twenty five million ($25,000,000) dollars with Liberty as lender to fund payments under the Plan and (ii) revolving credit facility in a principal amount of up to fifteen million ($15,000,000) dollars with Liberty as lender to provide liquidity to Reorganized Navillus on or after the Effective Date.

58.    "**Executory Contract**" means a contract to which Navillus is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.    "**Fee Examiner**" shall mean Diana G. Adams, Esq. in her capacity as fee examiner to the Estate pursuant to the *Stipulation and Order Appointing a Fee Examiner and Related Relief* (Dkt. No. 416) and *Notice of Appointment of Fee Examiner* (Dkt. No. 419).

60.    "**Fee Examiner Professionals**" shall mean Lori Lapin Jones PLLC, retained as counsel to the Fee Examiner (Dkt. No. 514) and National Creditor Recovery Services, LLC, retained as consultant to the Fee Examiner (Dkt. No. 522).

61.    "**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated,

stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, reargument, remand or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument, remand or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument, remand or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument, remand or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

62.    "**Final Vacatur Order**" means any Order entered by the District Court vacating the District Court Decision in its entirety.

63.    "**General Unsecured Claim**" means any Unsecured Claim against Navillus that is not an Administrative Claim, Professional Fee Claim,  Priority Tax Claim, Liberty DIP Loan Claim, Article 3A Claim, Other Secured Claim, Other Priority Claim, or Union Parties Cure Claim.

64.    "**HDK**" means HDK Construction, LLC.

65.    "**Holder**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

66.    "**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

67.    "**Indemnitors**" means, *inter alia*, Navillus, DOS, individually, Kathleen O'Sullivan, individually, E. Fitzgerald Electric Co., Inc., Kerry Leasing, LLC, and Manhattan Tool Repair, Inc., each as signatories to the Indemnity Agreements.

68.    "**Indemnity Agreements**" means the General Agreements of Indemnity executed by the Indemnitors in favor of Liberty (and any affiliate of Liberty) on or around October 24, 1995, December 12, 2006, March 15, 2007 and July 12, 2018.

69.     "**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

70.    "**Insurance Policy Documents**" has the meaning set forth in Section 7.06(b) of this Plan.

71.    "**Insured Claim**" means any Claim or portion of a Claim as to which there is valid and enforceable insurance coverage, but only to the extent of such coverage.

72.    "**Interim Compensation Order**" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses For Retained Professionals and (II) Granted Related Relief* entered by the Bankruptcy Court on February 7, 2018.

73.    "**KEIP**" has the meaning ascribed in the *Motion of Navillus Tile, Inc. for an Order (I) Authorizing Navillus to Make Payments to Eligible Employees under the Performance Bonus Program and (B) Continue the Performance Bonus Program in the Ordinary Course of Business; (II) Approving the Key Employee Incentive Program; and (III) Granting Related Relief* filed with the Bankruptcy Court on December 8, 2017 (Dkt. No. 100).

74.    "**Liberty**" means Liberty Mutual Insurance Company.

75.    "**Liberty DIP Loan Claim**" means all Claims of and obligations owing to Liberty with respect to the post-petition facility provided for in the DIP Financing Agreement.

76.    "**Liberty Global Settlement**" has the meaning ascribed to it in Section 6.06 of this Plan.

77.    "**Liberty Released Parties**" has the meaning ascribed to it in Section 12.01(a)(iii) of this Plan.

78.    "**Minimum Working Capital**" means fifteen million ($15,000,000.00) dollars of liquidity required by Navillus and/or Reorganized Navillus to fund its construction operations.

79.    "**Navillus**" has the meaning ascribed to it in the Introduction to this Plan.

80.    "**New Value Contribution**" means an amount equal to one million ($1,000,000) dollars in Cash to be contributed by DOS as of the Effective Date.

81.    "**Other Priority Claims**" means any Claim against Navillus entitled to priority in payment as specified in sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code (which for the avoidance of doubt shall not include the Union Parties Cure Claims).

82.    "**Other Secured Claims**" means any Secured Claim against Navillus that is not a Liberty DIP Loan Claim.

83.    "**Person**" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities.

84.    "**Petition Date**" means November 8, 2017, the date on which Navillus filed its petition for relief commencing the Chapter 11 Case.

85.    "**Performance Bonus Program**" has the meaning ascribed in the *Motion of Navillus Tile, Inc. for an Order (I) Authorizing Navillus to Make Payments to Eligible Employees under the Performance Bonus Program and (B) Continue the Performance Bonus Program in the Ordinary Course of Business; (II) Approving the Key Employee Incentive Program; and (III) Granting Related Relief* filed with the Bankruptcy Court on December 8, 2017 (Dkt. No. 100).

86.    "**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code, including any exhibits and schedules hereto and/or contained in the Plan Supplement.

87.    "**Plan Supplement**" means the compilation of documents, including any exhibits and schedules to the Plan not included herewith, that Navillus may file with the Bankruptcy Court on or before the date that is twenty (20) days prior to the Combined Hearing.

88.    "**Priority Tax Claim**" means any and all Claims of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

89.    "**Professional**" means any professional employed in this Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code.

90.    "**Professional Fee Claim**" means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date, and after the Effective Date in connection with the preparation and prosecution of final fee applications.

91.    "**Professional Fee Claims Bar Date**" means a date, which shall be thirty (30) days after the Effective Date, by which date all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court.

92.    "**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court or the duly appointed Claims Agent in connection with the Chapter 11 Case.

93.    "**Pro Rata**" means with respect to any Distribution to a Class under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims plus the amount of all Disputed Claims in the same Class.

94.    "**Rejection Damages Bar Date**" means a date, which shall be thirty (30) days after the Confirmation Date and will be the deadline for filing Proofs of Claim for damages that arise as a result of rejection of an Executory Contract or Unexpired Lease.

95.    "**Released Parties**" has the meaning ascribed to such term in Section 12.01(a)(iv) of the Plan.

96.    "**Reorganized Navillus**" means Navillus on and after the Effective Date.

97.    "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by Navillus pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

98.    "**Secured Claim**" means,  pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien,

mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of Navillus' interest in property of the Estate, to the extent of the value of Navillus' interest in such property as of the relevant determination date.  The defined term Secured Claim includes any Claim that is:  (i) subject to an offset right against the Holder of such Secured Claim under applicable law; and (ii) a secured claim against Navillus pursuant to sections 506(a) and 553 of the Bankruptcy Code.

99.    **"Securities Act"** means the U.S. Securities Act of 1933, as amended.

100.    **"Senior Management Emergence Bonus Program"** means the program pursuant to which Navillus, with the consent and approval of the Committee and the Union Parties, will seek approval in the Confirmation Order of payments on the Effective Date in an amount not to exceed three hundred thousand ($300,000) dollars in the aggregate to three members of Navillus' senior management (excluding DOS), unless otherwise agreed by the Committee.

101.    **"TSC"** means Time Square Construction, Inc.

102.    **"TSC Allowed Claim"** means TSC's Proof of Claim No. 45, which as of the Effective Date shall be Allowed as filed and afforded the Distribution set forth in Section 4.05 herein.

103.    "**Unclaimed Property**" means any Cash unclaimed after ninety (90) days following a Distribution Date in respect of the applicable Allowed Claim.  Unclaimed Property shall include, without limitation: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts to locate such address which were reasonable under the circumstances as provided for in the Plan.

104.    "**Unexpired Lease**" means a lease of non-residential real property to which Navillus is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

105.    "**Unimpaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

106.    "**Union Ordinary Course CBA Claims**" means Claims (A) arising from and after the Petition Date in the ordinary course of Navillus' business under the Union Parties CBAs and any other collective bargaining agreements to which Navillus is a party that are not (i) alter-ego based, (ii) included in or relate to the District Court Decision or (iii) included in any Proofs of Claims filed by the Union Parties or other unions or benefit funds against Navillus, and/or (B) with respect to any legally required calculation of withdrawal liability, if any.

11

107.    "**Union Parties**" means (i) the plaintiff funds comprised of (a) the Trustees of the Metal Lathers Local 46 Pension Fund, the Metal Lathers Local 46 Trust Fund, the Metal Lathers Local 46 Annuity Fund, the Metal Lathers Local 46 Vacation Fund, the Metal Lathers Local 46 Apprenticeship Fund, and the Metal Lathers Local 46 Scholarship Fund, (b) the Trustees of the Cement & Concrete Workers Pension Trust Fund, the Cement & Concrete Workers Welfare Trust Fund, the Cement & Concrete Workers Annuity Trust Fund, and the Cement & Concrete Workers Scholarship Trust Fund, (c) the Trustees of the Cement Masons' Local 780 Trust Fund, the Cement Masons' Local 780 Pension Fund, the Cement Masons' Local 780 Annuity Fund, the Cement Masons' Local 780 Vacation Fund, and the Cement Masons' Local 780 Apprenticeship Fund, (d) the Trustees of the New York City District Council of Carpenters Pension Fund, the New York City District Council of Carpenters Welfare Fund, the New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, and the New York City District Council of Carpenters Annuity Fund, and (e) the Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund; and (ii) the sponsoring unions comprised of the (a) Metallic Lathers and Reinforcing Ironworkers Local 46, (b) Cement & Concrete Workers District Council and its Affiliated Local Unions 6A, 18A and 20, (c) United Cement Masons' Union Local 780, (d) NYC & Vicinity District Council of Carpenters, and (e) Building Material Teamsters Local 282.

108.    "**Union Parties CBAs**" has the meaning ascribed to it in Section 6.05(c) of this Plan.

109.    "**Union Parties Cure Claims**" means any and all pre-petition Claims held by the Union Parties against Navillus in this Chapter 11 Case, including without limitation any and all pre-petition Claims arising out of the assumption of the Union Parties CBAs as of the Effective Date.  For the avoidance of doubt, the Union Parties Cure Claims shall not include the Union Ordinary Course CBA Claims.

