**Hearing Date: June 10, 2021 at 10:00 a.m. (ET)**
**Objection Deadline: May 27, 2021 at 4:00 p.m. (ET)**

Martin G. Bunin
Veronique A. Urban
FARRELL FRITZ, P.C.
622 Third Avenue, 37th Floor
New York, New York 10017
Tel:  (212) 687-1230
Fax:  (646) 237-1810

*Attorneys for Navillus Tile, Inc.*
*d/b/a Navillus Contracting*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                                           Chapter 11

Navillus Tile, Inc., DBA Navillus Contracting,          Case No. 17-13162 (SHL)

                                   Debtor.
-------------------------------------------------------x

### REORGANIZED DEBTOR'S MOTION FOR AN ORDER (I) REOPENING BANKRUPTCY CASE FOR THE LIMITED PURPOSE OF ENFORCING THE CHAPTER 11 DISCHARGE AND PLAN INJUNCTION AND (II) ENFORCING THE CHAPTER 11 DISCHARGE AND PLAN INJUNCTION

Navillus Tile, Inc., d/b/a Navillus Contracting ("**Navillus**"), as the reorganized debtor, files

this motion (this "**Motion**") for an order reopening its chapter 11 case, case no. 17-13162 (the

"**Chapter 11 Case**"), for the limited purpose of enforcing the chapter 11 discharge and enforcing

the permanent injunction contained in Article XII of the Plan and paragraphs 19 and 20 of the

Confirmation Order (each as defined below) with respect to the state court action (the "**State Court**

**Action**") commenced by the New York City Housing Authority ("**NYCHA**") in 2020 against

Navillus and Cowi Consulting, Inc. f/k/a Gandhi Engineering, Inc. ("**Cowi**") in the Supreme Court

of the State of New York, County of New York entitled *New York City Housing Authority v. COWI*

*Consulting, Inc. f/k/a Gandhi Engineering, Inc. and Navillus Tile, Inc. d/b/a Navillus Contracting*,

Index No. 451637/2020 (Sup. Ct, New York County).  In support of this Motion, Navillus submits

the Declaration of Selina Maddock, its General Counsel (the "**Maddock Declaration**"), filed together with this Motion, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Articles XI and XII of the Plan and paragraphs 19 and 20 of the Confirmation Order. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 350(b), 524 and 1141 of the Bankruptcy Code, Rules 3020(d) and 5010 of the Federal Rules of Bankruptcy Procedure, Local Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York.

## BACKGROUND AND FACTS

### A.      The Chapter 11 Case

3.      On November 8, 2017 (the "**Petition Date**"), Navillus filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "**Chapter 11 Case**").

4.      On January 3, 2018, the Court entered the *Order Granting Debtor's Motion Pursuant to 11 U.S.C. § 502(b)(9), Fed. R. Bankr. P. 2002 and 3003(c)(3), and Local Rule 3003-1 For Entry of an Order (I) Establishing Deadline for Filing Proofs of Claim Including Claims Under 11 U.S.C. § 503(b)(9) and Procedures Related Thereto and (II) Approving Form and Manner of Notice Thereof* [ECF No. 170] (the "**Bar Date Order**").

5.      The Bar Date Order established February 18, 2018 as the deadline for filing proofs of claim for claims against Navillus by non-government creditors which arose on or before the

2

Petition Date.  The deadline for governmental units to file proofs of claim for claims arising on or before the Petition Date was May 7, 2018 (the "**Gov't Bar Date**").

6.      On October 11, 2018, the Court entered its *Order Confirming Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting Under Chapter 11 of the Bankruptcy Code* [ECF No. 686] (the "**Confirmation Order**"), which confirmed the Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting Under Chapter 11 of the Bankruptcy Code [ECF No. 686, beginning at page 29 of 84] (the "**Plan**").

7.      The Confirmation Order provided that all requests for payment of administrative expenses must be filed with the Court by the Administrative Claims Bar Date, defined by the Plan as the date thirty (30) days after the date upon which the Court entered the Confirmation Order on the docket of the Chapter 11 Case (the "**Administrative Expense Claims Bar Date**"), that is, October 11, 2018.

8.      The Effective Date of the Plan occurred on October 26, 2018 (the "**Effective Date**"). *See Notice of Occurrence of the Effective Date of Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting* [ECF No. 716].

