UNITED STATES BANKRUPTCY COURT                    FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                                            Chapter 11

Navillus Tile, Inc., d/b/a Navillus Contracting,                  Case No. 17-13162 (SHL)

                                    Debtor.
--------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**FARRELL FRITZ, P.C.**
*Attorneys for Debtor*
622 Third Avenue, 37th Floor
New York, NY 10017
By:      Martin G. Bunin
             Veronique A. Urban

**NEW YORK CITY HOUSING AUTHORITY**
*Lisa Bova-Hiatt, Executive Vice President for*
*Legal Affairs & General Counsel*
90 Church Street, 11th Floor
New York, NY 10007
By:      Karen R. Cross, of Counsel

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Reorganized Debtor's Motion for an Order (I) Reopening [the]

Bankruptcy Case for the Limited Purpose of Enforcing the Chapter 11 Discharge and Plan

Injunction and (II) Enforcing the Chapter 11 Discharge and Plan Injunction (the "Motion") [ECF

No. 821].[1]  In this confirmed Chapter 11 case, the Debtor seeks to reopen this case so as to

invoke the bankruptcy discharge to bar pending litigation against it.  More specifically, the

---

[1]       Unless otherwise indicated, references to the Case Management/Electronic Case Filing ("ECF") docket are
to Case No. 17-13162.

Debtor contends that an action commenced against it by the New York City Housing Authority ("NYCHA") in the Supreme Court of New York is barred by the discharge and permanent injunction contained in the Consensual Amended Chapter 11 Plan of Reorganization of Navillus Tile, Inc. d/b/a Navillus Contracting under Chapter 11 of the Bankruptcy Code (the "Plan") [ECF No. 686 at 29 of 84] and in the Plan's confirmation order (the "Confirmation Order") [ECF No. 686].  For the reasons discussed below, the Motion is granted in all respects.

## **BACKGROUND**

The relevant facts are taken from the parties' submissions and are not in dispute.  The Debtor filed for Chapter 11 relief on November 8, 2017.  ECF No. 1.  In January 2018, the Court entered the Bar Date Order establishing, among other things, a May 7, 2018 bar date for governmental units to file proofs of claim (the "Gov't Bar Date").  ECF No. 170.  The Confirmation Order was entered in October 2018.  *See* Confirmation Order.  In relevant part, the Plan and Confirmation Order (1) discharge all claims and causes of action arising before the Plan's effective date[2] (the "Discharge") and (2) permanently enjoin, after the Plan's effective date, "all Persons who have held, hold or may hold Claims [or] Causes of Action . . . and all other parties in interest" from, among other things, "commencing or continuing in any manner any action or proceeding of any kind with respect to any such Claims [or] Causes of Action against [the Debtor] . . . and prosecuting or otherwise asserting any Claim [or] Cause of Action . . . that has been . . . discharged . . . pursuant to the Plan or the Confirmation Order" (the "Plan Injunction").  *See* Confirmation Order ¶¶ 19–20; Plan at 76–77 of 84.

---

[2] The effective date of the Plan occurred on October 26, 2018.  *See* ECF No. 716.

The Plan defines "Claim" and "Causes of Action" broadly.  A "Claim" covers "any

'claim' against Navillus, whether or not asserted, known or unknown, as such term is defined in

section 101(5) of the Bankruptcy Code."  Plan at 36 of 84.  "Causes of Action" include

> any and all actions, causes of action, . . . claims, . . . or any other claims
> whatsoever, whether known or unknown, reduced to judgment or not reduced to
> judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured,
> disputed or undisputed, secured or unsecured, choate or inchoate, existing or
> hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether
> asserted or assertable directly, indirectly or derivatively, at law, in equity or
> otherwise, based in whole or in part upon any act or omission or other event
> occurring prior to the Petition Date or during the course of the Chapter 11 Case,
> including through the Effective Date . . . .

*Id.*

More than two years before the Debtor filed its Chapter 11 petition, the Debtor entered

into a contract with NYCHA for "exterior restoration and roofing replacement and related work"

at NYCHA's Parkside Houses in the Bronx, New York (the "Contract").  *See generally* ECF No.

835; *see also* Motion at 7–8; New York City Housing Authority's [Amended] Opposition to

Reorganized Debtor's Motion ("NYCHA's Opposition") at 7–8 of 24 [ECF No. 830].  Toward

the end of the project in April 2017, NYCHA began receiving water damage complaints from

residents of the Parkside Houses and, in July 2017, issued a change order directing the Debtor to

perform additional work to address the water infiltration issues.  *See* Motion at 9; NYCHA's

Opposition at 8–9 of 24; Reply of Reorganized Debtor to Opposition of New York City Housing

Authority to Motion at 19 of 24 (the "Debtor's Reply") [ECF No. 831].  The Debtor completed

all the work under this change order by the end of July 2017 and substantially completed all its

work under the Contract in September 2017.  *See* NYCHA's Opposition at 9 of 24; Motion at 8;

Debtor's Reply at 19 of 24.  The Contract was closed out after the completion of the work

requested in the change order, and NYCHA is unaware of any further communication between

the Debtor and NYCHA after the Contract was closed out. *See* Hr'g Tr. 30:3–31:14, Aug. 12, 2021 [ECF No. 834].