110.    "**Union Parties Cure Disbursing Agent**" means Hahn & Hessen, LLP, as disbursing agent for the Union Parties pursuant to an instruction letter provided by the Union Parties.

111.    "**Union Parties Settlement**" has the meaning ascribed to it in Section 6.05 of this Plan.

112.    "**Union Parties Settlement Allocation**" means the Union Parties' allocation, subject to the requirements of the Bankruptcy Code, of the Distributions on account of the Allowed Union Parties Cure Claims by and among the Union Parties, which allocation shall be applied to the fringe benefit portions of the Union Parties Cure Claims, only, with no portion allocated to liquidated damages or any other penalty cost item.  Such allocation shall also provide the current mailing address of all recipients and a copy shall be provided to the Reorganized Navillus promptly after the Effective Date and prior to any Distribution being made by the Union Parties Cure Disbursing Agent.

113.    "**Union Released Parties**" has the meaning ascribed to it in Section 12.01(a)(ii) of this Plan.

**114.**    "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of New York.

**115.**    "**Voting Deadline**" means 5:00 p.m. prevailing Eastern Time on September 28, 2018.

**116.**    "**Voting Record Date**" means August 29, 2018.

**Section 1.02.    Rules of Construction**.  (a) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular Article, section, subsection or clause, unless the context requires otherwise; (b) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) captions and headings to Articles and sections (and subsections, where applicable) of this Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (d) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan unless superseded herein or in the Confirmation Order; (e) any reference in this Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, revised, supplemented or otherwise modified as of the Effective Date; (f) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 will apply; and (g) whenever this Plan provides that a payment or other Distribution will occur on any date, it will mean on or as soon as reasonably practicable after such date.

**Section 1.03.    Plan Supplement**.  The Plan Supplement will be filed with the Bankruptcy Court not less than twenty (20) days prior to the Combined Hearing.  Upon such filing, all documents set forth in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement, once filed, by accessing the Claims Agent's website or sending a written request as follows:

> Navillus Tile, Inc. Case Administration
> c/o GCG
> P.O. Box 10446
> Dublin, Ohio 43017-4046
> http://cases.gardencitygroup.com/nvs

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS IN NAVILLUS

**Section 2.01.    Introduction**

All Claims and Equity Interests in Navillus, except Administrative Claims, Professional Fee Claims, Priority Tax Claims and Liberty DIP Loan Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, Priority Tax Claims and the Liberty DIP Loan Claim have not been classified, and the respective treatment of such unclassified Claims is set forth below in

Section 3.01 of the Plan.  The fees and expenses of the Fee Examiner and Fee Examiner Professionals have also not been classified, and their respective treatment is set forth in Section 13.09 of this Plan.

### Section 2.02.    Classes

The following table designates the Classes of Claims and Equity Interests and specifies which of those Claims and Equity Interests are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (iii) deemed to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Article 3A Claims | Unimpaired | No (Deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No  (Deemed to accept) |
| Class 3 | Other Priority Claims | Unimpaired | No (Deemed to accept) |
| Class 4 | Union Parties Cure Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Equity Interests | Unimpaired | No (Deemed to accept) |

### Section 2.03.    General Rules of Classification

The Claims asserted against Navillus and Equity Interests in Navillus are separated into Classes based on the nature of the Claims and the legal rights related to each Claim.  A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in another Class to the extent that any portion of the Claim or Equity Interest falls within the description of such Class.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

### ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

### Section 3.01.    Administrative Claims

(a)    **Treatment.**  Administrative Claims are Unimpaired.  Each Holder of an Allowed Administrative Claim shall receive, in full and complete settlement, release, and discharge of such Claim, Cash in an amount equal to the Allowed amount of its Administrative Claim on or as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such Administrative Claim becomes Allowed, or receive such less favorable treatment as

may be agreed by such Holder and Navillus; provided, however, that the Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by Navillus, including, without limitation, the Union Ordinary Course CBA Claims, shall be paid in full and performed by Navillus in the ordinary course of business according to normal and customary terms existing between the parties. Notwithstanding the immediately preceding sentence, Administrative Claims of the U.S. Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

(b)    **Administrative Claims Bar Date.    All requests for payment of Administrative Claims must be filed with the Bankruptcy Court, with copies to Reorganized Navillus' counsel, on or before the Administrative Claims Bar Date.  Such request for payment of an Administrative Claim shall include, at a minimum, (i) the name, address, telephone number and email address of the Holder of such Claim; (ii) the amount of such Claim; (iii) the basis for such Claim; and (iv) any supporting documentation to the extent such documentation would be required by Bankruptcy Rule 3001.  Notwithstanding the foregoing, no application seeking payment of an Administrative Claim need be filed with respect to a post-Petition Date liability paid or payable by Navillus in the ordinary course of business including, without limitation, any Union Ordinary Course CBA Claim. Any Person that fails to file such request with the Bankruptcy Court on or before the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claim against Navillus, Reorganized Navillus, the Estate, or its property, and the Holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.**

### Section 3.02.    Professional Fee Claims

(a)    **Treatment**. Professional Fee Claims are Unimpaired.  Each Holder of an Allowed Professional Fee Claim shall receive Cash in an amount equal to the Allowed amount of such Professional Fee Claim on or as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such Professional Fee Claim becomes Allowed, or receive such other less favorable treatment as may be agreed by such Holder and Navillus. For the avoidance of doubt, the Claims of the Fee Examiner and Fee Examiner Professionals shall not be treated as Professional Fee Claims and shall be paid as set forth in Section 13.09 of this Plan.

(b)    **Professional Fee Claims Bar Date.  All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court and served on the notice parties listed in Interim Compensation Order, on or before the Professional Fee Claims Bar Date, unless otherwise ordered by the Bankruptcy Court. Any Person that fails to file such application with the Bankruptcy Court on or before the Professional Fee Claims Bar Date shall be forever barred from asserting such Professional Fee Claim against Navillus, Reorganized Navillus, the Estate, or its property, and the Holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Professional Fee Claim.  To the extent necessary to give effect to this Section 3.02, entry of the Confirmation Order will amend and supersede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Professional Fee Claims.**

### Section 3.03.    Priority Tax Claims

(a)    **Treatment.**    Priority Tax Claims are Unimpaired. Unless otherwise agreed to by Navillus and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in the sole discretion of Navillus, and in full and complete settlement, release, and discharge of such Claim: (i) Cash in the amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such Priority Tax Claim becomes Allowed; or (ii) Cash equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code (or such lesser rate as is agreed to by the Holder of such Allowed Priority Tax Claim), payable over a period ending no later than five (5) years from the Petition Date; provided, however, that Navillus reserves the right to prepay such amounts at any time under the latter option.

### Section 3.04.    Liberty DIP Loan Claim

(a)    **Treatment.**    The Liberty DIP Loan Claim is Unimpaired. The Liberty DIP Loan Claim shall be Allowed as an Administrative Claim in the amount of three hundred thousand ($300,000) dollars. Pursuant to the Union Parties Settlement, Liberty has agreed to assign to the Union Parties any and all Distributions on account of the Allowed Liberty DIP Loan Claim not to exceed three hundred thousand ($300,000) dollars and to waive (i) any and all other Distributions in excess of three hundred thousand ($300,000) dollars on account of the Allowed Liberty DIP Loan Claim as against the Estate and (ii) all other rights and Claims relative to the specific post-petition costs and expenses that are the subject of the Allowed Liberty DIP Loan Claim against the Estate, DOS and all other Indemnitors. On the Effective Date, the Distributions payable on account of the Allowed Liberty DIP Loan Claim shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent who, in turn, shall release such funds according to the instruction letter of the Union Parties and the Union Parties Settlement Allocation.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS IN NAVILLUS

### Section 4.01.    Class 1 – Article 3A Claims

(a)    **Classification**. Class 1 consists of Article 3A Claims against Navillus.

(b)    **Treatment**. On the Effective Date, each Holder of an Allowed Article 3A Claim shall receive in full, final and complete satisfaction, settlement, release, and discharge of such Claim, payment in full in Cash of the Allowed Article 3A Claim, or reinstatement and subsequent payment of such Allowed Article 3A Claim, in the ordinary course of business, each in accordance with the provisions of Article 3A and such agreements and terms as existing as of the Petition Date, which agreements will continue in full force and effect.

(c)    **Impairment and Voting**. Class 1 is Unimpaired, and the Holders of Class 1 Claims will be conclusively deemed to have accepted the Plan pursuant to section

16

1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims shall not be entitled to vote to accept or reject the Plan.

### Section 4.02.    Class 2 – Other Secured Claims

(a)    **Classification**. Class 2 consists of all Other Secured Claims against Navillus.

(b)    **Treatment**. On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Claim, in the sole discretion of Navillus: (i) reinstatement of its Allowed Other Secured Claim in accordance with section 1124(2) of the Bankruptcy Code, or (ii) in exchange for such Other Secured Claim, either (a) Cash in the full amount of such Allowed Other Secured Claim, including any reasonable postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (b) the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the Holder's secured interest in such collateral, (c) the collateral securing such Allowed Other Secured Claim and any reasonable interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (d) such other distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code. In the event Navillus sells or otherwise disposes of the collateral securing any Allowed Other Secured Claim, all expenses relating thereto, including but not limited to transportation, shipping and storage expenses, shall be borne by the Holder of the Class 2 Other Secured Claim.

(c)    **Impairment and Voting**. Class 2 is Unimpaired, and the Holders of Class 2 Claims shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2 Claims shall not be entitled to vote to accept or reject the Plan.

### Section 4.03.    Class 3 – Other Priority Claims

(a)    **Classification**. Class 3 consists of Other Priority Claims against Navillus.

(b)    **Treatment**. On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Priority Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Claim, Cash in the amount equal to such Allowed Other Priority Claim.

(c)    **Impairment and Voting**. Class 3 is Unimpaired, and the Holders of Class 3 Claims shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Claims shall not be entitled to vote to accept or reject the Plan.