9.      On December 27, 2018, the Court entered the *Final Decree* [ECF No. 802] closing the Chapter 11 Case.

**B.      The Plan and Confirmation Order Discharge and Injunction**

10.      The Plan and Confirmation Order provide for a discharge (the "**Discharge**") of all Claims and Causes of Action that arose before the Effective Date.  The Plan defines Claim to mean "any 'claim' against Navillus, whether or not asserted, known or unknown, as such term is

defined in section 101(5) of the Bankruptcy Code" (Plan, at 4).  The Plan defines Causes of Action

to mean

> any and all actions, causes of actions, claims, . . . crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date. . . . (Plan, at 4)

11.    Section 12.02 of the Plan, entitled "Discharge of Claims" provides:

> (a) Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided herein, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan. The Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan.

> (b) As of the Effective Date, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against Navillus, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Navillus at any time, to the extent that such judgment relates to a discharged Claim.

12.    Paragraph 19 of the Confirmation Order, entitled "Discharge of Claims",  provides,

in relevant part:

> Discharge of Claims. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action that arose before the Effective Date, and all debts of the kind specified in section 502 of the

4

Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted the Plan. The Plan shall bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan. This Confirmation Order shall be, as of the Effective Date, a judicial determination of discharge of all such Claims and other debts and liabilities against Navillus, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against Navillus at any time, to the extent that such judgment relates to a discharged Claim. * * *

13.     To enforce the Discharge, the Plan and Confirmation Order contain permanent injunction provisions (the "**Plan Injunction**").

14.     Section 12.03 of the Plan, entitled "Injunction", provides:

(a) Except as otherwise set forth herein, all Persons who have held, hold or may hold Claims, Causes of Action or Equity Interests and their successors and assigns, and all other parties in interest, along with their respective present or former directors, officers, principals, employees, agents, professionals, representatives and affiliates shall be permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims, Causes of Action or Equity Interests against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of such Claims, Causes of Action or Equity  Interests, (c) creating, perfecting or enforcing any encumbrance of any kind against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties or against the property or interests in the property of Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of any such Claims, Causes of Action or Equity Interests, (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distributions being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any Claim, Cause of Action, right or interest that has been extinguished, discharged, released, settled or

5

exculpated pursuant to the Plan or the Confirmation Order. Such injunction shall extend to all Persons protected by the discharge, release and exculpation provisions of the Plan and the Confirmation Order, as well as to the successors of such Persons and to the respective property and interests in property of such Persons.

15.    Paragraph 20 of the Confirmation Order, also entitled "Injunction", provides, in relevant part:

Injunction. Except as otherwise set forth herein, all Persons who have held, hold or may hold Claims, Causes of Action or Equity Interests and their successors and assigns, and all other parties in interest, along with their respective present or former directors, officers, principals, employees, agents, professionals, representatives and affiliates shall be permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims, Causes of Action or Equity Interests against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties; (b) the enforcement, attachment, collection or recovery by any manner or means of a judgment, award, decree or order against  Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of such Claims, Causes of Action or Equity Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released  parties or against the property or interests in the property of Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties on account of any such Claims, Causes of Action or Equity Interests, except as otherwise provided for in connection with the Exit Financing; (d) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distributions being effectuate through the Plan (other than actions to enforce any rights or obligations under the Plan); (e) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due Navillus, Reorganized Navillus, the Estate or Debtor Released Parties and Liberty Released Parties, except as contemplated or allowed by the Plan; and (f) prosecuting or otherwise asserting any Claim, Cause of Action, right or interest that has been extinguished, discharged, released, settled or exculpated pursuant to the Plan or the Confirmation Order. Such injunction shall extend to all Persons protected by the discharge, release and exculpation provisions of the Plan and the Confirmation Order, as well as to the successors of such Persons and to the respective property and interests in property of such Persons.

**C.    NYCHA Received Notices in the Navillus Chapter 11 Case, Including Notice
of the Gov't Bar Date, and Filed a Proof of Claim Against Navillus (Unrelated
to the State Court Action)**

16.    Navillus served notice of the commencement of the Chapter 11 Case on NYCHA.

*See Affidavit of Service* [ECF No. 94, page 29].

17.    Navillus served notice of the Gov't Bar Date (the "**Bar Date Notice**") and a proof
of claim form on NYCHA by first class mail on January 9, 2018 at two locations, 90 Church
Street, New York, NY, the location of NYCHA's legal department, and 250 Broadway, New
York, NY. *See Affidavit of Service* [ECF No. 195, Exhibit A, page 28 of 67).