After filing its Chapter 11 petition, the Debtor served NYCHA with notice on three different occasions of events in this bankruptcy case: (1) the commencement of the Chapter 11 case in late November 2017; (2) the Gov't Bar Date, which included a proof of claim form, in January 2018; and (3) the confirmation hearing in August 2018. *See* Motion at 7; NYCHA's Opposition at 9–10 of 24; Affidavit of Service for Commencement of Chapter 11 Case at 1–2 of 43, 29 of 43 [ECF No. 94]; Affidavit of Service for Proof of Claim Form and Bar Date Notice at 1–2 of 67, 28 of 67 [ECF No. 195]; Affidavit of Service for Confirmation Hearing at 1–4 of 65, 22 of 65 [ECF No. 623]. Each of these notices were sent by first class mail to NYCHA at two addresses: 250 Broadway, New York, NY 10007 and 90 Church Street, New York, NY 10007. *Id.* NYCHA's Law Department was located at 250 Broadway at the time the Chapter 11 case was commenced; it is now located at 90 Church Street. *See* NYCHA's Opposition at 10 of 24 n.1.

Additionally, the Debtor served the Bar Date Notice and proof of claim form on Thomas Catalano, Esq., of Lester, Schwab, Katz & Dwyer, LLP, who was outside counsel for NYCHA in a personal injury action—unrelated to the Contract—in which NYCHA sought indemnification and defense from the Debtor's insurer. *See* NYCHA's Opposition at 10–11 of 24, 15 of 24; Debtor's Reply at 13 of 24. After receiving service, Mr. Catalano's firm filed Proof of Claim No. 115 asserting that the Debtor was obligated to provide defense and indemnification in that personal injury matter. *See* NYCHA's Opposition at 11 of 24. The Debtor and NYCHA entered a stipulation of settlement in which that personal injury claim was to be resolved in state court. *See* Stipulation and Order Resolving Claim No. 115 [ECF No. 742].

In August 2020—over two years after the Gov't Bar Date and nearly two years after confirmation—NYCHA commenced a state court action in New York against the Debtor for breach of the Contract and negligence related to the Debtor's performance under the Contract. NYCHA's Opposition at 13–14 of 24; Motion at 8–9.  This state court action appears to stem from a November 2019 report issued by Superstructures Engineers and Architects ("Superstructures").  That report concluded that an architectural and engineering company, Cowi Consulting, Inc., recommended the wrong type of mortar to be used during the Contract on the building facades of the Parkside Houses and that the Debtor's poor workmanship exacerbated the mortar deficiencies.  *See* NYCHA's Opposition at 12–13 of 24; Motion at 10.  The Debtor denies having any knowledge of the Superstructures report until after the state court action was initiated, a fact that NYCHA does not dispute.  *See* Motion at 10; NYCHA's Opposition at 19 of 24.

The Debtor now seeks the entry of an order (1) reopening its Chapter 11 case for the limited purpose of enforcing the Discharge and Plan Injunction, and (2) enforcing the Discharge and Plan Injunction by requiring NYCHA to discontinue its state court action against the Debtor with prejudice.  *See* Motion at 12.

## DISCUSSION

### I.    Alleged Lack of Notice of the Bar Date

Before discussing whether there is cause to reopen the Debtor's bankruptcy case and whether NYCHA's state court claims are subject to the Discharge and Plan Injunction, the Court must first determine the threshold issue of whether the Debtor provided NYCHA with appropriate notice of the Debtor's bankruptcy filing and the Gov't Bar Date.  If NYCHA did not

receive such notice, then NYCHA could not be bound by the Debtor's Plan Injunction or subject

to the Discharge and reopening the case would serve no purpose.

The constitutional standard for due process requires that known creditors in a bankruptcy

case receive actual notice of a debtor's bankruptcy filing and the bar date.[3]  *See In re AMR*

*Corp.*, 2016 WL 1068955, at *2 (Bankr. S.D.N.Y. Mar. 17, 2016) (citing *City of New York v.*

*N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 296–97 (1953)); *In re Motors Liquidation Co.*, 576 B.R. at

773.  "Known creditors . . . must be afforded notice 'reasonably calculated, under all the

circumstances, to apprise' them of the pendency of the bar date."  *In re R.H. Macy & Co.,* 161

B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (citing *Mullane v. Central Hanover Bank & Trust Co.,*

339 U.S. 306, 314 (1950)).  "[I]f a creditor is not given reasonable notice of the bankruptcy

proceeding and the relevant bar dates, its claim cannot be constitutionally discharged."  *In re*

*U.S.H. Corp.,* 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998).  In Chapter 11, therefore, a known

creditor must receive proper, adequate notice before its claim is barred forever.  *See In re Best*

*Prod. Co., Inc.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992).  But the bar date is strictly enforced

if a known creditor receives notice of the bar date.  *Id.* at 358.

It is well-settled that proof that a properly addressed letter placed in the mail system

"creates a presumption that the letter was received in the usual time by the addressee."  *In re*

*AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) (citing *Hagner v. United States,* 285

U.S. 427, 430 (1932)).  Thus, upon proof of mailing a properly addressed letter, a rebuttable

presumption of receipt arises.  *See R.H. Macy,* 161 B.R. at 359–60; *In re Worldcom, Inc.*, 2005

---

[3]    The Debtor does not argue that NYCHA was an unknown creditor, which would make NYCHA subject to a lesser standard for notice than a known creditor.  *See In re Motors Liquidation Co.*, 576 B.R. 761, 773 (Bankr. S.D.N.Y. 2017), *aff'd*, 599 B.R. 706 (S.D.N.Y. 2019) ("If the creditor is 'unknown' to the debtor . . .  constructive notice is generally sufficient.  Constructive notice can be satisfied through publication notice since 'in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.'") (citations omitted).

WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005) (noting that a "rebuttable presumption that
an addressee received a mailed notice arises when the mailing party submits sufficient evidence
to demonstrate the notice was properly addressed and mailed").  If the mail comes back
undeliverable then the sender will not be entitled to the presumption.  *See In re Residential
Capital, LLC,* 2015 WL 2256683, at *8 (Bankr. S.D.N.Y. May 11, 2015) (holding that the Court
cannot presume that notice was received when the notice documents were returned as
undeliverable).