**Section 4.04.        Class 4 – Union Parties Cure Claims**

(a)        **Classification**.  Class 4 consists of the Union Parties Cure Claims against Navillus.

(b)        **Treatment**.  The Class 4 Union Parties Cure Claims shall receive the following treatment under the Plan:

      i.        On the Effective Date, or with respect to the Distribution on the TSC Allowed Claim when the first Distribution to Holders of Class 5 Allowed Claims is made, the Holders of the Allowed Union Parties Cure Claims shall receive, in the aggregate, and in full, final and complete cure and satisfaction, settlement, release, and discharge of such Union Parties Cure Claims: (x) a one-time Cash Distribution in the amount equal to twenty five million ninety thousand six hundred sixty six ($25,090,666) dollars; plus (y) a one-time Cash Distribution in an amount not to exceed six hundred fourteen thousand ($614,000) dollars on account of the assigned Distributions on account of (i) the Allowed Liberty DIP Loan Claim and (ii) the TSC Allowed Claim.

      ii.        Distributions on account of the Union Parties Cure Claims shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent who, in turn, shall release such funds according to the instruction letter of the Union Parties and the Union Parties Settlement Allocation, as set forth more fully in Section 8.04 of this Plan.

(c)        **Impairment and Voting**.  Class 4 is Impaired and the Holders of the Class 4 Claims shall be entitled to vote to accept or reject the Plan.

**Section 4.05.        Class 5 – General Unsecured Claims**

(a)        **Classification**.  Class 5 consists of General Unsecured Claims against Navillus.

(b)        **Treatment**.  On or as soon as reasonably practicable after the date on which all objections to Class 5 General Unsecured Claims have been resolved or ruled on by the Bankruptcy Court, each Holder of an Allowed General Unsecured Claim shall receive, in full, final and complete satisfaction, settlement, release, and discharge of such Claim, the lesser of (i) ten (10%) percent of the Allowed amount of its Allowed General Unsecured Claim; or (ii) its Pro Rata Share of six hundred thousand ($600,000) dollars.

(c)        **Impairment and Voting**.  Class 5 is Impaired and the Holders of Class 5 Claims shall be entitled to vote to accept or reject the Plan.

**Section 4.06.        Class 6 –Equity Interests**

(a)        **Classification**.  Class 6 consists of the Equity Interests in Navillus held by the Donal O'Sullivan Revocable Living Trust and Donal O'Sullivan IDGT II.

(b)    **Treatment**.    The current Holders of the Class 6 Equity Interests shall retain their Equity Interests in Navillus in consideration for the payment of the New Value Contribution by DOS.

(c)    **Impairment and Voting**.    Class 6 is Unimpaired, and the Holders of Class 6 Equity Interests shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.    Therefore, the Holders of Class 6 Equity Interests shall not be entitled to vote to accept or reject the Plan.

### Section 4.07.    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing herein shall affect Navillus' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### ARTICLE V

### ACCEPTANCE OR REJECTION OF THE PLAN

### Section 5.01.    Voting of Claims

Each Holder of an Allowed Claim in Classes 4 and 5 shall be entitled to vote to accept or reject this Plan and to have its vote counted toward confirmation of the Plan.

### Section 5.02.    Acceptance by a Voting Class

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, a voting Class of Claims shall have accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims voted in such Class have timely and properly voted to accept or reject the Plan.

### Section 5.03.    Presumed Acceptances or Rejections by Certain Classes

Classes 1, 2, 3 and 6 are Unimpaired under the Plan.    Under section 1126(f) of the Bankruptcy Code, Holders of such Unimpaired Claims and Equity Interests are conclusively presumed to have accepted the Plan.    Accordingly, the votes of Holders of such Unimpaired Claims and Equity Interests in Classes 1, 2, 3 and 6 shall not be solicited.

### Section 5.04.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, Navillus reserves the right to request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.    Navillus reserves the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit,

including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### Section 5.05.    Elimination of Vacant Classes

Any Class of Claims or Equity Interests in Navillus that does not contain, as of the date of the commencement of the Combined Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### ARTICLE VI

### MEANS FOR IMPLEMENTATION OF THE PLAN

### Section 6.01.    Reorganization of Navillus

On the Effective Date, Navillus will be reorganized pursuant to the Plan and other applicable governance, corporate and other documents to be included in the Plan Supplement.

(a)    **Vesting of Assets**. On the Effective Date, with the exception of any claims and Causes of Action released pursuant to Article XII of this Plan or as expressly provided in this Plan, all right, title and interest in and to the property and assets of the Estate will vest fully in Reorganized Navillus, free and clear of all liens, encumbrances and other liabilities including, without express or implied limitation, Claims against or Equity Interests in Navillus. All Claims against and Equity Interests in Navillus will be classified and treated pursuant to the terms of this Plan.

(b)    **Sources of Plan Funding**. On the Effective Date, the Distributions required to be made to Holders of Claims under this Plan shall be funded by one or more of: (a) Cash on hand, (b) the Exit Financing, and (c) the New Value Contribution.

### Section 6.02.    Effective Date Transactions.    On the Effective Date, the following transactions have occurred or will occur:

(a)    Navillus has entered into the Exit Financing on the terms to be set forth in the Plan Supplement.

(b)    The New Value Contribution, less the portion of the Deposit made by DOS (if any), shall be made by DOS to the Distribution Agent.

(c)    The Deposit shall be released by the Escrow Agent from escrow to the Distribution Agent.

(d)    The Final Vacatur Order shall be entered by the District Court.

(e)      Distributions on account of the Union Parties Cure Claims as set forth in Section 4.04 of this Plan shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent.

(f)      The Confirmation Order has become a Final Order.

(g)      All Plan Supplement documents have been entered into and are in effect.

### Section 6.03.      Exit Financing

On the Effective Date, Navillus shall be authorized to consummate the Exit Financing with Liberty.   Confirmation of the Plan shall constitute an approval of the transactions contemplated thereby and all of the actions to be taken and obligations to be incurred by Reorganized Navillus in connection therewith without the need for any further corporate action or further order of the Bankruptcy Court.  The proceeds of the Exit Financing will be available, among other things, for any purpose permitted by the governing documents, including the funding of obligations under the Plan and the satisfaction of Minimum Working Capital requirements on an after the Effective Date.  The terms of the Exit Financing will be included in the Plan Supplement.

### Section 6.04.      New Value Contribution

On the Effective Date, DOS will make the New Value Contribution, less the portion of the Deposit made by DOS (if any), in exchange for the retention of Equity Interests by the holders of Class 6 Equity Interests in Navillus and the releases set forth in Article XII of this Plan.  The New Value Contribution will be utilized by Reorganized Navillus to fund obligations under the Plan.

### Section 6.05.      Union Parties Settlement

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan is intended to continue the implementation of the terms of the settlement (the "Union Parties Settlement").  The Plan constitutes a motion to approve the Union Parties Settlement which will be implemented through the Plan as follows:

(a)      **Vacatur of District Court Decision.**  The Union Parties Settlement and the occurrence of the Effective Date are conditioned in their entirety on the entry of the Final Vacatur Order by the District Court and dismissal of the related appeal without prejudice as to DOS, Navillus, TSC, HDK and Advanced Contracting Solutions, LLC.  Navillus and the Union Parties agree to make all necessary motions in a timely manner in order to secure remand of the case underlying the District Court Decision to the District Court and vacatur of the District Court Decision as of the Effective Date.

(b)      **Global Settlement.**  Payments under the Plan (excluding ordinary course payments relating to Navillus' projects, contracts and business operations) shall be funded by Navillus and DOS in an amount not to exceed thirty two million ($32,000,000) dollars, and the current Equity Holders of Navillus shall retain one hundred (100%) percent of their Class 6 Equity Interests as set forth in Section 4.06 of this Plan.

21

(c) **Assumption of Union Parties CBAs and Treatment of Union Parties Cure Claims.** As of the Effective Date, Reorganized Navillus shall assume all of the Union Parties' respective collective bargaining agreements as applicable to Navillus (the "Union Parties CBAs") in accordance with the provisions of Article VII of this Plan. The Union Parties Cure Claims shall be reclassified, to the extent necessary, and Allowed as general unsecured claims in the amounts set forth in the Union Parties' Proofs of Claim filed in the Chapter 11 Case and afforded the treatment set forth in Section 4.04 of the Plan; provided, however, that any Union Ordinary Course CBA Claims shall not be cured by the treatment of the Union Parties Cure Claims but rather paid to the extent owed and performed by Navillus in the ordinary course of business according to normal and customary terms existing between the parties as set forth in Section 3.01 hereof.

(d) **Stay of Bankruptcy Court Litigation.** Navillus, the Committee and the Union Parties shall suspend all pending litigation, claim objections, and discovery amongst them in the Bankruptcy Court.

(e) **Mutual Releases.** Navillus, DOS, the Union Parties and Liberty shall receive the releases set forth in Article XII of this Plan.

(f) **Senior Management Emergence Bonuses.** The Committee and the Union Parties agree that Navillus shall be authorized to seek, and they will not oppose, approval of the Senior Management Emergence Bonus Program as of the Effective Date.

### Section 6.06.    Liberty Global Settlement

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement of numerous issues outstanding between Navillus and Liberty designed to achieve an economic settlement (the "Liberty Global Settlement") of Liberty's Claims against the Estate and enable Navillus to reorganize as a going concern with Liberty's support for ongoing operations. The Plan constitutes a motion to approve the Liberty Global Settlement which will be implemented through the Plan as follows:

(a) Liberty shall consent to the assumption of the Bonds pursuant to Section 7.01 of this Plan notwithstanding the status of the Bonds as financial accommodations contracts;

(b) Liberty shall consent to treatment of any and all cure amounts due and owing as a result of the assumption of the Bonds as a Class 5 General Unsecured Claim payable on the terms set forth in Section 4.05 of this Plan and shall waive its right to collect any such amounts from the non-debtor Indemnitors;

(c) Navillus and DOS shall reaffirm any and all obligations under the Indemnity Agreements;

(d) Liberty shall provide Navillus with funding for the Distributions required to be made under the Plan and post-confirmation liquidity through the Exit Financing on terms to be set forth in the Plan Supplement;

(e)      Liberty shall consider the future execution of bonds on behalf of Navillus on a request-by-request basis, pursuant to its underwriting standards; and

(f)      Liberty shall receive the releases and exculpations set forth in Article XII of this Plan.