18.    As further described herein, on April 12, 2018,  NYCHA filed proof of claim
number 115 (the "**NYCHA Proof of Claim**") in the Chapter 11 Case, asserting claims for
contribution and indemnification under several pre-petition construction contracts between
NYCHA and Navillus for work on NYCHA projects (not including the construction contract at
issue in the State Court Action).  *See* Maddock Declaration at ¶ 17.

19.    Navillus served notice of the confirmation hearing on NYCHA by first class mail
on August 31, 2018 at two locations, 90 Church Street, New York, NY, the location of NYCHA's
legal department, and 250 Broadway, New York, NY.  *See Affidavit of Service* [ECF No. 623,
Exhibit E].

**D.    The NYCHA Contract**

20.    On or about August 31, 2015, more than two years before the Petition Date,
NYCHA entered into Contract No. BW 12223421 (the "**NYCHA Contract**") with Navillus for
"Exterior Brickwork Restoration, Roofing Replacement with built up roofing and related work at

---

[1] In the State Court Action, the contract number is identified as Contract No. BW 1222342. The contract number was
subsequently changed to Contract No. BW 1507030.

FF\11427959.8

all 14 buildings of Parkside Houses," located in Bronx, New York.  *See* Maddock Declaration at ¶ 3; NYCHA Complaint, **Exhibit A** to the Maddock Declaration ¶20.

21.    Navillus substantially completed the work under the NYCHA Contract by September 1, 2017, the contract completion date, approximately two months before the Petition Date. *See* Maddock Declaration ¶ 4.  Navillus did not include the NYCHA Contract in its Schedule of Executory Contracts.

### E.    The State Court Action

22.    On August 5, 2020, three years after the Gov't Bar Date and almost two years after the entry of the Confirmation Order, NYCHA commenced the State Court Action.  A copy of the NYCHA Complaint is attached as **Exhibit A** to the Maddock Declaration.

23.    NYCHA served the NYCHA Complaint on Navillus on November 24, 2020 and on November 30, 2020.

24.    In response to the Complaint in the State Court Action, on January 21, 2021, Navillus filed its answer in the State Court Action (the "**Navillus Answer**"). A copy of Navillus' Answer is attached as **Exhibit B** to the Maddock Declaration.

25.    On January 22, 2021, Cowi filed its answer to Complaint (the "**Cowi Answer**"). A copy of the Cowi Answer is attached as **Exhibit C** to the Maddock Declaration.

26.    The State Court Action alleges that Cowi prepared the construction contract documents and specified Type O mortar for the repointing work on the brick facades of the Parkside Houses buildings. *See* NYCHA Complaint at ¶ 33.  NYCHA alleges that Type O mortar was unsuitable for repointing the brick facades of the Parkside Houses buildings, and caused and/or exacerbated water intrusion into the facades. *See* NYCHA Complaint at ¶ 30-31. NYCHA further alleges that poor workmanship by Navillus exacerbated the use of inappropriate mortar

8

and the resulting leaks into the Parkside Houses facades. *See* NYCHA Complaint at ¶ 35.  The NYCHA Complaint asserts breach of contract and professional malpractice causes of action against Cowi, as well as breach of contract and negligence causes of action against Navillus, and seeks damages against both in an amount not less than $11,900,000.00. NYCHA Complaint at ¶ 37-64.

### F.    NYCHA Had Actual Knowledge of the Claims Asserted in the State Court Action Before the Petition Date and Before the Gov't Bar Date

27.    NYCHA learned before the Petition Date, and at a time when work under the NYCHA Contract was close to complete, that there was substantial water intrusion into Parkside Houses apartments through brick facades of the Parkside Houses buildings where work under the NYCHA Contract had recently been performed.

28.    In this regard, on July 14, 2017, NYCHA issued Change Order No. 6 to the NYCHA Contract in the total amount of $388,249.92 requiring Navillus to apply water sealer to brick facades and to caulk windows at Parkside Houses.  Change Order No. 6 states, in relevant part, that the change "is required to address unanticipated water intrusion to six buildings at Parkside Houses."  *See* Maddock Declaration ¶ 11, and **Exhibit D** thereto.