Federal courts in New York have held "quite uniformly" that a statement merely claiming
that the letter was not received does not rebut the presumption of receipt created by proof of
mailing.  *See In re Malandra,* 206 B.R. 667, 673 (Bankr. E.D.N.Y. 1997); *R.H. Macy,* 161 B.R.
at 360 ("Movants' respective self-serving submissions asserting non-receipt . . . [are] insufficient
to rebut the . . . presumption of receipt."); *In re Horton,* 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992)
(noting that "affidavits of [creditor's] employees stand merely as general denials that [creditor]
received the [n]otice and are therefore insufficient to rebut the presumption of receipt").
However, testimony denying receipt of a letter that is also accompanied by objective evidence—
such as mail tracking procedures—can rebut the presumption of mailing.  *See Hogarth v. N.Y.C.
Health & Hosps. Corp.,* 2000 WL 375242, at *4–5 (S.D.N.Y. Apr. 12, 2000) (holding that the
claimant successfully rebutted the mailbox presumption by presenting detailed logs of incoming
and outgoing mail that contained no record of the letter in question**)**; *see also In re Robinson,* 228
B.R. 75, 82 (Bankr. E.D.N.Y. 1998) ("[a]lthough the mere denial of receipt does not rebut the
presumption, testimony denying receipt in combination with evidence of a standardized
procedure for processing mail can be sufficient to rebut the presumption").  Likewise, the
presumption may be rebutted by denial of receipt supported by evidence "that the regular office

practice was not followed or was carelessly executed so the presumption that notice was mailed

becomes unreasonable." *Meckel v. Cont'l Res. Co.,* 758 F.2d 811, 817 (2d Cir. 1985).

Because the bar date is such a significant tool of order and efficiency for all parties

involved in a reorganization, "[c]ourts in the Second Circuit do not take [the presumption created

by proof of mailing of a bar date order] lightly." *In re AMR Corp.*, 2014 Bankr. LEXIS 4314, at

*6 (Bankr. S.D.N.Y. Oct. 9, 2014). Case law in this Circuit "recognizes that if a party was

permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing

simply by giving an affidavit to the contrary, the scheme of deadlines and bar dates under the

Bankruptcy Code would come unraveled." *Id.* Thus, "'[e]vidence of an objective nature going

beyond the claimant's statement of non-receipt is necessary.'" *In re Greenberg*, 526 B.R. 101,

105 (Bankr. E.D.N.Y. 2015) (quoting *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (S.D.N.Y.

2012)).

Applying these principles here, the Court finds that NYCHA received appropriate notice.

It is undisputed that the Debtor served NYCHA with actual notice via first class mail of the

Debtor's bankruptcy filing and the Gov't Bar Date in two locations: NYCHA's 250 Broadway

and 90 Church Street offices. The Debtor also served NYCHA's outside counsel in a separate

matter, Mr. Catalano, with notice via first class mail of the bar date. Given these facts, the

Debtor is clearly entitled to the rebuttable presumption that NYCHA received these filings.

NYCHA has not submitted any evidence as to tracking procedures for the receipt of its mail or

disputed that its offices were located at the two addresses that were served. NYCHA contends,

however, that notice here was inadequate for two reasons: (1) the notices addressed to NYCHA

were not addressed to any particular floor, department, division, or employee of NYCHA and,

thus, were not reasonably calculated to notify the appropriate department of claims related to the

Contract; and (2) all the notices were insufficient to apprise NYCHA of the nature of the claim to be discharged.  *See* NYCHA's Opposition at 15–20 of 24.

In support of its first argument, NYCHA relies on *Fernandez v. NYCHA*, 67 Misc.3d 1220(A) (Sup. Ct. Bronx Co. 2020).  *Fernandez* is a case where NYCHA was the defendant in a personal injury action in the Supreme Court of New York, Bronx County.  *Id.* at *1.  In that case, NYCHA, as third-party plaintiff, sued this same Debtor for defense and indemnification in that personal injury case.  *Id.*  NYCHA argues that the parties in *Fernandez* raised similar issues about the notice of the Gov't Bar Date as they have here.  *Id.*  For instance, the Debtor in *Fernandez* argued that it served NYCHA with notice of the bar date at the both the 250 Broadway and 90 Church Street addresses.  *Id.*  On the other hand, NYCHA asserted that, because the Debtor knew the identity of the outside counsel representing NYCHA in the *Fernandez* case prior to the filing of the Debtor's Chapter 11 case, the Debtor was obligated to serve the notice on NYCHA's outside counsel.  *Id.* at *1, *2.  The *Fernandez* court ultimately held that although NYCHA was served with the proof of claim form and notice of the bar date, the Debtor "failed to establish that [it] served the Proof of Claim and the Bar Date Notice to a specific officer or person or department or division of NYCHA.  Therefore, the Court finds that [the Debtor] has failed to provide the proof of service of the claim notice, the proof of claim form and/or the deadline to file the claim form *to NYCHA's attorney*," and thus "NYCHA was not provided due process."  *Id.* at *2 (emphasis added).

But the *Fernandez* case is distinguishable from this case.  In *Fernandez*, the Debtor failed to serve the counsel that the Debtor knew was representing NYCHA in that very matter prior to the bankruptcy.  *Id.* at *2.  Here, NYCHA does not contend that the Debtor knew the identity of any outside counsel representing NYCHA in *this matter* prior to the bankruptcy.  Moreover, the

Debtor did serve outside counsel for NYCHA on a separate matter with notice of the Gov't Bar

Date and the proof of claim form. *See* NYCHA's Opposition at 10–11 of 24, 15 of 24; Debtor's

Reply at 13 of 24.