### Section 6.07.      General Corporate Actions

The entry of the Confirmation Order shall constitute authorization for Navillus and Reorganized Navillus to take or cause to be taken all corporate or other actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of Navillus or Reorganized Navillus.

### Section 6.08.      Continued Corporate Existence

On and after the Effective Date, Reorganized Navillus may operate its business and use, acquire, dispose of property and settle and compromise Claims or Equity Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject to the terms of this Plan and the Plan Supplement, and all documents and exhibits thereto implementing the provisions of the Plan.

### Section 6.09.      Board of Directors of Reorganized Navillus

On the Effective Date, the board of directors of Reorganized Navillus will consist of those individuals constituting the current board of directors of Navillus.

### Section 6.10.      Officers of Reorganized Navillus

The officers of Navillus immediately prior to the Petition Date shall serve as the officers of Reorganized Navillus on and after the Effective Date.  DOS shall continue to serve as President and Chief Executive Officer of Reorganized Navillus on the same terms that were in place prior to the Petition Date, subject to Liberty's review and approval with respect to compensation during the period of time that the Exit Financing remains outstanding.

### Section 6.11.      Senior Management Emergence Bonus Program

On the Effective Date, Navillus shall be authorized to implement the Senior Management Bonus Program without the need for further corporate action or further order of the Bankruptcy Court.

### Section 6.12.      Certificate of Incorporation and Bylaws

The certificate of incorporation and by-laws of Navillus shall be modified in order to satisfy the requirements of the Plan and the Bankruptcy Code and shall include, among other

things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, subject to further amendment of such certificate of incorporation as permitted by applicable law.

### Section 6.13.    Indemnification Obligations

Upon the Effective Date, the obligations of Navillus as provided in Navillus' certificate of formation, certificate of incorporation, bylaws or other organizational documents, board resolutions, employment contracts, applicable law or other applicable agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors, officers, employees, attorneys, other professionals, and agents of Navillus who were in place as of the Petition Date against any claims or causes of action whether direct or derivative, liquidated or unliquidated, foreseen or unforeseen, asserted or unasserted, shall not be discharged or impaired by confirmation of the Plan, shall survive entry of the Confirmation Order and shall remain unaffected thereby after the Effective Date.

### Section 6.14.    Preservation of Causes of Action

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, on the Effective Date, Reorganized Navillus shall retain the right to pursue, prosecute and enforce any claims, demands, rights, and Causes of Action that Navillus may hold against any Entity including, without limitation, (i) any and all claims against any Entity, to the extent such Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against Navillus; (ii) any and all claims and Causes of Action for turnover of any property of Navillus' estate; (iii) any and all claims and Causes of Action that are subject to pending litigation in either the Bankruptcy Court or a non-bankruptcy forum as of the Effective Date; (iv) any and all claims and Causes of Action that are listed on Navillus' Schedules; and (v) any and all breach of contract and other claims and Causes of Action arising out of or relating to the construction projects on which Navillus has performed or presently performs including, without limitation those potential claims described in Section VII.B.12 of the Disclosure Statement.  On the Effective Date, Navillus' right to pursue, prosecute and enforce such claims, demands, rights and Causes of Action shall transfer to Reorganized Navillus, which on and after the Effective Date shall have the exclusive right to pursue, prosecute and enforce such actions.  Nothing in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any rights or Causes of Action that Navillus or Reorganized Navillus may have; provided, however, that Navillus shall be barred from seeking an affirmative recovery on any Avoidance Actions and may only use such Avoidance Actions for defensive purposes.

### Section 6.15.    Effectuating Documents; Further Transactions

On the Effective Date, the appropriate officers and directors of Reorganized Navillus and its counsel shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### Section 6.16.       Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment, to the fullest extent provided for under section 1146(a) of the Bankruptcy Code. State or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 6.17.       Cancellation of Agreements

Except for purposes of evidencing a right to Distributions or otherwise as provided hereunder, on the Effective Date, all the agreements and other documents evidencing any Claims or rights of any Holder of a Claim against Navillus shall be deemed automatically cancelled, terminated and of no further force or effect, without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the parties, as applicable, under the agreements and other documents governing such Claims shall be discharged. For the avoidance of doubt, pursuant to the terms of the Liberty Global Settlement, the Indemnity Agreements in favor of Liberty shall not be cancelled.

### Section 6.18.       Transactions on Business Days

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### Section 6.19.       Compromise and Settlement Under the Plan

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to such Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of Navillus and its estate, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 7.01.    General Assumption of Executory Contracts and Unexpired Leases**

(a)    **Assumption of Union Parties' CBAs.**  Reorganized Navillus hereby assumes all of the Union Parties CBAs.  Pursuant to the Union Parties Settlement, the Union Parties consent to the proposed assumption.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the assumption of all of the Union Parties CBAs as of the Effective Date.

(b)    **Union Parties Cure Claims**.  Any defaults under the Union Parties CBAs that must be cured with regard to the proposed assumption of the Union Parties CBAs pursuant to section 365(b)(1) of the Bankruptcy Code shall be deemed cured by the treatment of the Union Parties Cure Claims set forth in Section 4.04 hereof, which has been agreed to by the Union Parties provided, however, that any undisputed Union Ordinary Course CBA Claim shall not be cured by the treatment of the Union Parties Cure Claims but rather paid to the extent owed and performed by Navillus in the ordinary course of business according to normal and customary terms existing between the parties as set forth in Section 3.01 hereof.

(c)    **General Assumption**.  Except as otherwise specifically provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, all prepetition Executory Contracts and Unexpired Leases, including without limitation collective bargaining agreements (other than the Union Parties CBAs) are hereby assumed except for an Executory Contract or Unexpired Lease that (i) was previously assumed or rejected by Navillus pursuant to an order of the Bankruptcy Court entered on or prior to the Confirmation Date, (ii) previously expired or was terminated pursuant to its own terms, which termination has not been disputed by Navillus in writing, (iii) is the subject of a motion to assume or reject filed by Navillus on or before the Confirmation Date, or (iv) is listed on the schedule of rejected Executory Contracts and Unexpired Leases (the "Rejection Schedule").  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the assumption of Executory Contracts and Unexpired Leases described above, as of the Effective Date.

(d)    **Assumption and Cure Schedule**.  Other than with respect to the Union Parties CBAs, the Plan Supplement shall contain a schedule of Executory Contracts and Unexpired Leases (the "Assumption and Cure Schedule") designating each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan and the cure amount, if any, related to such proposed assumption; provided, however, that Navillus reserves the right, on or prior to the Confirmation Date, to amend the Assumption and Cure Schedule.  Navillus shall provide notice of any amendments to the Assumption and Cure Schedule to the parties affected thereby. The listing of a document on the Assumption and Cure Schedule shall not constitute an admission by Navillus that such document is an Executory Contract or an Unexpired Lease or that Navillus has any liability thereunder.  If no cure amount for an assumed Executory Contract

or Unexpired Lease is listed in the Assumption and Cure Schedule, the cure amount shall be deemed to be $0.

(e)    **Rejection**.   The Plan Supplement shall contain a Rejection Schedule designating each Executory Contract and Unexpired Lease to be rejected pursuant to the Plan; provided, however, that Navillus reserves the right, on or prior to the Confirmation Date, to amend the Rejection Schedule.   Navillus shall provide notice of any amendments to the Rejection Schedule to the parties affected thereby.  The listing of a document on the Rejection Schedule shall not constitute an admission by Navillus that such document is an Executory Contract or an Unexpired Lease or that Navillus has any liability thereunder.

(f)    **Inclusiveness**.  Unless otherwise specified on the Assumption and Cure Schedule, each Executory Contract and Unexpired Lease listed thereon shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects the Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed on the Assumption and Cure Schedule.

### Section 7.02.    Payment of Cure Amounts Relating to Assumption of Executory Contracts and Unexpired Leases

(a)    **Assumption and Cure Schedule.**  Navillus shall file the Assumption and Cure Schedule with the Bankruptcy Court and serve such schedule by first class mail on each non-debtor counterparty to the Executory Contracts and Unexpired Leases listed thereon at least twenty (20) days prior to the Combined Hearing.  The Assumption and Cure Schedule shall list the cure amount as to each Executory Contract or Unexpired Lease to be assumed under the Plan.  The counterparties to such Executory Contracts and Unexpired Leases to be assumed by Navillus shall have ten (10) days from the date of service of the Assumption and Cure Schedule (or the date of service of any amendment to the Assumption and Cure Schedule) to file and serve any objection to either the cure amount listed by Navillus or the assumption of such Executory Contract or Unexpired Lease.  If there are objections filed, the Bankruptcy Court may either schedule such objection to be heard at the Combined Hearing or at a later hearing on a date to be set by the Bankruptcy Court.  Notwithstanding anything to the contrary in the Plan, Navillus or Reorganized Navillus, as applicable, shall be authorized to reject any Executory Contract or Unexpired Lease that is subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.   Each counterparty to an Executory Contract or Unexpired Lease that does not file an objection to the Assumption and Cure Schedule on or before the objection deadline set forth therein will be deemed to consent to the assumption of such Executory Contract or Unexpired Lease and the proposed cure amount (if any) with respect to such agreement.