29.    There was detailed discussion of water infiltration complaints at a project progress meeting held in connection with the NYCHA Contract on July 28, 2017, attended by NYCHA, Cowi and Navillus, among others. *See* Maddock Declaration ¶ 12 and **Exhibit E** thereto.   The meeting minutes, at pages 5 – 7, state, among other things:

> After the rainstorm on Friday 5/5/17, a number of water complaints were received.  Some were in other apartments at the same corners we had already previously performed additional work.  Some were even in the same apartments that we had just addressed with the recent additional work at the corners of Building Nos. 5, 6 and 11. * * *
> It was noted that no Report has been issued by Gandhi [n/k/a Cowi Consulting] assessing the water infiltration issues.  STV [STV Construction Inc., the project

construction manager] is on record indicating that they do not feel the application of this sealant is the solution to the problem and that this work should be held off until Gandhi issues a Report of their observations and makes recommendations to address the water infiltration issues at Parkside Houses in a more holistic manner.

30.    NYCHA asserts that it retained the services of Superstructures Engineers and Architects in 2019 ("**Superstructures**") to investigate the water intrusion problems at Parkside Houses. NYCHA Complaint, ¶ 28.    Significantly, Navillus had no knowledge of the Superstructures investigation or report until after the service of the NYCHA complaint on Navillus in November 2020 and its review of the NYCHA Complaint.  *See* Maddock Declaration ¶ 13.    Navillus did not receive a copy of the report, issued November 5, 2019 and entitled "Exteriors Conditions Report" on Parkside Houses (the "Superstructures Report") until on or about March 15, 2021 after counsel for Navillus in the State Court Action pressed counsel for NYCHA for the production of the report and appendices.  NYCHA has still not provided Navillus with the appendices to the report.  *See* Maddock Declaration ¶ 13.  A copy of the Superstructures Report is attached to the Maddock Declaration as **Exhibit F**.

31.    The Superstructures Report, although issued in November 2019, reveals that Cowi prepared a Water Infiltration Investigation Report on Parkside Houses in August 2017 "immediately after [the] 2015-2016 façade and roof repair work was completed (Refer to Appendix E)." *See* Superstructures Report, page 3.  The Water Infiltration Investigation Report prepared by Cowi in August 2017 found façade deficiencies, including distressed brick masonry and deteriorated mortar joints. *See* Superstructures Report, page 3.

32.    Navillus had no knowledge of Cowi's August 2017 Water Infiltration Report until it received and reviewed the Superstructures Report on or about March 15, 2021.  *See* Maddock Declaration ¶ 15.

10

33.    Additionally, inspections of many residential apartments in the Parkside Houses in January and February 2018 were conducted to document reported leaks. *See* Maddock Declaration ¶ 16 and Superstructures Report, page 3.

34.    Despite (a) NYCHA's detailed knowledge of numerous and extensive water infiltration through the brick facades of Parkside Houses before the completion of work under the NYCHA Contract in July and August 2017, (b) the inspection of many apartments at Parkside Houses in January and February 2018 with reported water intrusion and (c) the timely service of notice of Gov't Bar Date at two addresses, NYCHA failed to file a proof of claim against Navillus alleging any claims for poor workmanship or otherwise under the NYCHA Contract before the Gov't Bar Date.

35.    In addition to the service of the Bar Date Notice on NYCHA, there is no doubt that NYCHA had actual knowledge of the Gov't Bar Date since NYCHA filed the NYCHA Proof of Claim against Navillus for contribution and indemnification against Navillus arising from several personal injury claims alleged by individuals against NYCHA.

36.    On or about April 12, 2018, NYCHA filed the NYCHA Proof of Claim. The NYCHA Proof of Claim asserted that Navillus was obligated to defend, indemnify and hold NYCHA harmless from any liability in three personal injury actions against NYCHA arising out of the work performed under contracts with Navillus (not including the NYCHA Contract). The NYCHA Proof of Claim was resolved by the *Stipulation and Order Resolving Claim No. 115 Filed by the New York City Housing Authority Against Navillus Tile, Inc.* [ECF No. 742], entered on November 14, 2018.[2] *See* Maddock Declaration at ¶ 17. A copy of the Stipulation is attached to the Maddock Declaration as **Exhibit G**.

---

[2] NYCHA alleged another indemnity claim against Navillus in state court arising from a personal injury action. *See, e.g., Fernandez v. New York City Hous. Auth.*, 2020 N.Y. Misc. LEXIS 2225 (Sup. Ct., Bronx County 2020) (the

37.     NYCHA did not file any requests for payment of administrative expense claims against Navillus before or after the Administrative Expense Claims Bar Date.