While the *Fernandez* court observed that the Debtor failed to serve "a specific officer or

person or department or division of NYCHA," it does not hold that this is a necessary

requirement for adequate service on NYCHA. *Fernandez*, 67 Misc.3d 1220(A), at *2. Indeed,

neither the decision in *Fernandez* nor NYCHA here cite any legal authority in support of the

notion that "[i]n light of NYCHA's organizational structure," the Debtor is required to direct

service to "a specific person, department, or division, on a specific floor." NYCHA's Opposition

at 15 of 24. Indeed, imposing such a requirement for service on NYCHA here is not reasonable

because it would be inconsistent with the service obligations set forth under NYCHA's own

Contract with the Debtor. The Contract specifies the address upon which notice is to be served

on NYCHA as: "[NYCHA's] principal office in New York City." Contract at 148 of 170 [ECF

No. 835-1].[4] Notably, the Contract does not specify an address, let alone a specific person,

department, division, or floor—a point which NYCHA conceded at the hearing. *See id.*; Hr'g Tr.

24:21–24. And once again, NYCHA here does not argue that it was not served at its principal

office in New York City, given the service on 250 Broadway and 90 Church Street. The Court

notes that any confusion about service upon NYCHA in bankruptcy cases in this district could

---

[4] This "Communications" provision in the Contract reads in full:

**Delivery to Authority.** All papers to be delivered to the Authority shall be delivered to its
principal office in New York City, and any notice to and demand upon the Authority shall be
sufficiently given if delivered to the office of the Authority in the City of New York, or
transmitted to the Authority by registered United States mail in a sealed postpaid wrapper, or
delivered with charges prepaid to any nationally recognized courier or delivery service for
transmission.

Contract at 148 of 170.

have been easily remedied if NYCHA provided the Court with a bankruptcy specific address for service of bankruptcy filings as contemplated by Fed. R. Bankr. P. 5003(e).  The Court recommends that NYCHA take such a step.

At the hearing, NYCHA also argued for the first time that service was insufficient because the notice was not sent via registered U.S. mail or by a nationally recognized courier or delivery service as required in the Contract.  Hr'g Tr. 24:24–25:2.  The fact that NYCHA failed to raise this argument in any of its pleadings "alone is a basis to reject the argument."  *In re AMR Corp.*, 598 B.R. 365, 384 (Bankr. S.D.N.Y. 2019); *see also White v. First Am. Registry*, 592 F.Supp.2d 681, 683 (S.D.N.Y. 2009) (refusing to hear arguments that were raised for the first time in reply papers); *Goldberg v. UBS AG*, 690 F.Supp.2d 92, 98–99 (E.D.N.Y. 2010) (stating with respect to an argument raised for the first time at oral argument that because it "was not raised until this late point, defendant cannot raise it now . . . ."); *United States v. Barnes*, 158 F.3d 662, 672 (2d Cir. 1998) ("Normally, we will not consider arguments raised for the first time in a reply brief, let alone at or after oral argument."); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("As to [defendant's] second argument . . . this argument was raised for the first time at oral argument and so was waived in terms of this motion.").  In any event, the order setting the Gov't Bar Date only requires that service be made by first class mail.  *See* ECF No. 170 at 5.[5]  Mail is, in fact, the standard form of service for a bankruptcy bar date order in this district.  *See* the Court's Procedural Guidelines for the Filing Requests for Orders to Set the Last Date for Filing Proofs of Claim,

---

[5]    All the notices discussed in this decision, including notice of the Gov't Bar Date, were sent to NYCHA via first class mail.  *See* Motion at 7; NYCHA's Opposition at 9–10 of 24; Affidavit of Service for Commencement of Chapter 11 Case at 1–2 of 43, 29 of 43; Affidavit of Service for Proof of Claim Form and Bar Date Notice at 1–2 of 67, 28 of 67; Affidavit of Service for Confirmation Hearing at 1–4 of 65, 22 of 65.

https://www.nysb.uscourts.gov/sites/default/files/ProcGuidelinesforFilingReqforOrdersSetLastD
ateforFilingProofsofClaim.pdf.[6]

The Court also rejects NYCHA's second argument that the notices were insufficient to

apprise NYCHA of the nature of the claim to be discharged. This argument rests on the idea that

the Debtor has an affirmative duty to identify NYCHA's potential claims in the bankruptcy

proceeding. *See* NYCHA's Opposition at 17–20 of 24. While that may be true under certain

circumstances, it is not the case given the facts here.

NYCHA relies on *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d

143 (E.D.N.Y. 2012) in support of this argument. While the court in *United Air Lines* explained

that "[a]s a general matter, due process requires notice not just that there is a pending case or

hearing, but of the nature of the charges or claims that will be adjudicated," *United Air Lines*,

871 F. Supp. 2d at 155, this is only half of the court's reasoning in that case. The court went on

to explain that "the ultimate standard for notice is reasonableness," and that a notice rule should

"balance[ ] the competing interests of fairness to claimants and the fresh start offered by Chapter

11 . . . . Such a rule might vary with the parties' respective access to information regarding the

existence of claims against the debtor at the time of bankruptcy." *Id.* at 156–57. The court went

on to describe two scenarios in which a debtor may not need to identify the nature of the claims

to be adjudicated to comply with due process: (1) where a "debtor may be unaware of, and

unable to discover through reasonably diligent efforts, claims against it;" or (2) "where the