(b)    **Treatment of Cure Claims**.  Except as otherwise set forth in this Plan, all Allowed Claims for cure amounts arising from the assumption of any Executory Contract or Unexpired Lease shall be treated in accordance with the requirements of Section 365 of the Bankruptcy Code.  The Union Parties Cure Claims shall receive the treatment set forth in Section 4.04 of this Plan pursuant to the Union Parties Settlement; provided, however, that any Union Ordinary Course CBA Claim shall not be cured by the treatment of the Union Parties

27

Cure Claims but rather paid to the extent owed and performed by Navillus in the ordinary course of business according to normal and customary terms existing between the parties as set forth in Section 3.01 hereof.  Any cure costs incurred by Liberty (other than the Liberty DIP Loan Claim) shall, pursuant to the Liberty Global Settlement, be treated as a Class 5 General Unsecured Claim as set forth in Section 4.05 of this Plan.  Except as may otherwise be agreed to by the counterparty to the Executory Contract or Unexpired Lease, as soon as practicable after the Effective Date, Reorganized Navillus shall pay all undisputed cure amounts.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of Navillus' liability with respect to such cure amount, or as may otherwise be agreed to with the counterparty to such Executory Contract or Unexpired Lease.

### Section 7.03.    Rejection Damages Bar Date

**If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan results in a Claim, then such Claim must be filed with the Claims Agent and served upon counsel to Reorganized Navillus on or before the Rejection Damages Bar Date, and upon the failure of any Entity to file such Claim on or before such date, such Entity shall be forever barred from asserting a Claim on account of the rejection of such Executory Contract or Unexpired Lease, but shall nevertheless be bound by the provisions of the Plan.  The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease; any other Claims held by a party to a rejected contract or lease not evidenced by a Proof of Claim filed by the applicable Bar Date shall be barred and unenforceable.  Nothing in this Section 7.03 will extend any prior Bar Date set by prior order of the Bankruptcy Court.**

All Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be treated, to the extent applicable, as General Unsecured Claims, unless otherwise ordered by Final Order of the Bankruptcy Court.  There shall be no restriction on the right of Reorganized Navillus to object to any Claims relating to the rejection of Executory Contracts or Unexpired Leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

### Section 7.04.    Postpetition Contracts and Leases

Navillus shall not be required to assume or reject any contract or lease entered into by Navillus after the Petition Date.  Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date as set forth in the Plan, unless Reorganized Navillus has obtained a Final Order of the Bankruptcy Court approving termination of such contract or lease.  Contracts or leases entered into after the Petition Date will be performed by Reorganized Navillus in the ordinary course of its business.

### Section 7.05.    Compensation and Benefit Programs

All compensation and benefit plans, policies and programs of Navillus applicable to its present and former employees, including, without express or implied limitation, all savings

28

plans, retirement plans, health and welfare plans, performance-based incentive plans, retention plans, reimbursement plans, disability plans, severance benefit plans, paid time off plans and life, accidental death and dismemberment insurance plans, including, without express or implied limitation, and the Performance Bonus Program, KEIP and Senior Management Emergence Bonus Program, will be deemed to be, and will be treated as though they are, Executory Contracts and will, on the Effective Date, be deemed assumed under the Plan by Reorganized Navillus in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, and Reorganized Navillus' obligations under such plans, policies and programs will survive confirmation of the Plan, remain unaffected thereby and not be discharged in accordance with section 1141 of the Bankruptcy Code.

### Section 7.06.    Special Provisions Regarding Insured Claims

(a)    **Limitations on Distributions to Holders of Allowed Insured Claims.** All prepetition Insured Claims not previously Allowed by Final Order shall be deemed Disputed Claims. Distributions under the Plan to each Holder of an Allowed Insured Claim will be in accordance with the treatment provided for under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from Navillus' deductible under the Insurance Policy Documents or the proceeds of insurance payable to the Holder of such Allowed Claim under Navillus' Insurance Policy Documents or applicable law. Holders of Insured Claims that are eligible to be satisfied, in whole or in part, through insurance policies will be obligated, as a condition to receiving any Distributions under this Plan, to seek recovery or assist Navillus or Reorganized Navillus in seeking recovery under such insurance policies with regard to such Insured Claims.

(b)    **Assumption and Continuation of Insurance Policies**. Each insurance policy and any agreements, documents or instruments relating thereto (collectively, the "Insurance Policy Documents") under which the insurer has a continuing obligation to pay Navillus or a third party on behalf of Navillus shall be either deemed assumed by Reorganized Navillus pursuant to section 365 of the Bankruptcy Code and Section 7.01 of this Plan or continued in accordance with its terms such that each of the parties' contractual, legal and equitable rights under the Insurance Policy Documents shall remain unaltered, and the parties to Insurance Policy Documents will continue to be bound by such Insurance Policy Documents as if the Chapter 11 Case had not occurred. Nothing in the Plan shall affect, impair or prejudice the rights and defenses of any insurer or Reorganized Navillus under the Insurance Policy Documents in any manner, and such insurers and Reorganized Navillus shall retain all rights and defenses under the Insurance Policy Documents, and the Insurance Policy Documents shall apply to, and be enforceable by and against, Reorganized Navillus and the applicable insurers as if the Chapter 11 Case had not occurred. The rights and obligations of Navillus, Reorganized Navillus and insurers shall be determined under the Insurance Policy Documents and under applicable non-bankruptcy law. Regardless of whether the Insurance Policy Documents are executory, Reorganized Navillus will perform Navillus' obligations thereunder, including any that remain unperformed as of the Effective Date.

**Section 7.07.        Continuing Obligations Owed to Navillus**

(a)        Any indemnity agreement entered into between Navillus and any other Person requiring the supplier of indemnity to provide insurance in favor of Navillus, to warrant or guarantee such supplier's goods or services, or to indemnify Navillus for claims arising from the goods or services shall be deemed to be, and shall be treated as though it is, an Executory Contract that is assumed  pursuant to section 365 of the Bankruptcy Code and Section 7.01 of this Plan; provided, however, that if any party thereto asserts any cure amount, at the election of Navillus such agreement may not be deemed assumed, and Navillus instead reserves the right to reject such agreement pursuant to section 365 of the Bankruptcy Code under the Plan.

(b)        Continuing obligations of third parties to Navillus under the Insurance Policy Documents and other contracts or leases that have ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay Insured Claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties unless otherwise specifically terminated by Navillus, under the Plan or otherwise by order of the Bankruptcy Court.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 8.01.        Distributions on the Effective Date**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the Effective Date that are unclassified Claims as described in Article III of this Plan and Classes 1, 2, and 3 shall be made on or as soon as practicable after the Effective Date.  Distributions to Holders of Allowed Claims in Class 4 (other than with respect to the TSC Allowed Claim) shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent on the Effective Date.  Distributions to Holders of Allowed Claims in Class 5 shall be made as soon as practicable after all objections to Class 5 General Unsecured Claims are either resolved or ruled on by the Bankruptcy Court. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Section 8.02 of the Plan.

**Section 8.02.        Distributions After the Effective Date**

Distributions made after the Effective Date to Holders of Allowed Claims that are Disputed Claims as of the Effective Date will be deemed to have been made on the Effective Date.  No interest will accrue or be payable on such Claims or any Distributions. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made as soon as practicable after the Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims that are Disputed Claims as of the Effective Date will be deemed to have been made on the Effective Date.  No interest will accrue or be payable on such Claims or any Distributions.

**Section 8.03.        Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**Section 8.04.        Union Parties Settlement Allocation**

Distributions on account of the Union Parties Cure Claims (other than with respect to the TSC Allowed Claim) shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent on the Effective Date who, in turn, shall release such funds according to the instruction letter of the Union Parties and the Union Parties Settlement Allocation.  The Union Parties shall provide the Union Parties Settlement Allocation to the Union Parties Cure Disbursing Agent.  Neither Navillus, the Escrow Agent, the Distribution Agent, the Union Parties Cure Disbursing Agent or any of the other Allocation Release Beneficiaries shall have any liability in connection with the Union Parties Settlement Allocation pursuant to the Allocation Release set forth in Section 12.01(c)(iii) of this Plan.

**Section 8.05.        Distribution Agent**

All Distributions under this Plan (other than the Distributions on the Union Parties Cure Claim) shall be made by the Distribution Agent.  The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all Distributions contemplated by the Plan, and (c) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.  If a Distribution Agent is an independent third party designated to serve in such capacity, such Distribution Agent shall receive, without further approval from the Bankruptcy Court, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services from Reorganized Navillus.

**Section 8.06.        Claims Filed After Bar Date**

Any Claim, including without limitation any Claim for alleged withdrawal liability, filed after the Bar Date shall, unless such Claim properly amends a Claim filed before the Bar Date or unless the Bankruptcy Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Bankruptcy Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by Navillus and the Holder of such Claim, or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or consent of Reorganized Navillus.

**Section 8.07.**     **Transmittal of Distributions and Notices**

(a)     Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest Proof of Claim or other paper filed by that Person or its authorized agent, or with respect to the Union Parties to the address of the Union Parties Cure Disbursing Agent. Absent any of the foregoing, the address set forth in the relevant Schedule for that Person may be used.  Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Notwithstanding anything in this Plan to the contrary, the Distribution Agent shall not have any obligation to attempt to locate any Person who is or becomes entitled to receive any Distribution with regard to any undeliverable or uncashed Distributions.

(b)     A Holder of a Claim or Equity Interest may designate a different address for notices and Distributions by notifying Navillus and the Distribution Agent of that address in writing.  Any change of address of a party entitled to receive Distributions hereunder must be provided by overnight or registered mail to the address for notices set forth in Section 13.07 of this Plan in order to be effective.  Such notification shall be effective upon receipt.

(c)     If any Distribution to a Holder of a Claim or Equity Interest is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such Holder shall be made unless and until the Distribution Agent is timely notified within ninety (90) days following the Distribution Date with respect to such Holder of a Claim, in writing, of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.

**Section 8.08.**     **Unclaimed Property**

If any Distribution remains unclaimed for a period of ninety (90) days following a Distribution Date to the Holder of an Allowed Claim or Equity Interest entitled thereto, the Distribution shall constitute Unclaimed Property and the Holder shall no longer be entitled to such Distribution.   All such property shall be retained by the Distribution Agent in the Distribution Reserve for Distribution pursuant to the terms of the Plan, subject, however, to the Distribution Agent's sole discretion to distribute Unclaimed Property to Holders entitled thereto if such Holders are subsequently located.