## RELIEF REQUESTED

38.     The State Court Action initiated by NYCHA violates the Discharge and Plan Injunction of the Plan and Confirmation Order.  Navillus files this Motion for entry of an order, in substantially the form attached hereto as Exhibit A, (a) reopening the Chapter 11 Case for the limited purpose of enforcing the Discharge and Plan Injunction and (b) enforcing the Discharge and Plan Injunction against NYCHA by requiring NYCHA to discontinue the State Court Action against Navillus with prejudice.

## BASIS FOR RELIEF

**I.     Reopening the Chapter 11 Case is Appropriate To Enforce the Discharge and Plan Injunction and This Court is the Proper Forum to Enforce Such Provisions**

39.     Bankruptcy Rule 5010 provides, in pertinent part, that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."

40.     Section 350(b) of the Bankruptcy Code, in turn, provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

---

"**Fernandez Action**"). In the Fernandez Action, the Supreme Court of New York, Bronx County, found that "Navillus failed to establish that Navillus served the Proof of Claim and the Bar Date Notice to a specific officer or person or department or division of NYCHA." The court further found that such failure barred Navillus from asserting the bankruptcy discharge against NYCHA as a basis to dismiss the Fernandez Action. The decision in the Fernandez Action has no bearing on this case, however. The court in the Fernandez Action issued its decision on the basis that NYCHA made a demand for assumption of defense and indemnification against Navillus' insurance providers in connection with the Fernandez Action *before* Navillus' bankruptcy filing and, in so doing, NYCHA's counsel in the Fernandez Action was known to Navillus and should have specifically received the Bar Date Notice. Here, however, the State Court Action was commenced more than two years after Navillus' discharge from bankruptcy and NYCHA did not make a demand, pre-petition or post-petition, on Navillus' insurers in connection with the claims asserted in the State Court Action.

41.     According to the Advisory Committee Notes to the 1991 Amendments to  Rule 3022 of the Federal Rules of Bankruptcy Procedure, "[a] final decree closing the case . . . does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code."

42.     Here, the Final Decree specifically provides that "pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the above-captioned chapter 11 case is hereby closed; provided, however, that entry of this Final Decree is without prejudice to the rights of any party in interest to seek to reopen this chapter 11 case for cause shown including in connection with the matters for which the Court retained jurisdiction under Article XI of the Plan." See Final Decree at ¶ 2.

43.     Under Article XI of the Plan, this Court expressly retained exclusive jurisdiction to, among other things, "hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Plan, including without limitation the enforcement of the injunction provisions contained in Article XII of the Plan…". *See Plan* Section 11.01(f); see also Confirmation Order at ¶ 27 ("This Court hereby retains jurisdiction for the purposes set forth in Article XI of the Plan, for such other purposes as may be necessary to aid in the confirmation, consummation and implementation of the Plan, and for any purpose for which this Court previously retained jurisdiction by any prior order of this Court.")

44.     The foregoing provision of the Plan is in keeping with the law in the Second Circuit that a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *In re Petrie*, 304 F.3d 223, 230 (2d Cir. 2002).

45.     Consistent with this principle, it is well settled that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders, including as to plan injunctions. *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *see also Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995) ("A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction and, therefore, should not abstain from doing so"); *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010) (holding that the Bankruptcy Court, rather than the District Court in Arkansas, was the proper forum in which to litigate the scope of the plan injunction and third party release).

46.     "[W]here a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.'" *In re Residential Capital, LLC*, 508 B.R. 838, 849–50 (Bankr. S.D.N.Y. 2014) (*citing In re Petrie Retail, Inc*., 304 F.3d 223, 230 (2d Cir. 2002)).

47.     This Court is intimately familiar with the facts and circumstances related to confirmation of the Plan, including the facts and circumstances related to approval of the Discharge and Plan Injunction.

48.     Accordingly, Navillus respectfully requests that the Court exercise its discretion and reopen the Chapter 11 Case for the limited purpose of enforcing the chapter 11 discharge and Plan Injunction and stop NYCHA's willful violation of the Plan and Confirmation Order.