---

[6]    The Debtor also argues that NYCHA had actual knowledge of both the claims NYCHA asserted in state court and the Debtor's Chapter 11 case prior to the Gov't Bar Date. *See* Motion at 9; Debtor's Reply at 17 of 24. The Debtor asserts that NYCHA's knowledge is evidenced by, *inter alia*, inspections conducted to document reported leaks in January and February 2018, discussions and draft agreements exchanged between counsel for the Debtor and various attorneys for NYCHA related to a separate contract between the parties between December 2017 and August 2018 in which the Debtor's Chapter 11 case was mentioned, and the fact that NYCHA filed Proof of Claim No. 115 in April 2018. *See* Motion at 11; Debtor's Reply at 18–19 of 24. While such evidence appears persuasive, the Court need not address the Debtor's arguments related to NYCHA's actual knowledge given the Court's conclusion that NYCHA received actual notice.

claimant knew or should have known of its claim at the time of the bankruptcy proceedings." *Id.*
at 157. Indeed, even where a "debtor is aware of certain claims against it due to information
uniquely within its purview" and fails to "notify claimants of the character of those claims," the
claims still may be discharged if "the claimant could have discovered the existence of the claim
through the exercise of reasonable diligence prior to the discharge." *Id.* at 159; *see also id.* at
158 ("creditors are not relieved of their responsibility to diligently investigate what claims they
may have against the debtor—a lack of particularity in the notice will not defeat discharge if the
claims were ascertainable to the claimant through reasonable efforts"); *In re Motors Liquidation
Co.*, 598 B.R. at 753 ("Due process, however, does not obligate a debtor to notify creditors of the
nature or scope of potential claims or to advise creditors regarding the viability or merits of such
claims. To be clear, creditors themselves have the 'responsibility to diligently investigate what
claims they may have against the debtor.'") (quoting *United Air Lines*, 871 F. Supp. 2d at 158).

Applying these principles here, the Court finds that the Debtor had no knowledge of any
claims that NYCHA had—or potentially had—against it. *See* Debtor's Reply at 20 of 24, 21–23
of 24; Motion at 10–11. It is undisputed that NYCHA had no further communication with the
Debtor concerning its work under the Contract or any investigation after the Contract closed. It
is also undisputed that, after the Contract had closed, NYCHA retained Superstructures in 2018
to investigate further reports of water intrusion at the Parkside Houses, an investigation of which
the Debtor was unaware until NYCHA sued the Debtor in August 2020. Given these facts, the
Court finds that NYCHA was the only party with reason to know of any potential claims it had
against the Debtor and, therefore, that the form of notice here was reasonable under the
circumstances. *See* NYCHA's Opposition at 12–13 of 24; Motion at 10; Hr'g Tr. 30:3–31:14.[7]

---

[7]    NYCHA argued for the first time at the hearing that the Debtor should have known about NYCHA's
potential claim in this case because the Debtor was aware of the ongoing action in the *Fernandez* case, discussed

NYCHA's reliance on *Barton Industries* is similarly unavailing.  Similar to this case, it was undisputed in *Barton Industries* that the creditors received actual notice, and the issue before the court was thus "whether, under the particular circumstances, the notices they received were 'of such nature as reasonably to convey the required information.'" *In re Barton Indus., Inc.*, 104 F.3d 1241, 1245 (10th Cir. 1997) (quoting *Mullane,* 339 U.S. at 314).  But unlike this case, the court in *Barton Industries* did not confront the question of whether the debtor was unaware of or unable to discover the claim against it or whether the claimant knew or should have known of its claim.  Rather, *Barton Industries* involved a dispute between secured creditors over their rights to certain insurance premiums and whether one of those creditors received sufficient notice that their rights would be extinguished by the bankruptcy plan. *Id.* at 1243.  On that question, the court concluded that the plan and disclosure statement sent to the affected creditor "did not specifically refer to the return premiums, [the creditor]'s interest therein, or the plan's effect on them." *Id.* at 1246.  Thus, *Barton Industries* turned on the adequacy of the disclosures in the plan and disclosure statement.  That is decidedly not the issue before this Court.

NYCHA also cites *New York, N. H. & H. R. Co.*, 344 U.S. at 297, which is also distinguishable.  The court there addressed whether New York City's *knowledge* of the existence of the debtor's bankruptcy "put[ ] a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims."  But the Debtor here has not relied exclusively upon NYCHA's knowledge of the bankruptcy case as a basis for satisfying notice.  Rather, the Debtor has argued—and the Court has found—that NYCHA was served actual notice of the Gov't Bar Date; the only remaining service question is whether NYCHA had a duty to

---

above, in which another personal injury occurred at NYCHA's Parkside Houses allegedly due to roofing work performed by the Debtor. *See* Hr'g. Tr. 28:17–30:2; *Fernandez*, 67 Misc.3d 1220(A), at *1.  But once again, this argument was not raised in NYCHA's pleadings and, therefore, NYCHA cannot raise it now. *See In re AMR Corp.*, 598 B.R. at 384.

investigate its potential claims against the Debtor once it received that notice.  Similarly, the

court in *In re Ditech Holding Corp.*, 2021 WL 28072, at *10 (Bankr. S.D.N.Y. Jan. 2, 2021) did

not address the same issue now before this Court.  The court in *Ditech* held "that a creditor's

actual knowledge of the pendency of a Chapter 11 case does not impose upon it an affirmative

burden to intervene to present a claim, and that the creditor has a right to formal notice of the

bankruptcy proceedings before his claims are barred forever."  *Id.*  But as NYCHA did receive

formal notice of this bankruptcy proceeding, this Court does not need to address the issue posed

in *Ditech*.  *See id.* at *10–11.