**Section 8.09.**     **Withholding Taxes and Expenses of Distribution**

In connection with the Plan and all Distributions under the Plan, Reorganized Navillus and the Distribution Agent shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under the Plan shall be subject to any such withholding, payment, and reporting requirements.  Reorganized Navillus and the Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that is to receive a Distribution of Cash pursuant to the

Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon Reorganized Navillus in connection with such Distribution, and no Distribution of Cash shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to Reorganized Navillus and the Distribution Agent for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon Reorganized Navillus in connection with such Distribution.  If such information is not received within ninety (90) days after the Distribution Date by the Distribution Agent, such Distribution shall be treated as Unclaimed Property.

### Section 8.10.    Fractional Distributions

Notwithstanding any other provision of the Plan to the contrary, no Cash payments of fractions of cents will be made.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar.

### Section 8.11.    *De Minimis* Distributions

Notwithstanding anything to the contrary contained in the Plan, the Distribution Agent shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $50.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than such amount shall have such Claim discharged and shall be forever barred from asserting such Claim against Navillus, Reorganized Navillus or their respective property.  Any Cash or other property not distributed pursuant to this provision shall be the property of Reorganized Navillus, free of any restrictions thereon.

### Section 8.12.    Setoffs and Recoupments

Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, Navillus may, pursuant to applicable law, setoff or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made and before any Distribution is made on account of such Claim), any and all of the Claims, rights and Causes of Action of any nature that Navillus or the Estate may hold against the Holder of such Claim.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other act or omission of Navillus, nor any provision of this Plan, shall constitute a waiver or release by Navillus of any such Claims, rights and Causes of Action that Navillus may possess against such Holder.  To the extent Navillus fails to setoff or recoup against a creditor and seeks to collect a Claim from such creditor after a Distribution to such creditor pursuant to the Plan, Navillus, if successful in asserting such Claim, shall be entitled to full recovery against such creditor.  Navillus may seek periodic Bankruptcy Court approval for any such setoffs or recoupments.

### Section 8.13.        Pre-Payment

Except as otherwise provided in the Plan, the Plan Supplement, any ancillary documents entered into in connection herewith, or the Confirmation Order, Reorganized Navillus shall have the right to pre-pay, without penalty, all or any portion of an Allowed Claim entitled to payment in Cash at any time; provided, however, that any such prepayment shall not be violative to or otherwise prejudice the relative priorities and parities among the Classes of Claims.

### Section 8.14.        No Distribution in Excess of Allowed Amounts

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (excluding payments on account of interest due and payable from and after the Petition Date pursuant to the Plan, if any).

### Section 8.15.        Disposition of Excess Funds

If, after ninety (90) days following the final Distribution Date, any Unclaimed Property remains, or Cash of inconsequential value to the Estate remains in the possession or under the control of Reorganized Navillus or the Distribution Agent, and the Distribution Agent has satisfied and discharged all the expenses intended to be paid on behalf of the Estate, the Distribution Agent shall first use such Unclaimed Property and Cash to make an additional Pro Rata Distribution to the Holders of Allowed Class 5 Claims, solely to the extent that all prior Distributions to such Holders aggregate less than 10% of their Allowed Claims; provided that such additional Distribution does not impede, hinder or delay entry of a final decree closing the Chapter 11 Case.  Moreover, any expenses associated with the making of any such additional Distribution will be paid from such Unclaimed Property and Cash.  After any such additional Distribution is made, the Distribution Agent shall, at the sole option of Reorganized Navillus, either return any remaining Cash or Unclaimed Property to Reorganized Navillus or abandon such funds in a commercially reasonable manner, including to a charitable organization designated by Reorganized Navillus.

### ARTICLE IX

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

### Section 9.01.        Prosecution of Objections to Claims

From and after the Effective Date, Reorganized Navillus shall have the right to object to the allowance of any Claim and may file with the Bankruptcy Court any appropriate motion or adversary proceeding with respect thereto on or before the Claims Objection Bar Date.  All Claim objections may be litigated to Final Order; provided, however, that Reorganized Navillus may compromise and settle, withdraw, or resolve by any other method approved by the Bankruptcy Court, any objections to any Claim.  To the extent any Claims or Causes of Actions are pending before the Bankruptcy Court pursuant to filings made during the pendency of the Chapter 11 Case, Navillus shall be required to obtain an appropriate order of the Bankruptcy Court concluding any such filings.

### Section 9.02.        Estimation of Claims

Navillus may at any time request that the Bankruptcy Court estimate any Contingent Claim, unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Navillus has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. On and after the Confirmation Date, subject to the Effective Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Section 9.01 of this Plan.

### Section 9.03.        Resolution of Disputed Insured Claims

(a)        **ADR Procedures**.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a request to approve alternative dispute resolution procedures (the "ADR Procedures") to promote the resolution of prepetition Insured Claims that remain unliquidated or are Disputed Claims as of the Voting Record Date.  A summary of the ADR Procedures is set forth below, and a copy of the ADR Procedures in their entirety will be included in the Plan Supplement.

i.    Offer Exchange Procedures.  The first stage of the ADR Procedures is an offer exchange process (the "Offer Exchange Procedure") requiring the parties to exchange settlement offers and thereby providing the opportunity to resolve the Disputed Insured Claims on a consensual basis without any further litigation.

ii.    Mediation Procedure.  If the Offer Exchange Procedure does not result in settlement of a Disputed Insured Claim, the next step is mediation before a mediator chosen from a pre-selected list.  Following the selection of a mediator and the preparation of mediation statements, and within thirty (30) days of the appointment of a mediator, a mediation conference will be held during which the mediator will work with the parties to resolve the Disputed Insured Claim.  Claims not resolved through mediation will proceed to litigation as set forth in Section 9.03(b) of this Plan.

(b)        **Disputed Insured Claims Not Resolved Through ADR Procedures**. After the Effective Date, at Reorganized Navillus' option, any Disputed Insured Claim (as to which a Proof of Claim was timely filed in the Chapter 11 Case) not resolved through the ADR Procedures or a Final Order of the Bankruptcy Court will be determined in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction. Reorganized Navillus may exercise this option by service upon the Holder of the applicable Insured Claim of a notice informing the Holder of such Insured Claim that Reorganized Navillus has exercised such option.  Upon Reorganized Navillus' service of such a notice, the discharge injunction provided for in Section 12.02 of this Plan will be deemed modified, without the necessity for further Bankruptcy Court approval, solely to the extent necessary to

35

allow the parties to determine the Disputed Insured Claim in the applicable administrative or judicial tribunal.  Notwithstanding the foregoing, at all times prior to and after the Effective Date, the Bankruptcy Court will retain jurisdiction relating to the Insured Claims, including Navillus and Reorganized Navillus' right to have such Claims determined in the Bankruptcy Court (or the United States District Court for the Southern District of New York) pursuant to section 157(b)(2)(B) of title 28 of the United States Code, as may be applicable.

(c)    **Treatment of Insured Claims Upon Final Resolution**.  Any Insured Claim determined pursuant to the ADR Procedures or a judgment obtained in accordance with this Section 9.03 of the Plan and applicable non-bankruptcy law will be deemed an Allowed Claim in the amount so determined, provided that only the amount of such Allowed Claim that is not satisfied from Navillus' deductible under the Insurance Policy Documents or the proceeds of insurance payable to the Holder of such Allowed Claim under Navillus' Insurance Policy Documents will be treated as an Allowed Claim for purposes of Distributions under the Plan.  In no event will a Distribution be made under the Plan to the Holder of an Insured Claim on account of any portion of an Insured Claim in excess of Navillus' deductible under any applicable Insurance Policy Documents.  In the event an Insured Claim is determined pursuant to a judgment obtained in accordance with this Section 9.03 of the Plan and applicable non-bankruptcy law provides for no recovery against Navillus, such Insured Claim will be deemed Disallowed and expunged without the necessity for further Bankruptcy Court approval upon Navillus or Reorganized Navillus' service of a copy of such judgment or Final Order upon the Holder of such Insured Claim.  All Claims, demands, rights, defenses and Causes of Action that Navillus or Reorganized Navillus may have against any Person or Entity in connection with or arising out of any Insured Claim are expressly retained and preserved.

(d)    The resolution of Disputed Insured Claims pursuant to this Section 9.03 of the Plan shall be subject to the provisions of Section 7.06 of this Plan.

### Section 9.04.    No Distribution Pending Allowance

No Distributions shall be made on account of a Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, until such Claim becomes an Allowed Claim.  In lieu of making a Distribution to such Holders, any Distribution to which such Holder would be entitled if that Claim had been Allowed in full shall be placed in the Distribution Reserve until the disposition thereof shall be determined by a Final Order or by written agreement between the Holder of the Claim and Navillus.

### Section 9.05.    Distributions on Account of Disputed Claims Once They are Allowed

The Distribution Agent shall make Distributions on account of any Disputed Claim that has become an Allowed Claim.  Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.  Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Plan if the Disputed Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

**Section 9.06.        Reserves for Plan Distributions**

Navillus or Reorganized Navillus may establish any reserves that they deem necessary or advisable to make Distributions to Holders of Allowed Claims (including, without limitation, Professional Fee Claims) and Equity Interests or otherwise to satisfy their obligations under the Plan.