FF\11427959.8

## II.    NYCHA Asserts Pre-Petition Claims Against Navillus that Are Barred by the Discharge and Plan Injunction

49.    The State Court Action arises out of a pre-petition contract, the NYCHA Contract, and asserts claims on account of pre-petition conduct on the part of Navillus.  As a result, those claims are subject to the Discharge and Plan Injunction.

50.    The definition of the word "claim" in section 101(5) of the Bankruptcy Code is to be broadly interpreted and includes contingent and unmatured claims. "Congress unquestionably expected this definition to have wide scope"; indeed, the United States Supreme Court has "noted Congress' intent to invest the term 'claim' with the 'broadest possible' scope so that 'all legal obligations of the debtor . . . will be able to be dealt with in a bankruptcy case." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 496–97 (2d Cir. 1995) (*citing Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990)). *See also In re Manville Forest Prods. Corp.*, 225 B.R. 862, 865 (Bankr. S.D.N.Y. 1998) ("In explaining the intended definition of 'claim' under the Code, the House and Senate Reports provide '[b]y this broadest possible definition [of claim] . . . all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" (quoting H.R. Rep. No. 95–595, at 309 (1977))), aff'd, 209 F.3d 125 (2d Cir. 2000).[3]

### A.    NYCHA's Negligence Claim Against Navillus Is Barred

51.    In *Tronox Inc. v. Anadarko Petroleum Corp.*, 2021 U.S. Dist. LEXIS 31208 (S.D.N.Y. 2021), the court held that, for bankruptcy purposes, a claim arises from a debtor's pre-petition conduct that causes post-petition injury if such claim (1) "arose before the filing of the

---

[3] This broad definition "performs a vital role in the reorganization process by requiring, in conjunction with the bar date, that all those with a potential call on the debtor's assets, provided the call in at least some circumstances could give rise to a suit for payment come before the reorganization court so that those demands can be allowed or disallowed and their priority and dischargeability determined." *In re Kings Terrace Nursing Home & Health Related Facility*, 184 B.R. 200, 204 (S.D.N.Y. 1995) (internal citations omitted).

FF\11427959.8

petition or resulted from pre-petition conduct fairly giving rise to the claim" and (2) there is "some minimum contact" or "relationship" between debtor and claimant "such that the claimant is identifiable." (citing to *Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016)); *see also Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275 (5th Cir.1994) ("a claim arises at the time of the negligent conduct forming the basis for liability only if the actor had some type of specific relationship with the debtor at that time").

52.     *In re Orleans Homebuilders, Inc.*, 561 B.R. 46 (Bankr. D. Del. 2016) involved a condominium association owner of a 51-building residential development that sued the developer and contractor which designed and constructed the buildings alleging defects, deficiencies and breaches of warranties in the construction.   Construction began in 2004 and was completed in 2008.  The residential units were sold beginning in 2005 and ending in 2009.  The developer and contractor filed chapter 11 in early 2010 and confirmed their plan of reorganization in late 2010, which became effective in early 2011.  Two years later, in February 2013, the condominium association filed its state court action against the debtors and others on the alleged defects, deficiencies and breaches of warranty.  The reorganized debtor filed a motion in bankruptcy court to enforce the injunction contained in its chapter 11 plan of reorganization by requiring the condominium association to discontinue the action.  The court held that "a claim arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *Id*. at 52. As a result, the court found that the conduct underlying the condominium association's claims occurred before the debtors filed chapter 11 in 2010, and were pre-petition claims.  The condominium association was barred, held the court, from commencing or continuing its litigation based on the plain language of the debtor's plan discharge and injunction.

16

53.      The case of *Hassanally v. Republic Bank*, 208 B.R. 46 (9th Cir. B.A.P. 1997) is also instructive here. In *Hassanally*, the debtor constructed a building complex and after completion of the building the debtor filed for chapter 11 bankruptcy protection, which case was later converted to one under chapter 7 of the Bankruptcy Code. Post-bankruptcy, the debtor's bank foreclosed on the building and two years later filed an action in state court alleging negligent construction of the complex. The bank stated that it did not discover the construction defects and the debtor's negligent conduct of the construction until after the bankruptcy case was closed.  The debtor moved to reopen its bankruptcy case for the purpose of enforcing the discharge injunction. The issue before the court was whether Bankruptcy Code Section 524 enjoined the bank from pursuing its state law cause of action against the debtor for negligent construction because its claim was actually a prepetition claim under federal law that had been discharged. The court in *Hassanally* held that negligent construction actions implicitly recognize that the claim's origin was at the time of the wrongful conduct and that it was that alleged negligent conduct which formed the basis of the contingent claim. The fact that the consequences of the wrongful conduct materialized at a later date, and were unknown to the bank pre-petition, did not metamorphose the preexisting wrongful conduct into future conduct.