Accordingly, because NYCHA received actual notice of the bankruptcy and the Gov't

Bar Date and "the claims were ascertainable to [NYCHA] through reasonable efforts," the

alleged lack of particularity in the notice does not render the notice here inadequate.  *See United

Air Lines*, 871 F. Supp. 2d at 158.

## II.    Cause Exists to Reopen Debtor's Chapter 11 Case

Having concluded that NYCHA had adequate notice of this bankruptcy case, the Gov't

Bar Date, and the confirmation hearing, the Court turns now to the Debtor's request to reopen the

case.

A bankruptcy case that has been closed may be reopened "to administer assets, to accord

relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  "The Bankruptcy Code does not

specify what constitutes 'other cause' to reopen a closed case; thus, the determination of whether

a case should be reopened for other cause is committed to the 'broad discretion' of the

bankruptcy court."  *In re Atari, Inc.*, 2016 WL 1618346, at *4 (Bankr. S.D.N.Y. Apr. 20, 2016)

(quoting *Batstone v. Emmerling (In re Emmerling),* 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997)).  In

exercising its discretion, a court "may consider numerous factors including equitable concerns,

and ought to emphasize substance over technical considerations." *Id.* (internal quotations

omitted).  Courts in this district look to six factors in determining whether cause exists to reopen

a case:

(1) the length of time that the case was closed;

(2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is
the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that another court
would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the
motion to reopen;

(5) the extent of the benefit to any party by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming if the
motion to reopen is granted.

*Id.* at *4–5 *(citing In re Easley–Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013)).  "The

moving party bears the burden of establishing other cause to reopen." *Id.* (citing *Easley–Brooks*,

487 B.R. at 406).

NYCHA raises arguments as to five of these factors.

**A.  The Length of Time the Case was Closed**

NYCHA argues that this first factor weighs against reopening the case because the

Debtor waited over two and a half years after the bankruptcy estate had been closed before

moving to reopen.  *See* NYCHA's Opposition at 21 of 24.  The Court disagrees.  Although

"courts have recognized that, '[a]s the time between closing of a bankruptcy case and its

reopening increases, so must the cause for reopening increase in weight,'" "nothing in the

Bankruptcy Code or Federal Rules of Bankruptcy Procedure proscribes the time within which a

motion to reopen a closed case must be made."  *In re Atari, Inc.*, 2016 WL 1618346, at *5.

Similar to the circumstances in *Atari*, the Debtor here did not have any reason to seek to reopen this case until NYCHA commenced its action in state court in August 2020—nine months before the Debtor filed the instant motion. *See id.* The "time the case is closed [is] 'not a meaningful factor' during periods where [a] party [does] not have any reason to seek reopening." *Id.* (citing *In re PlusFunds Grp, Inc.,* 492 B.R. 202, 210 n.7 (Bankr. S.D.N.Y. 2013)). NYCHA has not cited any authority, and the Court is aware of none, demonstrating that nine months is a meaningful delay. Indeed, the case law suggests the contrary. *See In re Arana*, 456 B.R. 161, 175–76 (Bankr. E.D.N.Y. 2011) (finding cause to reopen nearly five years after the bankruptcy case was closed); *In re Stein*, 394 B.R. 13, 16, 17–18 (Bankr. E.D.N.Y. 2008) (finding cause to reopen to amend the debtor's Schedule A to list an interest in real property more than eight years after the bankruptcy was closed because the debtor did not realize he owned an interest in the property until approximately ten months before he filed the motion). Even the case relied upon by NYCHA—*In re Neil's Mazel, Inc.*, 492 B.R. 620, 628 (Bankr. E.D.N.Y. 2013)—involved a motion to reopen where the bankruptcy case had been closed for four and one half years. And even in that case, the court was clear that the length of time the case had been closed was not a dispositive factor, but rather meant that the movant "bore a heavy burden of persuasion in seeking to reopen the case." *Id.* Moreover, "even if [the Debtor] did delay in filing the Motion, [NYCHA] must show some prejudice from the delay . . . [and] [t]he mere lapse of time [between the closing of a case and its reopening] does not constitute prejudice." *See In re Atari, Inc.*, 2016 WL 1618346, at *6.

Accordingly, the Court concludes that the length of time this case has been closed is "not a meaningful factor" in its analysis. *See id.* at *5, *6.

## B.  Whether a Nonbankruptcy Forum Has Jurisdiction

As to the second factor, NYCHA contends that this Court is "wholly unfamiliar with the allegations regarding the Contract and [the Debtor]'s Project work," and thus the New York state court is the proper venue for "the fact-intensive issues alleged."  NYCHA Opposition at 21–22 of 24.  The Court disagrees but characterizes the issues differently.  The issues before the Court today are traditional and common bankruptcy questions: whether to reopen a closed case and whether a lawsuit against a debtor is barred by the bankruptcy discharge and injunction in a confirmed plan.  In the Plan and Confirmation Order, this Court retained jurisdiction over such matters.  More specifically, the Court "retain[ed] exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law" to, among other things,

> hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case or the Plan, including without limitation the enforcement of the injunction provisions contained in Article XII of the Plan; . . . enter such orders as may be necessary or appropriate to execute, implement, or consummate . . . the Plan; . . . hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan; . . . issue injunctions, enter or implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the implementation, consummation, or enforcement of the . . . Plan or the Confirmation Order; . . . enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed); . . . [and] hear and determine all disputes involving the existence, nature, or scope of [the Debtor]'s discharge.

Plan at Article XI § 11.01(f), (g), (h), (j), (m), (p); *see also* Confirmation Order ¶ 27 (retaining jurisdiction for, *inter alia*, the purposes set forth in Article XI of the Plan).  "Bankruptcy courts in this district regularly enforce such exclusive jurisdiction provisions contained in their prior orders."  *In re Atari, Inc.*, 2016 WL 1618346, at *7 (collecting cases).