(a)        **Distribution Reserve**

On the Effective Date and on each subsequent Distribution Date, Navillus or Reorganized Navillus shall withhold on a Pro Rata basis from property that would otherwise be distributed to Classes of Claims entitled to Distributions under the Plan on such date, in the Distribution Reserve, an amount or property sufficient to make the Distributions to which Holders of such Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed as of the Effective Date.  Navillus or Reorganized Navillus may request, if necessary, estimation of any Disputed Claim that is contingent or unliquidated, or for which Navillus or Reorganized Navillus determine to reserve less than the amount of the Disputed Claim.  Navillus or Reorganized Navillus shall withhold the applicable portion of the Distribution Reserve with respect to such Claims based upon the estimated amount of each such Claim as estimated by the Bankruptcy Court.  If Navillus or Reorganized Navillus elect not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is contingent or unliquidated, Navillus or Reorganized Navillus shall withhold the applicable amount of the Disputed Claim based upon the good faith estimate of the amount of such Claim by Navillus or Reorganized Navillus.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**Section 10.01.        Conditions Precedent to Confirmation.**

The following conditions are conditions to entry of the Confirmation Order:

(a)        Navillus and/or DOS shall post or cause to be posted the Deposit.

(b)        The Confirmation Order is reasonably acceptable in form and substance to Navillus, the Committee and the Union Parties as to the subject matter of the Union Parties Settlement.

(c)        All necessary motions required to obtain entry of the Final Vacatur Order are in form and substance reasonably acceptable to Navillus, the Committee and the Union Parties.

**Section 10.02.        Conditions Precedent to the Effective Date**

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions, all of which will be undertaken and will be deemed to have occurred simultaneously (and no such action will be deemed to have occurred prior to the taking

of any other such action unless otherwise agreed), are satisfied or waived in accordance with Section 10.03 of this Plan:

(a)    The Confirmation Order shall have been entered and have become a Final Order;

(b)    The Final Vacatur Order shall have been entered by the District Court;

(c)    All litigation relating to the District Court Decision shall have been dismissed with prejudice as to Navillus, TSC, HDK and DOS;

(d)    The Exit Financing shall have closed;

(e)    Sufficient Cash to make all Distributions required to be made on the Effective Date (including, without limitation, all Distributions required to be made on account of Professional Fee Claims and the fees and expenses of the Fee Examiner and Fee Examiner Professionals, and Distributions on account of the Union Parties Cure Claims) will have been deposited into escrow with Escrow Agent;

(f)    Distributions on account of the Union Parties Cure Claims shall be released by the Escrow Agent from escrow to the Union Parties Cure Disbursing Agent;

(g)    DOS will have funded and deposited into escrow with Escrow Agent the New Value Contribution;

(h)    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(i)    The Cash necessary to make all Distributions required to be made on the Effective Date shall be placed into escrow with the Escrow Agent pursuant to an escrow agreement to be included in the Plan Supplement and released from escrow upon the entry of the Final Vacatur Order.  In the event the Final Vacatur Order is not entered within thirty (30) Business Days of the closing on the Exit Financing, unless otherwise agreed to in writing by Navillus, the Committee and Liberty, such Cash shall be returned by the Escrow Agent to the party that funded such escrow.

### Section 10.03.    Waiver of Conditions to Occurrence of Effective Date

Each of the conditions set forth in the preceding section (other than 10.02(h)) may be waived in whole or in part by Navillus or Reorganized Navillus with the consent of the Committee and without any notice to other parties-in-interest or the Bankruptcy Court and without a hearing.

# ARTICLE XI

## RETENTION OF JURISDICTION

### Section 11.01.    Scope of Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests in Navillus;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Professionals of Reorganized Navillus (other than with respect to the preparation and prosecution of fee applications) shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    hear and determine all applications for compensation and reimbursement of expenses of the Fee Examiner and the Fee Examiner Professionals under the Plan or under sections 105, 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(d)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which Navillus is a party or with respect to which Navillus may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(e)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(f)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Plan, including without limitation the enforcement of the injunction provisions contained in Article XII of the Plan and any potential claims or Causes of Action disclosed in Section VII.B.12 of the Disclosure Statement;

(g)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Union Parties

Settlement, the Liberty Global Settlement, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(h)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(i)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the implementation, consummation, or enforcement of the Union Parties Settlement, the Liberty Global Settlement, the Plan or the Confirmation Order;

(k)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Union Parties Settlement, the Liberty Global Settlement, the Union Parties Settlement Allocation, the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(m)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(n)    except as otherwise limited herein, recover all assets of Navillus and property of the Estate, wherever located;

(o)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)    hear and determine all disputes involving the existence, nature, or scope of Navillus' discharge;

(q)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the provisions of the Bankruptcy Code; and

(r)    enter a final decree closing the Chapter 11 Case.

40

**Section 11.02.    Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## <u>RELEASES, DISCHARGE, INJUNCTION AND EXCULPATION</u>

**Section 12.01.    Releases and Related Matters**

(a)    **Released Parties**

(i)    **For purposes of this section, "<u>Debtor Released Parties</u>" means (i) Navillus, (ii) Reorganized Navillus, (iii) the Estate, (iv) each direct or indirect and actual or beneficial Holder of Equity Interests in Navillus, including, without limitation, DOS, the Donal O'Sullivan Revocable Living Trust, Donal O'Sullivan IDGT II, and any other trust settled by DOS, (v) TSC, (vi) HDK, and (vii) with respect to the foregoing, each of their respective current and former officers and directors, managers, members, trustees, beneficiaries, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, affiliates (including, without limitation, Kerry Leasing, LLC, Manhattan Tool Repair, Inc., Structure Compliance Group, LLC, Navillus Group, LLC, E. Fitzgerald Electric, Co., Inc., and all their employees, directors, officers, managers, members, agents and representatives), relatives (including, without limitation, Kathleen O'Sullivan, Kevin O'Sullivan and Helen O'Sullivan), and each of their predecessors, successors and assigns; <u>provided</u>; <u>however</u>, that the Debtor Released Parties shall not include the aforementioned (i) beneficiaries, (ii) agents, (iii) representatives, (iv) financial advisors, (v) professionals, (vi) accountants, (vii) attorneys, or (viii) affiliates of Kerry Leasing, LLC, Manhattan Tool Repair, Inc., Structure Compliance Group, LLC, Navillus Group, LLC, or E. Fitzgerald Electric, Co., Inc.**

(ii)    **For purposes of this section, "<u>Union Released Parties</u>" means the Union Parties and each of their respective current and former officers, trustees, attorneys, advisors and representatives, and each of their predecessors, successors and assigns.**

(iii)    **For purposes of this section, "<u>Liberty Released Parties</u>" means Liberty and its current and former officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, affiliates, and each of their predecessors, successors and assigns.**

(iv)    **For purposes of this section, "<u>Released Parties</u>" means the Debtor Released Parties, the Union Released Parties and the Liberty Released Parties.**

41

(b)    **Releases by the Debtor Released Parties**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor Released Parties, and any Person or Entity seeking to exercise the rights of Navillus' Estate, shall be deemed to forever release, waive, and discharge:**

**(i) each of the Union Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or in any way relating to (a) the District Court Decision and (b) any Proofs of Claim filed by the Union Parties against Navillus; and**

**(ii) each of the Liberty Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or  in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (f) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; and**

**(iii) each of the other Debtor Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or  in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (f) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.**

**Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Exit Financing, the Liberty Global Settlement and the Union Parties Settlement are not released.**

(c)    **Releases by the Union Released Parties**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed:**

**(i) The Union Released Parties shall be deemed to forever release, waive, and discharge each of the Debtor Released Parties and the Liberty Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or  in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) the District Court Decision, (f) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to the foregoing, and (g) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement, the Plan, the District Court Decision, or the Proofs of Claim filed by the Union Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, including but not limited to any alter ego claims, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; provided however, that such release with respect to Navillus shall exclude any Union Ordinary Course CBA Claims.**

**(ii) The Union Parties shall not cause any Person to bring, or assist any Person in developing or bringing, any claims or investigations against Navillus or DOS with respect to matters arising prior to the Effective Date, to the fullest extent permitted by law; provided however, that such release with respect to Navillus shall exclude any Union Ordinary Course CBA Claims.**

**(iii) The Union Released Parties shall be deemed to forever release, waive, and discharge each of the Debtor Released Parties, the Escrow Agent, the Distribution Agent, the Union Parties Cure Disbursing Agent and the Liberty Released Parties (collectively, the "Allocation Release Beneficiaries") from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever in connection with or in any way relating to the Union Parties Settlement Allocation as provided in Section 8.04 hereof, or any failure to direct the Union Parties Cure Disbursing Agent to disburse the Distributions in accordance with such allocation (the "Allocation Release").**

**Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Union Parties Settlement and any Union Ordinary Course CBA Claims are not released.**

(d)    **Releases by Liberty**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Liberty shall be deemed to forever release, waive, and discharge Navillus, Reorganized Navillus, the Estate, and the Indemnitors from any and all**

43

claims and rights for and related to the specific post-petition costs and expenses that are the subject of the Allowed Liberty DIP Loan Claim in the amount in excess of three hundred thousand ($300,000) dollars.

(e)        **Releases by Holders of Claims and Equity Interests**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a Claim against or Equity Interest in Navillus and Reorganized Navillus, excluding the Debtor Released Parties, the Union Released Parties and Liberty, shall, to the fullest extent permitted by law, be deemed to forever release, waive, and discharge each of the Debtor Released Parties and Liberty Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and  liabilities whatsoever in connection with or in any way relating to (a) Navillus, (b) the conduct of Navillus' business, (c) the Chapter 11 Case, (d) the Disclosure Statement or the Plan, (e) the District Court Decision, (f) any agreement, understanding, contract, instrument or other document which existed prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement, the Plan or the District Court Decision, and (g) any transaction, event, circumstance, action, failure to act or occurrence of any kind or nature which occurred, existed, was taken, permitted or begun at any time prior to the Effective Date relating in any way to Navillus, the conduct of Navillus' business, the Chapter 11 Case, the Disclosure Statement, the Plan or the District Court Decision, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; **provided, however,** that nothing in this Section 12.01(e) shall operate as a release, waiver or discharge of any Causes of Action or liabilities unknown to such Person as of the Petition Date arising out of willful misconduct, gross negligence, fraud or criminal acts of any such Released Party as determined by a Final Order and any Union Ordinary Course CBA Claims. Notwithstanding the foregoing, the obligations under Article 3-A, the Plan, the Union Parties Settlement and any Union Ordinary Course CBA Claims are not released.