54.      In this case, NYCHA's negligence claim against Navillus in the State Court Action arises from pre-petition conduct:  alleged poor workmanship in construction work performed and completed pre-petition.  The NYCHA Contract, entered into in August 2015 and performance completed by September 1, 2017, establishes that (a) the conduct giving rise to the claim was pre-petition and (b) Navillus and NYCHA had identifiable substantial contacts and a relationship pre-petition.

55.     Accordingly, NYCHA's negligence claim is a pre-petition claim subject to the Plan Discharge and Injunction even if the water damage allegedly caused by Navillus' construction work did not manifest itself until after the Plan was confirmed and became effective.

56.     Notably, here NYCHA had actual pre-petition knowledge of the water damage claims at Parkside Houses allegedly caused by Navillus' alleged poor workmanship, at or about the time the NYCHA Contract construction work was completed by September 1, 2017.  As described above and in the Maddock Declaration, (a) NYCHA issued Change Order No. 6 on July 14, 2017 requiring Navillus to apply water sealer to brick facades at Parkside Houses, (b) NYCHA, Navillus and others discussed water infiltration complaints at a project progress meeting held on July 28, 2017 and (c) Cowi prepared its Water Infiltration Report for NYCHA in August 2017, finding façade deficiencies, including distressed masonry and deteriorated mortar joints.  All of these occurrences transpired prior to the Petition Date. As a result, NYCHA had sufficient actual knowledge of significant water infiltration and water damage problems at the Parkside Houses at the time of the substantial completion of work under the NYCHA Contract to file a timely proof of claim in the Chapter 11 Case asserting a claim for negligent work by Navillus.

57.     In the event that the Court, for any reason, finds that NYCHA did not have actual knowledge of Navillus' alleged negligence pre-petition, the decisions cited above establish that the negligence claim was nevertheless a pre-petition claim barred by the Discharge and Plan Injunction.   As in *Hassanally*, the fact that Navillus' alleged negligent conduct materialized and caused damage at a later date would not metamorphose the pre-petition negligent conduct into a post-confirmation claim.

FF\11427959.8

### B. NYCHA's Breach of Contract Claim Against Navillus Is Barred

58.     Likewise, because the breach of contractual claim asserted by NYCHA in the State Court Action against Navillus arises from a pre-petition contract that was fully performed pre-petition, that claim is a pre-petition claim subject to the Discharge and Plan Injunction. *See Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) ("[T]he clear weight of case law in this Circuit . . . recognizes that contract-based bankruptcy claims arise at the time the contract is executed."). In *Caldor*, a vendor for the debtor argued that its claim for a debtor's breaches of certain purchase orders "arose" when the debtor breached those orders. Id. at 580. The court disagreed, holding that, in line with well-established precedent in the Second Circuit, the vendor's claim arose as a contingent claim at the time the parties entered the underlying contract. Id. at 581-82. Similarly, in *In re Manville Forest Products. Corp.*, the Second Circuit held that an indemnity claim arose pre-petition "upon the signing of the indemnity agreements" and not post-petition, when the indemnitee incurred liability. 209 F.3d 125, 129-30 (2d Cir. 2000). In so holding, the Second Circuit reasoned that "[t]he fact that the contingency . . . materialized post-petition does not transmogrify the claim into a post-petition claim, but merely means that the contingent claim moved closer to becoming liquidated upon the happening of that contingency." Id. at 129; *see also In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 687, 696 n.12 (Bankr. S.D.N.Y. 1992) ("Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as

a prepetition liability where the contract was executed prepetition.") (quotation marks omitted); *Pension Ben. Guarantee Corp. v. LTV Corp.*, 87 B.R. 779, 796 (S.D.N.Y. 1988) (same).

59.     As with the negligence claim, NYCHA had more than sufficient actual knowledge of significant water infiltration and water damage problems at the Parkside Houses at the time of the completion of work under the NYCHA Contract to file a timely proof of claim in the Chapter 11 Case alleging breach of contract by Navillus.