NYCHA correctly contends that "[c]ourts routinely decline to exercise their discretion to reopen bankruptcy cases where . . . the parties may seek relief in a competent alternative forum." *See* NYCHA Opposition at 21 of 24 (citing *Clausell v. 87-10 51st Ave. Owners Corp.*, 2014 WL 5591064, at *3 (E.D.N.Y. 2014)). But the cases on which NYCHA relies for reopening the instant case are distinguishable. In all three cases cited by NYCHA—*Clausell*, *In re Apex Oil Co., Inc.*, and *In re Skyline Woods Country Club, LLC*—the bankruptcy courts were asked to reopen cases in which they had concurrent jurisdiction with other courts. *See Clausell*, 2014 WL 5591064, at *3 (finding that this factor weighed against reopening because the creditor "could attempt to collect his allowed claim through a New York state court proceeding" because the bankruptcy case was closed and Congress granted state courts concurrent jurisdiction to consider bankruptcy issues arising from Chapter 11 proceedings); *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005) (same with respect to a class action brought against the debtor); *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 835–36 (8th Cir. B.A.P. 2010) (finding that the bankruptcy court did not have exclusive jurisdiction to interpret a sale order because the order was final, the property at issue was sold and no longer property of the estate, the state court was interpreting rather than modifying the sale order, and the bankruptcy court's jurisdiction to interpret or enforce its own prior orders is not "exclusive"). *See also In re Atari, Inc.*, 2016 WL 1618346, at *7 (noting that in both *Skyline Woods* and *Apex Oil* "the courts were asked to reopen bankruptcy cases where the bankruptcy court's exercise of jurisdiction would have been concurrent with that of another court[,]" and that those cases did not "involve[ ] a request to reopen in order to exercise the exclusive jurisdiction of the bankruptcy court"). But here, as in *Atari*, the Debtor is requesting that this Court reopen its case to exercise the Court's *exclusive* jurisdiction to interpret and enforce the Plan and Confirmation Order, specifically the Discharge

and the Plan Injunction at issue in this case. *See id.* at 8. Accordingly, "[i]n light of this Court's express retention of exclusive jurisdiction over disputes involving the Plan and Confirmation Order," this factor weighs in favor of reopening the Debtor's bankruptcy case. *See id.*

### C. Whether the Bankruptcy Court Previously Determined the Forum to Adjudicate this Dispute

NYCHA argues that the third factor weighs against reopening the case because (1) the Debtor previously stipulated that it agreed to adjudicate the merits of Proof of Claim No. 115 in state court, and (2) the Debtor chose to adjudicate *Fernandez*, 67 Misc.3d 1220(A), discussed *supra*, in state court. *See* NYCHA's Opposition at 22–23 of 24. But these matters are not before this Court. While the parties agreed to litigate Claim No. 115—an indemnification dispute connected to a personal injury action—in state court, there is no such agreement here. That dispute—and the *Fernandez* case—are distinct from the Court's current inquiry as to the whether the Discharge and Plan Injunction bar the NYCHA action based on the Contract. Not only has this Court made no prior determination as to the proper forum to adjudicate this matter, but also the Plan and Confirmation Order make clear that this Court is the proper forum to adjudicate the scope of the Discharge and Plan Injunction. Accordingly, this factor weighs in favor of reopening the case.[8]

### D. Prejudice

As to the fourth factor, the Court is required to consider whether either granting or denying the Motion will prejudice the Debtor or NYCHA. *See In re Plusfunds Grp., Inc.*, 589 F. App'x 41, 42–43 (2d Cir. 2015); *In re Atari*, 2016 WL 1618346, at *9. If the Motion is denied, the Debtor contends that it will be prejudiced by having to defend NYCHA's claims in state

---

[8]    The remainder of NYCHA's arguments as to this factor relate to notice issues already discussed above, and to whether the instant dispute involves pre- or post-petition claims, discussed below. *See* NYCHA's Opposition at 23 of 24.

court, notwithstanding the Discharge and Plan Injunction. *See* Debtor's Reply at 11–12 of 24. "Generally, a party's obligation to defend a claim on the merits in another forum is not the type of 'legal prejudice' that is relevant to whether a bankruptcy case should be reopened." *In re Atari, Inc.*, 2016 WL 1618346, at *9. However, the Court in *Atari* found that this general rule was not applicable where—as here—"the issue is not merely whether the litigation should go forward in another forum, but rather whether the release provisions of the Plan and Confirmation Order bar prosecution of the claims in *any* forum." *Id.* The Court finds that the Debtor would be prejudiced by having to litigate the contours its Chapter 11 Discharge and Plan Injunction in state court when this Court retained exclusive jurisdiction over that issue.

On the other hand, if the Motion is granted, NYCHA asserts that it would be prejudiced because it would be unable to recover from the Debtor for the Debtor's alleged breach of the Contract and negligent performance under the Contract. *See* NYCHA's Opposition at 23–24 of 24. But as discussed above, NYCHA received adequate notice of the bankruptcy proceeding, the Gov't Bar Date, and the Plan and Confirmation Order. Thus, the prejudice complained of by NYCHA is not unfair prejudice but rather the result of the appropriate application of the Discharge and Plan Injunction to NYCHA's current litigation. As such, NYCHA "cannot now claim to be prejudiced by this Court's exercise of its exclusive jurisdiction as set forth [in] [the Plan]" to assess the scope of the Discharge and Plan Injunction. *See In re Atari*, 2016 WL 1618346, at *10.

Accordingly, this factor weighs in favor of reopening the case.