### Section 12.02.    Discharge of Claims

(a)        Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided herein, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan.  The Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan.

(b)    **As of the Effective Date, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against Navillus, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Navillus at any time, to the extent that such judgment relates to a discharged Claim.**

### Section 12.03.    Injunction

(a)    **Except as otherwise set forth herein, all Persons who have held, hold or may hold Claims, Causes of Action or Equity Interests and their successors and assigns, and all other parties in interest, along with their respective present or former directors, officers, principals, employees, agents, professionals, representatives and affiliates shall be permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims, Causes of Action or Equity Interests against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of such Claims, Causes of Action or Equity Interests, (c) creating, perfecting or enforcing any encumbrance of any kind against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties or against the property or interests in the property of Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of any such Claims, Causes of Action or Equity Interests, (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distributions being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any Claim, Cause of Action, right or interest that has been extinguished, discharged, released, settled or exculpated pursuant to the Plan or the Confirmation Order.  Such injunction shall extend to all Persons protected by the discharge, release and exculpation provisions of the Plan and the Confirmation Order, as well as to the successors of such Persons and to the respective property and interests in property of such Persons.**

(b)    **Without limiting the effect of the foregoing provisions of this Section 12.03 upon any Person, by accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim or Equity Interest receiving a Distribution pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 12.03.**

(c)    **Without limiting the effect of the foregoing provisions of this Section 12.03, the Union Released Parties shall be permanently enjoined, from and after the Effective Date, from commencing or continuing in any manner any action or proceeding of any kind with respect to any claims or actions released by the Allocation Release.  In the event of a violation of such injunction, the Allocation Release Beneficiaries shall be entitled to injunctive relief and damages caused by such violation, including any costs**

**incurred, including, but not limited to, reasonable attorneys' fees and disbursements, against the Union Party(ies) violating this injunction.**

**Section 12.04.    Exculpation and Limitations of Liability**

(a)    **Exculpated Parties**

**For purposes of this section, "<u>Exculpated Parties</u>" means Navillus and each of its current and former officers and directors, managers, members, trustees, beneficiaries, employees, agents, representatives, financial advisors, professionals, accountants and attorneys, the Allocation Release Beneficiaries, the Union Released Parties, the Committee and the Committee's members and Professionals.**

(b)    **The Exculpated Parties who provided services to the Estate during this Chapter 11 Case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Estate, including but not limited to (i) the commencement and administration of the Chapter 11 Case, (ii) the operation of Navillus during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 Case or in connection with the Plan or Plan Supplement; or (v) any Distributions made pursuant to the Plan.  Nothing in this section shall (i) be construed as a release of such Person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this Section 12.04(b), or (ii) limit the liability of Navillus' Professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.  The Exculpated Parties are entitled to rely on, and act or refrain from acting on, all information provided by other Exculpated Parties without any duty to investigate the veracity or accuracy of such information.**

**ARTICLE XIII**

**<u>MISCELLANEOUS PROVISIONS</u>**

**Section 13.01.    Modifications and Amendments**

(a)    **Preconfirmation Amendment**.  Navillus may modify this Plan at any time prior to the Confirmation Date; <u>provided</u>, <u>however</u>, that this Plan, as modified, and the Disclosure Statement pertaining thereto will meet applicable Bankruptcy Code requirements.  A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

(b)    **Post-Confirmation Amendment Not Requiring Resolicitation**.  After the Confirmation Date, with the approval of the Bankruptcy Court, Navillus or Reorganized Navillus, as applicable, may modify this Plan to remedy any defect or omission or to reconcile

any inconsistencies in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan, or in a manner that does not materially adversely affect the interests, rights, treatment or Distributions of any Class of Claims or Equity Interests.

(c)    **Post-Confirmation, Pre-Consummation Amendment Requiring Resolicitation**.  After the Confirmation Date and before substantial consummation of this Plan, Navillus or Reorganized Navillus, as applicable, may, with the consent of the Committee with respect to the subject matter of the Union Parties Settlement, modify this Plan in a manner that materially and adversely affects the interests, rights or treatment of, or Distributions to, one or more Classes of Claims or Equity Interests, provided, however, that (a) this Plan, as modified, will satisfy all applicable Bankruptcy Code requirements; (b) Navillus or Reorganized Navillus, as applicable, will obtain Bankruptcy Court approval for such modification; (c) such modification will be accepted by each Class of Claims or Equity Interests adversely affected by such modification pursuant to the standards for acceptance set forth in Article V above; and (d) Navillus or Reorganized Navillus, as applicable, will comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified.

## Section 13.02.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Navillus, with the consent of the Committee with respect to the subject matter of the Union Parties Settlement, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Section 13.03.    Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person or Entity, including, but not limited to, Reorganized Navillus and all other parties-in-interest in the Chapter 11 Case.

## Section 13.04.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### Section 13.05.    Injunction Against Interference With Plan

Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests, and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### Section 13.06.    Revocation, Withdrawal, or Non-Consummation

Navillus reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date or, if Navillus is for any reason unable to consummate this Plan after the Confirmation Date, at any time prior to the Effective Date.  If Navillus revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the Union Parties Settlement or any other fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, (c) DOS shall receive the return of the New Value Contribution, and (d) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, Navillus, or any Causes of Actions or other Claims by or against Navillus or any Person or Entity, (ii) prejudice in any manner the rights of Navillus or any Person or Entity in any further proceedings involving Navillus, or (iii) constitute an admission of any sort by Navillus or any other Person or Entity.

### Section 13.07.    Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) electronic transmission, and (c) deemed to have been duly given or made when actually delivered or, in the cases of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

If to Navillus or Reorganized Navillus:

> CULLEN AND DYKMAN LLP
> C. Nathan Dee, Esq.
> Elizabeth M. Aboulafia, Esq.
> 100 Quentin Roosevelt Blvd.
> Garden City, New York 11530
> Tel. (516) 357-3700
> Email: ndee@cullenanddykman.com
>         eaboulafia@cullenanddykman.com

48

If to the Distribution Agent:

> GCG[2]
> PO Box 10446
> Dublin, Ohio  43017-4046
> Email: NVSinfo@choosegcg.com

### Section 13.08.    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan and, except as may be provided otherwise in any such agreements, documents, or instruments, any agreements, documents, and instruments executed in connection with the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws that would require application of the law of another jurisdiction.

### Section 13.09.    Fee Examiner Professional Fees

The Fee Examiner and the Fee Examiner Professionals shall file final applications for compensation for services rendered or reimbursement of costs, expenses or other charges incurred by the Fee Examiner and the Fee Examiner Professionals on or before the date is thirty (30) days after the final hearing on Professional Fee Claims.  On the Effective Date, Navillus' bankruptcy counsel or the Distribution Agent shall segregate sufficient funds to pay the estimated fees and expenses of the Fee Examiner and the Fee Examiner Professionals upon approval by the Bankruptcy Court.

### Section 13.10.    Post-Effective Date Professional Fees

From and after the Effective Date, to the extent any Professional provides services to the Estate or Reorganized Navillus in connection with this Plan and any other matters as to which such Professionals may be engaged, Reorganized Navillus shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses incurred by such Professional.  In the event a dispute over the fees of any Professional cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Bankruptcy Court.  Reorganized Navillus may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to it after the Effective Date.

### Section 13.11.    Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Combined Hearing, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date shall be paid by Reorganized Navillus.  The obligation of Reorganized Navillus to pay quarterly fees to the U.S. Trustee

---

[2] *Garden City Group, LLC was acquired by Epiq Class Action and Claims Solutions, Inc. on June 15, 2018.*

pursuant to section 1930 of title 28 of the United States Code shall continue until such time as the Chapter 11 Case is closed.

### Section 13.12.    Post-Confirmation Date Service List - Persons Entitled to Notice

From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Bankruptcy Court prior to such date shall no longer be effective.  No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Bankruptcy Court and served upon the Persons listed in Section 13.07 of the Plan.

### Section 13.13.    Notice of Entry of Confirmation Order

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

### Section 13.14.    Post-Confirmation Reporting

Reorganized Navillus shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter, on or before the following dates:  January 20, April 20, July 20 and October 20, until the earlier of the entry of a final decree, conversion or dismissal of the Chapter 11 Case.

### Section 13.15.    Confirmation Order and Plan Control

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

### Section 13.16.    Dissolution of Committee

On the Effective Date, the Committee shall be automatically dissolved and all members, Professionals and agents of the Committee shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with Navillus, the Chapter 11 Case, the Plan or its implementation (other than for the Professionals to prepare and prosecute their final fee application).  At such time, the Committee, its Professionals and any professionals employed by the members of the Committee shall use reasonable commercial efforts to destroy or return within seven (7) business days all copies of any confidential material in possession of the Committee, its Professionals and any professionals employed by the members of the Committee provided by Navillus during the

Chapter 11 Case, consistent with the terms of the confidentiality agreement between Navillus and the Committee.

### Section 13.17.    Extension of Dates; Consent

To the extent any provision or definition of the Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of Navillus, other than a Distribution under this Plan.  Any provision of the Plan which is conditioned upon, or subject to, the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

### Section 13.18.    Closing of Chapter 11 Case

After the Chapter 11 Case has been fully administered, Reorganized Navillus shall seek authority from the Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

### Section 13.19.    No Admission

Notwithstanding anything herein to the contrary, nothing contained in this Plan will be deemed an admission by Navillus or any other Person with respect to any matter set forth herein, including, without express or implied limitation, liability on any Claim or the propriety of a Claim's classification.

DATED:        August 24, 2018

NAVILLUS TILE, INC. DBA
NAVILLUS CONTRACTING

_____

Name: Christopher K. Wu
Title:   Chief Restructuring Officer

CULLEN AND DYKMAN LLP
Attorneys for Navillus Tile, Inc.

_____

C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700