60.     In the event that the Court, for any reason, finds that NYCHA did not have actual knowledge of Navillus' alleged breach of contract pre-petition, the decisions cited above establish that the breach of contract claim was a pre-petition claim barred by the Discharge and Plan Injunction.

61.     Separate and apart from NYCHA's failure to file a proof of claim against Navillus in the Chapter 11 Case, NYCHA did not object to the confirmation of the Plan despite receiving notice of the confirmation hearing.  As a result, it is barred from collaterally attacking the discharge and injunction provisions of the Plan and Confirmation Order. *See In re Residential Capital, LLC*, 508 B.R. at 846-47 ("Confirmation of a plan operates as a final judgment for res judicata purposes. Under the doctrine [of res judicata], questions concerning the treatment of any creditor under the plan, discharge of liabilities, or disposition of property, may no longer be raised after plan confirmation. These issues must be raised in the context of objections to confirmation of the plan." (citation omitted)).

62.     Since NYCHA's negligence and breach of contract claims were matured or contingent pre-petition claims, NYCHA's claims in the State Court Action are barred by the Discharge and Plan Injunction. The State Court Action against Navillus should therefore be dismissed with prejudice.

## **NOTICE**

63. No trustee or examiner has been appointed in the Chapter 11 Case. Navillus has provided notice of the filing of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to NYCHA; and (c) counsel to Cowi. Due to the nature of the relief requested, Navillus respectfully submits that no further notice of this Motion is required.

## **NO PRIOR REQUEST**

64. No prior request for the relief sought in this Motion has been made to this or any other court.

[<em>Remainder of page intentionally left blank</em>.]

FF\11427959.8

## **CONCLUSION**

WHEREFORE, Navillus, as the reorganized debtor, respectfully requests that the Court grant the relief requested herein, in substantially the form attached hereto as Exhibit A, and such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
       May 10, 2021               FARRELL FRITZ, P.C.


                        By: /s/ *Martin G. Bunin*
                            Martin G. Bunin
                            Veronique A. Urban
                            622 Third Avenue, 37th Floor
                            New York, New York 10017
                            Tel:  (212) 687-1230
                            Fax:  (646) 237-1810

                            *Attorneys for Navillus Tile, Inc. d/b/a*
                            *Navillus Contracting*

FF\11427959.8

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                     Chapter 11

Navillus Tile, Inc., DBA Navillus Contracting,            Case No. 17-13162 (SHL)

                       Debtor.
--------------------------------------------------------x

### ORDER (I) REOPENING BANKRUPTCY CASE FOR THE LIMITED PURPOSE OF ENFORCING THE CHAPTER 11 DISCHARGE AND PLAN INJUNCTION AND (II) ENFORCING THE CHAPTER 11 DISCHARGE AND PLAN INJUNCTION

Upon the *Motion for an Order (I) Reopening Bankruptcy Case for the Limited Purpose of Enforcing the Chapter 11 Discharge and Plan Injunction and (II) Enforcing the Chapter 11 Discharge and Plan Injunction*[1] filed by Navillus Tile, Inc., d/b/a Navillus Contracting; and the Court having considered the Motion and all related pleadings and documents; and the Court having found that adequate notice of the Motion has been given, and that no other or further notice of the Motion is required, under the circumstances; and the Court having determined that jurisdiction exists over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Article XIIs of the Plan and paragraph 19 ands of the Confirmation Order and that venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and good and sufficient cause appearing therefor, it is hereby:

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that, in accordance with section 350(b) of the Bankruptcy Code and Bankruptcy Rule 5010, the above-captioned case is reopened for the limited purpose of considering motions or other pleadings to enforce the chapter 11 discharge and Plan Injunction; and it is further

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED** that, the New York City Housing Authority is hereby enjoined from the continued prosecution of the State Court Action pending in the Supreme Court of New York, New York County, in the action *New York City Housing Authority v. COWI Consulting, Inc. f/k/a Gandhi Engineering, Inc. and Navillus Tile, Inc. d/b/a Navillus Contracting*, Index No. 451637/2020 (Sup. Ct, New York County); and it is further

**ORDERED** that, Navillus is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order; and it is further

**ORDERED** that, notwithstanding the possible applicability of Bankruptcy Rules 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and be it further

**ORDERED** that upon disposition of such motions or pleadings by the Court, Navillus may submit an order closing the Chapter 11 Case under certification of counsel  without further notice or hearing; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

2