### E. Extent of the Benefit to Any Party by Reopening

As for the fifth factor, both parties agree that the Debtor will benefit if this case is reopened. *See* NYCHA's Opposition at 23 of 24; Debtor's Reply at 12 of 24. Indeed, "the need

to enforce rights that were bargained for in a confirmed plan of reorganization constitutes a

sufficient 'benefit' to justify reopening a bankruptcy case." *In re Atari, Inc.*, 2016 WL 1618346,

at *11 (citing *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.),* 300 B.R. 564, 571

(S.D.N.Y.2003)). Accordingly, this factor weighs in favor of reopening.[9]

### F. Cause Exists to Reopen the Debtor's Bankruptcy Case

For all the reasons discussed above, therefore, the Court finds that there is sufficient

cause to reopen the Debtor's Chapter 11 case.

### III.    NYCHA's Pre-Petition Claims are Barred

With the Chapter 11 case reopened, the Debtor argues that the Plan bars NYCHA's state

court case. More specifically, the Debtor contends that NYCHA's state law claims for breach of

contract and negligence are barred by the Discharge and Plan Injunction because the claims arise

out of the pre-petition Contract and are based on the Debtor's pre-petition conduct. *See* Motion

at 15–20.

### A. Breach of Contract

As discussed above, the Plan and Confirmation Order discharged all claims and causes of

action arising before the Plan's effective date. *See* Confirmation Order ¶¶ 19–20; Plan at 36 of

84; 76–77 of 84. NYCHA appears to argue—at least with respect to its Breach of Contract

claim—that this is a post-petition claim—and thus—not barred because the Court is making

"determinations regarding contracts . . . [that have not been] disclosed to the Court in the

bankruptcy proceedings at issue." *See* NYCHA's Opposition at 23 of 24. But NYCHA's claim

is not a post-petition claim. Indeed, NYCHA does not appear to contest—likely because it

cannot—that "contract-based bankruptcy claims arise at the time the contract is executed,"

---

[9]    Neither party raises the sixth factor—whether it is clear at the outset that no relief would be forthcoming if the Motion is granted—presumably because relief will clearly be available to the Debtor if its case is reopened.

regardless of when the alleged breach occurs.  *See* Motion at 19 (quoting *Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001)); *see also In re Residential Cap., LLC*, 558 B.R. 77, 86 (S.D.N.Y. 2016) ("the general rule [is] that 'contract claims,' including those based on event default provisions, 'arise upon execution of an agreement'") (quoting *Conway Hosp., Inc. v. Lehman Bros. Holdings Inc.*, 531 B.R. 339, 343 (S.D.N.Y. 2015); *In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim.").  Thus, the Court interprets NYCHA's position as an argument that the Debtor had a duty to disclose such a potential prepetition Contract claim and failed to provide NYCHA with the requisite notice of such claim. *See* NYCHA's Opposition at 23 of 24.  As the Court has already concluded, however, the Debtor did not have a duty to disclose a claim of which it had no reason to be aware.  *See United Air Lines*, 871 F. Supp. 2d at 155–57.  Accordingly, because the Contract was executed years before the bankruptcy petition was filed and the Plan's effective date, NYCHA's pre-petition breach of contract claim is discharged and subject to the Plan Injunction.  See *In re Residential Cap., LLC*, 558 B.R. at 86–87.[10]

### B.  Negligence

NYCHA does not seem to contest the Debtor's argument that NYCHA's negligence claim is a pre-petition claim subject to the Discharge and Plan Injunction.  *See* Motion at 15–18; NYCHA's Opposition at 23 of 24.  As the Debtor correctly notes, "a claim arises from a debtor's pre-petition conduct that causes post-petition injury if such claim (1) 'arose before the filing of

---

[10]    Moreover, it is undisputed that NYCHA instituted an investigation—conducted by Superstructures—into problems with the work under the Contract.  While the exact chronology is unclear, that investigation appears to have started before confirmation with the Contract closed in September 2017 and Superstructures retained at some point in 2018.  *See* NYCHA's Opposition at 12 of 24.  In any event, NYCHA does not argue that it had no knowledge of issues with the Contract performance before the bar date.

the petition or resulted from pre-petition conduct fairly giving rise to the claim' and (2) there is 'some minimum contact' or 'relationship' between debtor and claimant 'such that the claimant is identifiable.'" *See* Motion at 15–18 (quoting *In re Tronox Inc.*, 2021 WL 653148, at *5 (S.D.N.Y. Feb. 19, 2021)).  There is no dispute here that the Debtor's alleged negligent conduct occurred before the Debtor filed for bankruptcy or that a sufficient relationship exists between the Debtor and NYCHA.  To be sure, "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts." *In re Johns-Manville Corp.*, 552 B.R. 221, 233–34 (Bankr. S.D.N.Y. 2016), *aff'd*, 623 B.R. 242 (S.D.N.Y. 2020) (quoting *LTV Steel Co. v. Shalala (In re Chateaugay Corp.),* 53 F.3d 478, 497 (2d Cir.1995)). Accordingly, the Court finds that NYCHA's claim that the Debtor's performance under the Contract was negligent is a pre-petition claim, is subject to the Plan Injunction, and is discharged.

## **CONCLUSION**

For the foregoing reasons, the Motion is granted.  The Debtor's Chapter 11 case is reopened for the limited purpose of enforcing the Discharge and Plan Injunction, and NYCHA's state court action is enjoined with prejudice under the Discharge and Plan Injunction.  The Debtor is directed to settle an order on five days' notice.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order shall also be served upon opposing counsel.

Dated: December 16, 2021
         New York, New York


                              */s/ Sean H. Lane*
                              UNITED STATES BANKRUPTCY JUDGE